FILED

APR 28 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

Anthony Trupia, Plaintiff,

v.

X Corp., Elon Musk, and Linda Yaccarino,

Defendants.

Case No.: _____

C 25 03685 NC

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Anthony Trupia brings this action against Defendants X Corp. ("X.com"), Elon Musk, and Linda Yaccarino (collectively "Defendants") and alleges as follows:

### INTRODUCTION

1. This action arises from Defendants' systematic misrepresentation of X.com as a "free speech platform," while engaging in pervasive algorithmic censorship, manipulation, and suppression of Plaintiff's content, in violation of express and implied promises, statutory consumer protections, and constitutional principles.

2. Defendants Elon Musk and Linda Yaccarino have publicly and repeatedly advertised X.com as a bastion of free speech, the modern town square, and the number one source of news, inducing Plaintiff—a resident of Oklahoma City, OK—and millions of users to join, pay for services, and rely on the platform for open discourse. Yet, X.com employs opaque algorithms that limit visibility, suppress engagement, and penalize users without notice, contradicting these promises.

3. Plaintiff, a paying user, has suffered severe financial and reputational harm, including the derailment of two significant civil cases impacting the public, due to Defendants' suppression of his reach, despite his prior established course of dealing with X.com. Analytics data confirms this suppression, showing Plaintiff's posts once garnered up to 2,100 likes with fewer followers in 2023, but none exceeded 18 likes in 2024 despite a larger audience.

### PARTIES

4. Plaintiff Anthony Trupia is an individual residing in Oklahoma City, Oklahoma, who maintains an active account on X.com with approximately 1,300 followers as of April 10, 2025.

5. Defendant X Corp. is a corporation organized under the laws of Nevada, with its principal place of business in San Jose, California, operating the social media platform X.com.

6. Defendant Elon Musk is the Chairman and CTO of X Corp., residing in Texas, and is a primary architect of X.com's policies, public statements, and operational decisions.

7. Defendant Linda Yaccarino is the CEO of X Corp., residing in California, and is responsible for overseeing X.com's operations and public representations.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) due to claims arising under the Lanham Act, 15 U.S.C. § 1125(a), and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Diversity jurisdiction under 28 U.S.C. § 1332 also applies, as Plaintiff (Oklahoma) and Defendants (California, Texas, and elsewhere) are diverse, and the amount in controversy exceeds $75,000.

9. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because X Corp. is headquartered in San Francisco, a substantial portion of the events giving rise to this action (e.g., algorithmic design and policy decisions) occurred here, and Defendants' public representations emanated from this district. Additionally, California law, including *Pruneyard v. Robbins* (1980) 447 U.S. 74, applies as X.com has evolved into a virtual public square subject to California's broader free speech protections.

10. Personal jurisdiction exists over Defendants due to their purposeful availment of California's market, with X Corp. domiciled here and Musk and Yaccarino directing operations from or into this state.

## FACTUAL ALLEGATIONS

### Defendants' Representations and X.com's Role as a Public Square

11. Since acquiring Twitter (now X.com) in October 2022, Defendant Musk has positioned the platform as a modern public square, declaring it the "#1 source for news" and a replacement for "dying" traditional media, statements made repeatedly on X.com (e.g., posts in 2023–2025). He has claimed X.com's mission is to advance collective knowledge and truth-seeking, inviting public reliance on it as a forum for free expression.

12. Defendant Yaccarino has reinforced this, marketing X.com as a platform where users, especially paying subscribers like Plaintiff, can freely share ideas without barriers, echoing Twitter's 2011 mission: "To give everyone the power to create and share ideas and information instantly, without barriers."

13. X.com has evolved into a virtual public square, supplanting physical forums like shopping malls—which have notoriously emptied across the U.S.—as the primary venue for free speech, association, and sociopolitical discourse. Plaintiff, from Oklahoma City, relied on this role to disseminate two civil cases of public import, expecting reach consistent with his prior course of dealing in 2023, when posts with 300 followers garnered wide engagement.

14. This evolution mirrors the shopping malls in *Pruneyard v. Robbins* (1980) 447 U.S. 74, where California recognized private property as a public forum subject to free speech protections under Article I, Section 2. X.com's massive reach—billions of users—and Musk's public intertwining of X.com with xAI's resources (e.g., his Jan. 2025 post: "xAI and X's futures are intertwined") further cement its public character.

15. Many statements made by both Musk and Yaccarino on X.com confirm this evolution and that it is both intended and advertised plainly:

    a. Statements made Elon Musk:
        i. "Given that Twitter serves as the de facto public town square, failing to adhere to free speech principles fundamentally undermines democracy. What should be done? " Mar 26, 2022 (in response to a poll asking if twitter "rigorously adhered" to the principles of free speech. Elon Musk purchased twitter just months later.)
        ii. "Fortunately, X believes in free speech" Nov 25, 2024
        iii. "It is vital to the support of free speech that you forward 𝕏 posts to people you know, especially in censorship-heavy countries" Aug 25 2024
        iv. "Hard to be a free speech platform in a state that wants to ban free speech" Sep 18 2024
        v. "By "free speech", I simply mean that which matches the law. I am against censorship that goes far beyond the law. If people want less free speech, they will ask government to pass laws to that effect. Therefore, going beyond the law is contrary to the will of the people." Apr 26 2022

    b. Statements made by Linda Yaccarino:
        i. "Free Speech. Today. Tomorrow. Always. X." Oct 8, 2024
        ii. "This would be an egregious example of regulatory overreach. X continues to fight the attempts to stifle free speech taking place around the world, whether on our platform or off. We're committed to protect this fundamental right for our users." Apr 3, 2025

### Algorithmic Censorship and Suppression

15. Despite its public square status, X.com employs opaque algorithms that suppress Plaintiff's content through shadow bans, deboosting, and limited visibility, without notice or recourse, contradicting Defendants' promises.

16. In 2023, with only 300 followers, Plaintiff's posts achieved much more significant reach, including 42 posts with 20 or more likes (up to 2,100), consistent with X.com's then-open course of dealing. By 2024–2025, with 1,300+ followers, no direct post has exceeded 18 likes, a decline confirmed by analytics and thwarting Plaintiff's efforts to share civil cases addressing judicial access (*Twombly/Iqbal*) and another of public relevance.

17. The algorithm tests posts on a small, arbitrary subset of users, restricting visibility if early engagement is low, undermining the "follow" button's purpose and Plaintiff's established audience.

### Specific Instances of Suppression

18. After Plaintiff posted a free speech critique on Yaccarino's account, X.com flagged and deboosted his content—the only direct notice he received—further evidencing targeted suppression of dissent within this public forum.

19. Plaintiff's posts exposing invisible replies were marked as spam, as captured by screenshots, chilling his participation.

### Defendants' Bad Faith and Double Standards

20. Musk demands "positive content" (e.g., Dec. 29, 2024) yet posts derogatory remarks (e.g., "F u retard," Jan. 6, 2025) without penalty, while Plaintiff's informative posts are buried, betraying X.com's public square promise.

21. High-profile accounts post inflammatory content (e.g.,@BriannaWu's violent imagery, see post from 5:34 AM Oct 21, 2024, for a post depicting Nintendo's Princess Peach in front of an Israeli Flag, with a machine gun, splattered in blood) without suppression, highlighting inconsistent standards within this forum.

### Damages from Suppression

22. Plaintiff has suffered damages exceeding $5 million due to suppression preventing communication of two civil cases—developed over months—to his followers and the public: a. A case against the judiciary addressing meaningful access and issues with *Twombly/Iqbal* precedent, intended to benefit the public. b. A second civil case of broad public relevance, similarly stifled.

23. Plaintiff relied on X.com's prior course of dealing—where posts routinely achieved 20 to 2,100 likes with fewer followers—to disseminate these cases, but algorithmic suppression since late 2023, reducing his maximum likes to 18 despite a larger audience, thwarted his efforts, causing professional, reputational, and financial harm.

### Analytics Evidence

24. Data from X.com confirms a drastic reduction in Plaintiff's reach, evidencing algorithmic suppression:

a. Between May 6, 2023, and September 26, 2023, with fewer than 300 followers, a search of Plaintiff's account reveals at least 42 posts receiving 20 or more likes, ranging from 23 to 2,100 likes, with none dated after September 6, 2023.

b. Since returning to X.com in 2024, despite growing to over 1,000 followers (now 1,300), no direct post has received 20 likes, with the highest at 18 and only three posts exceeding 10 likes—achieved only by retweeting into comments as a "reply guy."

### CAUSES OF ACTION

### First Cause of Action: Breach of Contract

25. Plaintiff incorporates paragraphs 1–24.

26. Defendants' free speech promises formed a contract, accepted by Plaintiff's payment and participation, breached by suppression, causing damages.

**Second Cause of Action: False Advertising (Lanham Act, 15 U.S.C. § 1125(a))**

27. Plaintiff incorporates paragraphs 1–24.

28. Defendants falsely advertised X.com as a free speech platform, deceiving Plaintiff and causing injury.

**Third Cause of Action: Deceptive Trade Practices (California UCL, Bus. & Prof. Code § 17200)**

29. Plaintiff incorporates paragraphs 1–24.

30. Defendants' misrepresentations and suppression are unfair and deceptive, injuring Plaintiff.

**Fourth Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing**

31. Plaintiff incorporates paragraphs 1–24.

32. Defendants' arbitrary censorship breaches their duty of good faith.

**Fifth Cause of Action: Promissory Estoppel**

33. Plaintiff incorporates paragraphs 1–24.

34. Plaintiff detrimentally relied on Defendants' promises, entitling him to relief.

**Sixth Cause of Action: Violation of California Constitutional Free Speech Rights (Article I, Section 2)**

35. Plaintiff incorporates paragraphs 1–24.

36. Under *Pruneyard v. Robbins* (1980) 447 U.S. 74, and its progeny (e.g., *Fashion Valley Mall v. NLRB* (2007) 42 Cal. 4th 850), California's Constitution (Article I, Section 2) guarantees broader free speech rights than the First Amendment, extending to private entities operating as public forums.

37. X.com has evolved into a virtual public square, replacing physical forums like shopping malls, as evidenced by: (a) Musk's statements positioning it as the "#1 source for news" and a traditional media successor; (b) its pervasive use for free speech, association, and sociopolitical discourse (e.g., Plaintiff's civil cases); (c) its prior course of dealing offering open reach; and (d) its societal role, akin to malls in the *Pruneyard* era, now eclipsed by digital platforms.

38. Defendants' algorithmic suppression of Plaintiff's content—without notice or appeal—violates his California free speech rights within this forum, causing substantial harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1. Compensatory damages of at least $5 million for suppressed freedom of speech, suppressed freedom of association, lost opportunities, professional harm, and subscription fees;

2. Punitive damages for Defendants' willful misconduct;

3. Injunctive relief requiring algorithmic transparency, algorithmic choice, and cessation of suppression;

4. Attorneys' fees and costs; and

5. Such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 23, 2025

Respectfully submitted,

Anthony Trupia

605 SE 21st St,

Oklahoma City, OK 73129

516-984-0142

Trupiaar@gmail.com