1  Kenneth M. Trujillo-Jamison (Bar No. 280212)
   ktrujillo-jamison@willenken.com
2  WILLENKEN LLP
   707 Wilshire Blvd., Suite 4100
3  Los Angeles, California 90017
   Telephone: (213) 955-9240
4  Facsimile: (213) 955-9250
5
6  Attorneys for Defendant X Corp.
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10
11  ANTHONY TRUPIA,                    Case No.: 5:25-cv-03685-NW
12          Plaintiff,                 Hon. Noël Wise
13  v.                                 **DEFENDANT X CORP.'S NOTICE OF
                                       MOTION AND MOTION TO DISMISS
14  X CORP., *et al.*,                 OR TRANSFER**
15          Defendants.                Date:    January 7, 2026
16                                     Time:    9:00 A.M.
                                       Ctrm:    3
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS .....................................................................................3

    A.    X's Platform and Terms of Service ...........................................................3

    B.    Plaintiff's X Account ................................................................................6

    C.    Musk's and Yaccarino's Posts on X ..........................................................7

III.  LEGAL STANDARDS ..........................................................................................7

IV.   ARGUMENT ..........................................................................................................8

    A.    This Court Lacks Jurisdiction and Venue Is Improper ...............................8

        1.    Plaintiff Failed to Properly Serve X ..............................................8

        2.    The Court Lacks Personal Jurisdiction over X ...............................9

        3.    Venue Is Improper in This District ...............................................11

    B.    On the Merits, All of Plaintiff's Claims Should Be Dismissed ................14

        1.    Section 230 Immunizes Defendants from All Claims ...................14

        2.    The First Amendment Independently Bars All of Plaintiff's Claims ...16

        3.    The Relevant Terms Separately Foreclose All Claims ..................17

        4.    Absent Immunity, Plaintiff Fails to State a Claim ........................18

            a.    Plaintiff Fails to State a Breach of Contract Claim..................18

            b.    Plaintiff Fails to State a 15 U.S.C. § 1125(a) ("Lanham Act") Claim ...20

            c.    Plaintiff Fails to State a Cal. Bus. & Prof. Code § 17200 ("UCL") Claim ...21

            d.    Plaintiff Fails to State a Breach of the Implied Covenant of Good Faith and Fair Dealing ...22

            e.    Plaintiff Fails to State a Promissory Estoppel Claim ...23

            f.    Plaintiff Fails to State a California Constitution "Free Speech" Claim ...24

V.    CONCLUSION ....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Abdulaziz v. Twitter, Inc.*,
  No. 21-16195, 2024 WL 4688893 (9th Cir. Nov. 6, 2024) ........................................ 17

*Al-Ahmed v. Twitter*, Inc.,
  603 F. Supp. 3d 857 (N.D. Cal. 2022) ..................................................................... 14

*Asbell v. Hamon*,
  No. 23-1801, 2025 WL 869206 (9th Cir. Mar. 20, 2025) ............................................ 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 8, 11

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct.*,
  571 U.S. 49 (2013) ............................................................................................... 7, 12

*Austin v. Lyft, Inc.*,
  No. 21-CV-09345-MMC, 2022 WL 395310 (N.D. Cal. Feb. 9, 2022) ......................... 9

*Bacon v. Sw. Airlines Co.*,
  997 F. Supp. 775 (N.D. Tex. 1998) ........................................................................... 20

*Bayer v. City & Cnty. of San Francisco*,
  2023 WL 197525 (N.D. Cal. Feb. 13, 2023) ............................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 8

*Bomardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*,
  572 S.W.3d 213 (Tex. 2019) .................................................................................... 18

*Boose v. Musk*,
  No. 25-CV-03366-AMO, 2025 WL 1836652 (N.D. Cal. July 3, 2025) ......................... 9

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  582 U.S. 255 (2017) ................................................................................................... 9

*Brittain v. Twitter, Inc.*,
  No. 19-cv-00114-YGR, 2019 WL 2423375 (N.D. Cal. June 10, 2019) ....................... 16

*Brittain v. Twitter, Inc.*,
  No. 19-CV-00114-YGR, 2019 WL 8137718 (N.D. Cal. Mar. 15, 2019) ...................... 12

*Brockmeyer v. May*,
  383 F.3d 798 (9th Cir. 2004) ...................................................................................... 7

*Bromlow v. D & M Carriers, LLC*,
  438 F. Supp. 3d 1021 (N.D. Cal. 2020) .................................................................... 13

*Bustillo v. Deutsche Bank Tr. Co. Ams.*,
  No. CV 09-05832 ODW (FMOX), 2009 WL 10868408 (C.D. Cal. Nov. 3, 2009) ......... 9

*Cal. Lettuce Growers v. Union Sugar Co.,*
    45 Cal. 2d 474 (1955) .................................................................................................. 19

*Castronuova v. Meta Platforms, Inc.,*
    No. 23-CV-7511(KAM)(AYS), 2024 WL 1623274 (E.D.N.Y. Apr. 15, 2024) ............... 12, 15

*Children's Health Def. v. Meta Platforms, Inc.,*
    112 F.4th 742 (9th Cir. 2024) ...................................................................................... 24

*Computer v. Paxton,*
    747 F. Supp. 3d 1011 (W.D. Tex. 2024) ...................................................................... 15

*Cory v. Stewart,*
    103 F.4th 1067 (5th Cir. 2024) .................................................................................... 21

*Crowley v. Bannister,*
    734 F.3d 967 (9th Cir. 2013) ......................................................................................... 7

*Cubria v. Uber Techs., Inc.,*
    242 F. Supp. 3d 541 (W.D. Tex. 2017) .................................................................. 13, 19

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ................................................................................................ 9, 10

*Degrassi v. Cook,*
    127 Cal. Rptr. 2d 508 (2002) ...................................................................................... 24

*Divino Grp. LLC v. Google LLC,*
    No. 19-cv-04749, 2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ................................. 25

*E. & J. Gallo Winery v. Andina Licores S.A.,*
    446 F.3d 984 (9th Cir. 2006) ....................................................................................... 12

*Ellis v. Wells Fargo Bank, N.A.,*
    No. CV V-15-0092, 2016 WL 3017160 (S.D. Tex. May 26, 2016) ................................ 19

*Exxon Corp. v. Atl. Richfield Co.,*
    678 S.W.2d 944 (Tex. 1984) ........................................................................................ 23

*Fabien Ho Ching Ma v. Twitter, Inc.,*
    No. 23-CV-03301-JST, 2025 WL 436636 (N.D. Cal. Feb. 7, 2025) ............................. 19

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ................................................................................. 2, 15

*Fazio v. Wash. Mut. Bank, F.A.,*
    713 F. App'x 671 (9th Cir. 2018) .................................................................................. 1

*Forsythe v. Holder,*
    No. C-08-5160 MMC, 2009 WL 2512028 (N.D. Cal. Aug. 14, 2009) ........................... 11

*Gazaway v. Nelson,*
    224 WL 3381036 (N.D. Cal. July 10, 2024) ................................................................. 18

*Geegieh v. Unknown Parties,*
    No. CV-24-02993-PHX-SMB, 2025 WL 1769766 (D. Ariz. June 26, 2025) .................. 10

*Gillum v. Republic Health Corp.*,
  778 S.W.2d 558 (Tex. App. 1989) ....................................................................................... 24

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
  352 F.3d 367 (9th Cir. 2003) .............................................................................................. 24

*Godecke v. Kinetic Concepts, Inc.*,
  937 F.3d 1201 (9th Cir. 2019) .............................................................................................. 7

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*,
  26 Cal. 4th 1013 (2001) ..................................................................................................... 24

*Gustafson v. BAC Home Loans Servicing, LP*,
  No. SACV 11-915-JST ANX, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ...................... 22

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal. 4th 317 (2000) ....................................................................................................... 23

*Hammerhead Managing Partners, LLC v. Nostra Terra Oil & Gas Co. PLC*,
  No. 3:18-CV-1160-N, 2019 WL 1403363 (N.D. Tex. Mar. 27, 2019) ................................ 19

*Igbonwa v. Facebook, Inc.*,
  No. 18-cv-02027-JCS, 2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) .................................. 16

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) .............................................................................. 13

*Innovative Sports Mgmt., Inc. v. Huaman*,
  No. 5:24-cv-06103-PCP, 2025 U.S. Dist. LEXIS 9695 (N.D. Cal. Jan. 17, 2025) ............... 8

*Johnson v. Ford Motor Co.*,
  No. 23-cv-01375-PCP, 2023 WL 8654930 (N.D. Cal. Dec. 14, 2023) ................................ 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 18

*King v. Facebook, Inc.*,
  No. 19-CV-01987-WHO, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ............................ 16

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
  60 Cal. App. 3d 885 (Ct. App. 1976) ................................................................................. 24

*Lewis v. Google LLC*,
  461 F. Supp. 3d 938 (N.D. Cal. 2020) ..................................................................... 15, 20, 21

*Lewis v. YouTube, LLC*,
  244 Cal. App. 4th 118 (2015) ............................................................................................ 18

*Li v. Amazon.com Services LLC*,
  2023 WL 8720669 (N.D. Cal. Dec. 18, 2023) ...................................................................... 7

*Lloyd v. Facebook, Inc.*,
  2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ........................................................................ 5

*Loomer v. Zuckerberg*,
  No. 22-CV-02646-LB, 2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) ........................... 2, 16

*Madsen v. Women's Health Ctr. Inc.,*
  512 U.S. 753 (1994) ........................................................................................................ 17

*Martin Res. Mgmt. Corp. v. Fed. Ins. Co.,*
  No. 20-40571, 2021 WL 4269565 (5th Cir. Sep. 20, 2021) ............................................ 22

*Mercola.com, LLC v. Google LLC,*
  No. 3:22-cv-05567, 2023 WL 5860112 (N.D. Cal. Sep. 4, 2023) .................................... 23

*Mission Trading Co. v. Lewis,*
  No. 16-CV-01110-JST, 2016 WL 6679556 (N.D. Cal. Nov. 14, 2016) ............................ 11

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) ............................................................................................ 2, 16, 17

*Moore v. Dilworth,*
  142 Tex. 538 (1944) ........................................................................................................ 19

*Murphy v. Twitter, Inc.,*
  60 Cal. App. 5th 12 (2021) .......................................................................... 16, 18, 22, 24

*Netbula, LLC v. Bindview Dev. Corp.,*
  516 F. Supp. 2d 1137 (N.D. Cal. 2007) .......................................................................... 19

*Newman v. Google LLC,*
  No. 20-cv-04011-VC, 2022 WL 2556862 (N.D. Cal. July 8, 2022) ................................ 25

*O'Handley v. Padilla,*
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) .............................................................. 2, 16, 17

*O'Handley v. Weber,*
  62 F.4th 1145 (9th Cir. 2023) ........................................................................................ 16

*Phillips v. Securitas Sec. Servs. USA,*
  No. C 17-06693 WHA, 2018 WL 3474186 (N.D. Cal. July 19, 2018) ............................... 8

*Picot v. Weston,*
  780 F.3d 1206 (9th Cir. 2015) ........................................................................................ 10

*Prager Univ. v. Google LLC,*
  951 F.3d 991 (9th Cir. 2020) .................................................................................... 21, 25

*Pruneyard Shopping Ctr. v. Robins,*
  447 U.S. 74 (1980) .................................................................................................... 24, 25

*Roley v. Google LLC,*
  No. 18-CV-07537-BLF, 2021 WL 1091917 (N.D. Cal. Mar. 22, 2021) ........................... 20

*Rutenburg v. Twitter, Inc.,*
  No. 4:21-cv-00548-YGR, 2021 WL 1338958 (N.D. Cal. Apr. 9, 2021) ........................... 24

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) ............................................................................................ 7

*SHLA Grp. Inc. v. Kissler & Co.,*
  No. CV 23-07567 TJH (BFMx), 2025 U.S. Dist. LEXIS 37820 (C.D. Cal. Mar. 3, 2025) ..... 23

*Silverman v. Wells Fargo & Co.*,
   No. 18-CV-03886-YGR, 2018 WL 6046209 (N.D. Cal. Nov. 19, 2018) .............................. 21

*Silverton v. Dep't of Treas.*,
   644 F.2d 1341 (9th Cir. 1981) ............................................................................................... 1

*Simulis, L.L.C. v. GE Capital Corp.*,
   No. 14-06-00701-CV, 2008 WL 1747483 (Tex. App. Apr. 17, 2008)................................... 24

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ............................................................................................................. 16

*Soil Retention Prods. v. Brentwood Indus.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021) .................................................................................. 19

*Storek & Storek, Inc. v. Citicorp Real Est., Inc.*,
   100 Cal. App. 4th 44 (2002)................................................................................................. 23

*Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ............................................................................................. 14

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................................................... 11

*Symbolic Aviation, Inc. v. PNCEF, LLC*,
   No. 10-CV-1228, 2010 WL 3584509 (S.D. Cal. Sept. 8, 2010) ........................................... 23

*Thomas v. JPMorgan Chase Bank, N.A.*,
   No. SA CV 15-00518 DMG (FFMx), 2015 WL 12683961 (C.D. Cal. Sep. 15, 2015) .......... 22

*TuYo Holdings, LLC v. Transamerica Life Ins. Co.*,
   No. SA-22-CV-00845-JKP, 2022 WL 17490982 (W.D. Tex. Dec. 6, 2022) ........................ 23

*Vantage Mobility Int'l Ltd. Liab. Co. v. Kersey Mobility Ltd. Liab. Co.*,
   836 F. App'x 496 (9th Cir. 2020)........................................................................................... 9

*W. Coast Reg'l Ctr., Inc. v. Jaddou*,
   No. 23-CV-06336-PCP, 2024 WL 3498242 (N.D. Cal. July 19, 2024).................................. 7

*Watkins v. X Corp.*,
   No. 25-CV-04696-LJC, 2025 WL 2521733 (N.D. Cal. Sept. 2, 2025).................................. 20

*Whalen v. NBA Props., Inc.*,
   No. 25-CV-01030-CRB, 2025 WL 1948591 (N.D. Cal. July 16, 2025).................................. 13

*White v. Paypal, Inc.*,
   No. 19-cv-08015-WHO, 2020 U.S. Dist. LEXIS 33734 (N.D. Cal. Feb. 27, 2020)............... 10

*Wiskind v. JPMorgan Chase Bank, N.A.*,
   No. 14-CV-04223 NC, 2015 WL 1798962 (N.D. Cal. Apr. 17, 2015) .................................. 19

*Young v. Tesla, Inc.*,
   No. 1:21-CV-00917-JB-SCY, 2022 WL 3355832 (D.N.M. Aug. 15, 2022) .......................... 19

*Yuksel v. Twitter Inc.*,
   No. CV-21-00137-TUC-RM, 2022 WL 4367619 (D. Ariz. Sept. 21, 2022) .............. 12, 13, 16

*Zhang v. Twitter Inc.*,
    2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ........................................................ 15, 20, 22

*Zilberstein v. Petersen*,
    No. 18VECV00182, 2023 WL 5317486 (Cal. Super. Ct. Apr. 27, 2023)................................ 22

**Statutes**

15 U.S.C. § 1125(a) ............................................................................................................ 20

28 U.S.C. § 1391(b) ............................................................................................................ 11

28 U.S.C. § 1391(b)(1) ....................................................................................................... 11

28 U.S.C. § 1391(b)(2) ....................................................................................................... 11

28 U.S.C. § 1404(a) ............................................................................................................ 12

28 U.S.C. § 1406(a) ............................................................................................................ 11

47 U.S.C. § 230.................................................................................................... 14, 15, 16, 18

47 U.S.C. § 230(c)(1) ................................................................................................... 14, 15

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 21

**Rules**

Fed. R. Civ. P. 4 .............................................................................................................. 7, 9

Fed. R. Civ. P 4(c)(1)............................................................................................................ 8

Fed. R. Civ. P 4(c)(2)............................................................................................................ 9

Fed. R. Civ. P (4)(m) ............................................................................................................ 8

Fed. R. Civ. P. 4(h)(1)(B) ..................................................................................................... 9

Fed. R. Civ. P. 8 ................................................................................................................. 18

Fed. R. Civ. P. 9(b) ............................................................................................................ 18

Fed. R. Civ. P. 12(b)(2)......................................................................................................... 1

Fed. R. Civ. P. 12(b)(3)......................................................................................................... 1

Fed. R. Civ. P. 12(b)(5)......................................................................................................... 1

Fed. R. Civ. P. 12(b)(6).................................................................................................... 1, 7

DEF. X CORP.'S MOTION TO DISMISS OR TRANSFER

**NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER**

**PLEASE TAKE NOTICE** that on January 7, 2026, at 9:00 a.m., before The Honorable Noël Wise, in Courtroom 3 of the United States District Court, Northern District of California, San Jose Division, this Motion to Dismiss filed by X Corp. ("X") will be heard. Under Federal Rules of Civil Procedure 12(b)(2), (3), (5) and (6), X hereby moves for an order dismissing all claims in the Complaint (ECF No. 1) with prejudice, or in the alternative, an order transferring this matter to the U.S. District Court for the Northern District of Texas under the X Terms of Service's forum selection clause. This Motion is based on this Notice of Motion and Motion to Dismiss or Transfer, the Memorandum of Points and Authorities, the Declarations of Megan Scolari and Kenneth M. Trujillo-Jamison, the papers on file, and the argument received by the Court.

**STATEMENT OF RELIEF SOUGHT**

X respectfully seeks an order dismissing the Complaint in its entirety with prejudice for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Alternatively, X seeks an order transferring this matter to the U.S. District Court for the Northern District of Texas.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The Complaint challenging alleged "suppression" of Plaintiff's posts on X's Platform rests on two legally and factually faulty assumptions. First, that aspirational public posts from Elon Musk and Linda Yaccarino somehow transformed X's private platform "into a virtual public square," stripping X of its statutorily, constitutionally, and contractually protected right to

---

[1] To X's knowledge, non-appearing Defendants Musk and Yaccarino have not been served. Nevertheless, dismissal of all claims against them is warranted for the same reasons described in X's motion. *Fazio v. Wash. Mut. Bank, F.A.*, 713 F. App'x 671, 672 (9th Cir. 2018) (The district court properly dismissed [plaintiff's] claims against the defendants who did not move to dismiss the complaint") (citing *Silverton v. Dep't of Treas.*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

1  moderate its platform. Second, that those vague public posts somehow promised Plaintiff

2  unfettered reach on X's platform—notwithstanding the X Terms of Service ("Relevant Terms"),

3  which "govern" Plaintiff's "access to and use of [X Corp.'s] services," and permit X to moderate

4  the platform and "remove or refuse to distribute any Content on the Services, limit distribution or

5  visibility of any Content on the services . . . without liability to [users]." Accordingly, Plaintiff's

6  claims fail on various substantive grounds and should be dismissed with prejudice.

7          That said, three independent, threshold defects warrant dismissal of Plaintiff's Complaint.

8  First, Plaintiff failed to properly serve X. Rather than using a non-party to deliver the summons

9  and Complaint pursuant to a method permitted by Rule 4, Plaintiff simply mailed them himself

10  long after the 90-day deadline specified in Rule 4. Second, even if X was properly served, this

11  Court lacks personal jurisdiction because X is incorporated in Nevada, maintains its principal

12  place of business in Texas, and no factual allegations connect X or the underlying conduct to

13  California. Third, venue is improper in California. No party resides in California, and Plaintiff

14  (an Oklahoman) does not allege that the conduct underlying his Complaint occurred in California.

15  At a minimum, this matter should be transferred to the Northern District of Texas under the

16  Relevant Terms' forum selection clause, which broadly governs disputes (like this one), "related

17  to" Plaintiff's use of X.

18          On the merits, X is immune from all claims under Section 230, the First Amendment, and

19  the Relevant Terms. X is "perforce immune under Section 230" because all claims are premised

20  on alleged "suppression of Plaintiff's content." Compl. ¶ 1; *see Fair Hous. Council of San*

21  *Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) ("*Roommates*")

22  ("[a]ny activity that can be boiled down to deciding whether to exclude material that third parties

23  seek to post online" is immune); *Loomer v. Zuckerberg*, No. 22-CV-02646-LB, 2023 WL

24  6464133, at *12 (N.D. Cal. Sept. 30, 2023), *aff'd*, No. 23-3158, 2025 WL 927186 (9th Cir. Mar.

25  27, 2025) (immunity extends to executives). Separately, the First Amendment protects "exactly

26  the kind of editorial judgment[,]" Plaintiff complains of. *Moody v. NetChoice, LLC*, 603 U.S. 707,

27  718, 735 (2024); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186 (N.D. Cal. 2022).

28  Additionally, the Relevant Terms broadly disclaim liability for, among other things, X's "refus[al]

1   to distribute any Content on the Services" or decision to "limit distribution or visibility of any

2   Content on the service."

3       If X were somehow not immune, the Complaint still fails to state any claim. Plaintiff

4   does not allege a breach of the Relevant Terms, his only contract with X, but rather seeks to

5   enforce an invented contrary agreement purportedly formed by Defendant Musk's and

6   Yaccarino's vague public posts. Plaintiff, a user (not competitor) of the platform, cannot bring a

7   Lanham act claim—and if he could, the allegedly false statements are inactionable puffery. Nor

8   can Plaintiff, an Oklahoman, bring a claim under California's UCL, especially where he fails to

9   allege any financial injury. His claim would fail anyway because the alleged posts, supposedly

10  made *after* Plaintiff joined the platform, do not advertise X's services. Nor can Plaintiff state an

11  implied covenant claim based on a nonexistent "free speech" contract that contradicts the broad

12  moderation rights granted to X under the Relevant Terms. Relatedly, Plaintiff's promissory

13  estoppel claim fails because the Relevant Terms govern his use of the platform, and separately

14  because no clear promise exists for him to have reasonably relied on. Finally, Plaintiff cannot

15  state a "free speech" claim where no state action is even alleged. His argument that X

16  transformed itself into a virtual public square has been rejected by every court to consider it.

17  **II.    STATEMENT OF FACTS**

18      **A.    X's Platform and Terms of Service**

19      X Corp. is a private company that operates X, an online platform where users like Plaintiff

20  can make and share posts. *See generally* Compl. To create and use an X account, users must agree

21  to a set of binding Terms that "govern . . . users' access to and use of [X Corp.'s] services"; at all

22  times, those Terms are publicly available on the X website and application. Scolari Decl. ¶¶ 6–7,

23  14; *id.*, Ex. A at 3; *id.*, Ex. B at 4.[2] At all relevant times, X's Terms have been prominently linked

24  via blue hyperlinks on X's home page, between the links that allow users to sign up for the X

25  platform and the link that allows current users to log in to their accounts, as reflected in the below

26

27  _____

28  [2] Reference to page numbers in Exhibits A and B refer to the page number included in the ECF
    header.

1  screenshot:

2
3
4
5
6
7
8
9
10



11  *Id.* ¶ 7.

12      As Plaintiff alleges, he currently "maintains an active account on X.com . . . as of April

13  10, 2025," which he created in 2023. Compl. ¶¶ 4, 16, 23. At all relevant times, including when

14  Plaintiff created his account in March 2023 (*see* Scolari Decl. ¶¶ 12–13), X's Terms of Service

15  provided that "[b]y using the Services you agree to be bound by these Terms." *Id.*, Ex. A at 4; *id.*,

16  Ex. B at 4.[3] And at all relevant times, X's Terms of Service have provided that that X may revise

17  the terms from time to time, and that "[b]y continuing to access or use the Services after those

18  revisions become effective, [the user] agree[s] to be bound by the revised Terms." *Id.* ¶ 7 & Ex.

19  A at 11; *id.*, Ex. B at 11.

20      When implementing the Relevant Terms, X notified users of the update starting in mid-

21  October 2024. *Id.* ¶¶ 16–17. Among other things, X served a notification prompt to X users that

22  logged in to their X accounts between October 16, 2024, and April 14, 2025, which read:

23

24  _____

25  [3] At all relevant times, "Services" was defined broadly to include X's: "various websites, SMS,
    APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other
26  covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that
    link to these Terms (collectively, the 'Services'), and any information, text, links, graphics,
27  photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or
28  appearing on the Services (collectively referred to as 'Content')." *Id.*, Ex. A at 3; *id.*, Ex. B at 4.

**Updates to our Terms of Service and Privacy Policy**

> We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center.

*Id.* The prompt hyperlinked to the Relevant Terms and a blog post explaining, among other things: "**Governing law and forum changes**: For users residing outside of the European Union, EFTA States, and the United Kingdom, we've updated the governing law and forum for lawsuits to Texas as specified in our terms." *Id.* ¶¶ 18–19 (emphasis in original). Below this notice was an acknowledgement button labeled "Got it." *Id.* ¶ 20 & Ex. C. X served the prompt for 180 days or until the user accepted it. *Id.* According to X's records, Plaintiff acknowledged the notice by clicking "Got it" on January 30, 2025. *Id.* ¶ 21.

Since November 15, 2024, X's Relevant Terms contained the following choice of law and mandatory forum selection clause requiring all disputes to be brought exclusively in federal or state courts in Texas:

> The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. ***All disputes related to these Terms or the Services***, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, ***will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States***, and [users] consent to personal jurisdiction in those forms and waive any objection to inconvenient forum.

*Id.* ¶¶ 8, 10 & Ex. A at 11 (emphasis added).[4]

The Relevant Terms (and the version effective when Plaintiff created his account) expressly reserve X's right to: "remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users, and reclaim usernames without liability to [users]." *Id.*, Ex. A at 6; *id.*, Ex. B at 7. Both versions reserve X's

---

[4] This Court may take judicial notice of X's publicly available Terms because they are available on X's website and their validity and authenticity cannot reasonably be in dispute. *See Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022).

right to "stop (permanently or temporarily) providing the Services or any features within the Services to [users]" and explain that X "retain[s] the right to create limits on use . . . at [its] sole discretion at any time." *Id.* And both versions include a disclaimer of responsibility and liability:

> You understand and agree that the Services are provided to you on an 'AS IS' and 'AS AVAILABLE basis . . . . [X] make[s] no warranty or representation and disclaim[s] all responsibility and liability for . . . the deletion of, or the failure to store or to transmit . . . any Content and other communications . . . .

*Id.*, Ex. A at 10; *id.*, Ex. B at 10. Each version reiterates, in all capital letters that:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, [X] SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, RELIANCE OR ANY LOSS OF PROFITS OR REVENUES, WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES.

*Id.*, Ex. A at 10; *id.*, Ex. B at 11.

## B.    Plaintiff's X Account

The Complaint alleges that Plaintiff used his X account to "disseminate two civil cases of public import." Compl. ¶ 13. Plaintiff claims that "suppression of his reach" on X "derail[ed]" two "significant civil cases impacting the public." *Id.* ¶ 3. Plaintiff does not identify the posts, how they were "suppressed," the referenced cases, or how they were derailed. Instead, the Complaint contains only a sweeping assertion that "X.com . . . suppress[es] Plaintiff's content through shadow bans, deboosting, and limited visibility." *Id.* ¶ 15. Plaintiff's support for this proposition is that, despite gaining followers between 2023 and 2025, less of his "2024-2025" posts received "20 or more likes." *Id.* ¶ 16. Plaintiff also claims that "X.com flagged and deboosted" his "free speech critique on Yaccarino's account," and that "Plaintiff's posts exposing invisible replies were marked as spam," without alleging that either was connected to the civil cases X purportedly "derailed." *Id.* ¶¶ 18–19. Nevertheless, Plaintiff claims he "suffered damages exceeding $5 million due to suppression preventing communication of two civil cases—developed over months—to his followers and the public." *Id.* ¶ 22.

### C.    Musk's and Yaccarino's Posts on X

Plaintiff alleges that Musk and Yaccarino made public posts on the X platform from their personal accounts about "free speech." *Id.* ¶¶ 11, 12, 15. The alleged posts contain no semblance of terms or conditions for using the X platform, do not advertise any of X's paid services, and are directed at the public in general. The few posts identified by Plaintiff that even mention X were allegedly posted *after* Plaintiff joined the platform in 2023. *Id.*

## III.  <u>LEGAL STANDARDS</u>

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served [with the summons and complaint] in accordance with Fed. R. Civ. P. 4." *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013) (citation and internal quotation marks omitted). "Neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Id.* at 975. "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate," and "cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"Plaintiff bears the burden of proving that venue is proper." *W. Coast Reg'l Ctr., Inc. v. Jaddou*, No. 23-CV-06336-PCP, 2024 WL 3498242, at *3 (N.D. Cal. July 19, 2024). And "Section 1404(a). . . requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.'" *Li* v. *Amazon.com Services LLC*, 2023 WL 8720669, at *2 (N.D. Cal. Dec. 18, 2023) (quoting *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013)).

When a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" in support thereof, it should be dismissed for failure to state a claim under Rule 12(b)(6). *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). A complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pro se plaintiffs are

1   "required to meet these pleading standards, just like every other plaintiff." *Bayer v. City & Cnty.*

2   *of San Francisco*, 2023 WL 197525, at *1 (N.D. Cal. Feb. 13, 2023).

3   **IV.  ARGUMENT**

4       **A.      This Court Lacks Jurisdiction and Venue Is Improper**

5           The Complaint should be dismissed for three reasons independent of Plaintiff's failure to

6   state any claim (*infra* § IV.B.). First, Plaintiff failed to properly serve X. Second, this Court lacks

7   personal jurisdiction over X. Third, venue is improper in this District. Accordingly, this Court

8   should dismiss the Complaint or, at a minimum, transfer it to the Northern District of Texas.

9                   *1.      Plaintiff Failed to Properly Serve X*

10          Rule 4 makes clear that Plaintiff's failure to effectively serve the Complaint within 90

11  days of filing it warrants dismissal. *See* Fed. R. Civ. P 4(c)(1) ("The plaintiff is responsible for

12  having the summons and complaint served within the time allowed by Rule 4(m) and must furnish

13  the necessary copies to the person who makes service"); Fed. R. Civ. P (4)(m) ("If a defendant is

14  not served within 90 days after the complaint is filed, the court—on motion or on its own after

15  notice to the plaintiff—must dismiss the action without prejudice against that defendant or order

16  that service be made within a specified time."); *see also Phillips v. Securitas Sec. Servs. USA*, No.

17  C 17-06693 WHA, 2018 WL 3474186, at *3 (N.D. Cal. July 19, 2018) (granting motion to dismiss

18  and recognizing that "FRCP 12(b)(5) provides that a defendant may move a court to dismiss for

19  insufficient service of process").

20          Plaintiff's only attempt to serve X was by *mailing* the complaint and summons *himself* on

21  August 27, 2025—more than 90 days after he filed the Complaint on April 28, 2025. *See* ECF

22  No. 1; ECF No. 18 ("Notice Regarding Case Status"). This attempted service was improper and

23  dismissal is warranted for three independent reasons. First, Plaintiff's attempt "occurred after the

24  90-day period had already passed." *Innovative Sports Mgmt., Inc. v. Huaman*, No. 5:24-cv-06103-

25  PCP, 2025 U.S. Dist. LEXIS 9695, at *2 (N.D. Cal. Jan. 17, 2025) (dismissing claims). Second,

26  "purported service by 'certified mail'" is not valid service under any method permitted by Rule

27  4. *See Austin v. Lyft, Inc.,* No. 21-CV-09345-MMC, 2022 WL 395310, at *3 (N.D. Cal. Feb. 9,

28  2022) ("courts have uniformly rejected the possibility that the term 'delivering' under Rule

1   4(h)(1)(B) includes service by mail").[5] Third, only a "non-party," not Plaintiff, can effectuate

2   service. *See* Fed. R. Civ. P 4(c)(2) ("[a]ny person who is at least 18 years old and *not a party* may

3   serve a summons and complaint") (emphasis added); *Bustillo v. Deutsche Bank Tr. Co. Ams.*, No.

4   CV 09-05832 ODW (FMOX), 2009 WL 10868408, at *3 (C.D. Cal. Nov. 3, 2009) (dismissing

5   claims because "Plaintiff's proof of service, on its face, reveals that Plaintiff himself served these

6   defendants"). Having failed to timely serve X in a manner that complies with Rule 4, the

7   Complaint should be dismissed.

8        "Proceed[ing] without counsel does not excuse the failure to effectuate service." *Boose*

9   *v. Musk*, No. 25-CV-03366-AMO, 2025 WL 1836652, at *2 (N.D. Cal. July 3, 2025) (quashing

10  pro se litigant's service by mail); *see also Asbell v. Hamon*, No. 23-1801, 2025 WL 869206 (9th

11  Cir. Mar. 20, 2025) (affirming dismissal of pro se plaintiff's claims for failure to effect proper

12  service). Indeed, in denying Plaintiff's motion to proceed in forma pauperis without prejudice,

13  (ECF No. 12), this Court directed Plaintiff to its Pro Se Handbook that explains how to

14  effectuate service and warns "**you may not serve the defendant yourself**."

15  https://cand.uscourts.gov/pro-se-handbook (emphasis in original).

16       2.    *The Court Lacks Personal Jurisdiction over X*

17       Even if X was properly served, Plaintiff has not met his burden of establishing that this

18  Court has general or specific personal jurisdiction over X. *See Bristol-Myers Squibb Co. v. Super.*

19  *Ct. of Cal.*, 582 U.S. 255, 262 (2017).

20       No general jurisdiction exists because X is neither incorporated in, nor maintains its

21  principal place of business, in California. *Vantage Mobility Int'l Ltd. Liab. Co. v. Kersey Mobility*

22  *Ltd. Liab. Co.*, 836 F. App'x 496, 498 (9th Cir. 2020) (citing *Daimler AG v. Bauman,* 571 U.S.

23  117, 125 (2014)). Plaintiff correctly alleges that X is a Nevada corporation, but his conclusion

24  that X's principal place of business or headquarters is in California (Compl. ¶¶ 5, 9) is wrong.

25  Declaration of Kenneth M. Trujillo-Jamison ("Trujillo-Jamison Decl.") ¶ 3 & Ex. A (showing

26

27

28  _____

[5] Plaintiff did not mail "copies of the requisite notice and acknowledgment" required for service under Cal. Code of Civil Procedure § 415.30, nor has any such notice been "executed and returned by the party addressed." *Id.* at *7–8.

that X Corp. maintains its principal place of business in Texas).[6] Accordingly, X is not subject to general personal jurisdiction here. *See Johnson*, 2023 WL 8654930, at *2–4 (no general jurisdiction despite allegations that Ford "has its principal place of business within the state of California" where "Ford's Statement of Information filed with the California Secretary of State confirms that Dearborn, Michigan is Ford's principal place of business"); *White*, 2020 U.S. Dist. LEXIS 33734, at *1 (adopting report & recommendation to dismiss claims after "taking judicial notice of defendant's corporate Statement of Information" and finding that its principal place of business was not where plaintiff asserted). No other allegations connect X to California, let alone show that it has "continuous and systematic" connections such that it is "essentially at home" here. *Daimler AG*, 571 U.S. at 119. To the contrary, Plaintiff alleges that Defendant Musk, "*residing in Texas*" is "Chairman and CTO of X Corp." and "a primary architect of X.com's policies, public statements, and operational decisions." Compl. ¶ 6.

Nor does the Complaint establish specific jurisdiction, which requires showing *both* that X (1) "direct[ed] [its] activities" at California or otherwise purposefully availed itself of California's protections and laws, *and* (2) that the claims "arise[] out of or relate to [X's] forum-related activities." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The Complaint contains no factual allegations supporting either prong, so no specific jurisdiction exists. *See Geegieh v. Unknown Parties,* No. CV-24-02993-PHX-SMB, 2025 WL 1769766, at *4 (D. Ariz. June 26, 2025) (dismissing claims because "[t]he FAC lacks the allegations necessary to establish specific jurisdiction over X Corp.," and rejecting sufficiency of argument that "X Corp. operates a nationwide platform accessible in Arizona"). Plaintiff's group-pled conclusions that "[p]ersonal jurisdiction exists over Defendants due to their purposeful availment of California's market, with X Corp. domiciled here and Musk and Yaccarino directing operations from or into this state" (Compl. ¶ 10) are "bare bones assertions of minimum contacts" and "legal conclusions

---

[6] X respectfully requests that this Court take judicial notice of the Statement of Information for X filed with the California Secretary of State. *See, e.g.*, *Johnson v. Ford Motor Co*., No. 23-cv-01375-PCP, 2023 WL 8654930, at *2 (N.D. Cal. Dec. 14, 2023); *White v. Paypal, Inc*., No. 19-cv-08015-WHO, 2020 U.S. Dist. LEXIS 33734, at *1 (N.D. Cal. Feb. 27, 2020).

1    unsupported by specific factual allegations" that "will not satisfy [his] pleading burden." *Swartz*

2    *v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("allegations that '[defendants] directed

3    communication into the U.S. Western District of Washington and otherwise conducted business

4    therein' . . . are insufficient"); *Mission Trading Co. v. Lewis,* No. 16-CV-01110-JST, 2016 WL

5    6679556, at *1 (N.D. Cal. Nov. 14, 2016) (allegations that "Defendants are conducting business

6    in this District . . . with full knowledge that the damage caused by their acts are directed towards

7    residents of this venue" are insufficient).[7]

8           3.    *Venue Is Improper in This District*

9           Separately, Plaintiff, an Oklahoma resident, fails to establish any basis for suing in this

10   judicial district under 28 U.S.C. § 1391(b). No defendant, let alone all, reside in California, 28

11   U.S.C. § 1391(b)(1), and Plaintiff fails to allege that *any* of the events underlying his claims

12   occurred in California, let alone a "substantial" portion. 28 U.S.C. § 1391(b)(2); *see* Compl. ¶¶ 2,

13   6, 8 (alleging that Plaintiff resides in Oklahoma, that Defendant Musk, the "Chairman and CTO

14   of X Corp., residing in Texas" is the "primary architect" of "X.com's policies, public statements,

15   and operational decisions," and that Defendants reside in "California, Texas, and elsewhere");

16   *see also* Trujillo-Jamison Decl., Ex. A (showing that X Corp. maintains its principal place of

17   business in Texas). Plaintiff's contradictory conclusion that "algorithmic design and policy

18   decisions occurred here, and Defendants' public representations emanated from this district,"

19   Compl. ¶ 9,  are insufficient. *See Forsythe v. Holder*, No. C-08-5160 MMC, 2009 WL 2512028,

20   at *6 (N.D. Cal. Aug. 14, 2009) (dismissing claims "[b]ecause the FAC fails to include any facts,

21   as opposed to legal conclusions," where plaintiff alleged defendants' conduct "was done through

22   the Western Regional office of the FDA located in San Francisco") (citing *Iqbal*, 556 U.S. at 678).

23          At a minimum, this matter should be transferred to the Northern District of Texas pursuant

24   to the mandatory forum selection clause in the Relevant Terms. *See* 28 U.S.C. § 1406(a); *see also*

25   *Atl. Marine*, 571 U.S. at 62 (even if venue were proper, 28 U.S.C. § 1404(a) requires transfer to

26   the  forum  selected  by  the  parties  absent  "extraordinary  circumstances  unrelated  to  the

27   _____

28   [7] Plaintiff's equally conclusory and incorrect "venue" allegations (Compl. ¶ 9) are addressed
     below and are insufficient for the same reason. *Id.*

1    convenience of the parties"); *E. & J. Gallo Winery v. Andina Licores S.A.,* 446 F.3d 984, 992 (9th

2    Cir. 2006) ("[i]t is . . . clear that the Supreme Court has established a strong policy in favor of the

3    enforcement of forum-selection clauses"). The Relevant Terms designate Texas state or federal

4    courts as the exclusive venue for this dispute:

5          All disputes related to these Terms or the Services, including without limitation
           disputes related to or arising from other users' and third parties' use of the Services
6          and any Content made available by other users and third parties on the Services,
           will be brought exclusively in the U.S. District Court for the Northern District of
7          Texas or state courts located in Tarrant County, Texas, United States, and you
           consent to personal jurisdiction in those forums and waive any objection as to
8          inconvenient forum.

9

10   Scolari Decl. ¶ 8; *id.*, Ex. A at 11. Courts routinely transfer claims brought by X users to the

11   designated forum under X's forum selection clause. *Yuksel v. Twitter Inc*., No. CV-21-00137-

12   TUC-RM, 2022 WL 4367619, at *3 (D. Ariz. Sept. 21, 2022) ("The Court agrees with the findings

13   of other district courts that Twitter's forum selection clause is valid and enforceable . . . . ");

14   *Brittain v. Twitter, Inc*., No. 19-CV-00114-YGR, 2019 WL 8137718, at *2 (N.D. Cal. Mar. 15,

15   2019) (court properly transferred pro se plaintiff's case because Twitter's forum selection clause

16   is valid and enforceable against account holders); *Castronuova v. Meta Platforms, Inc*., No. 23-

17   CV-7511(KAM)(AYS), 2024 WL 1623274, at *7 (E.D.N.Y. Apr. 15, 2024) ("the Court must,

18   and will, transfer" users' case alleging X shadowbanned her under X's forum selection clause).

19         By creating and using his account, Plaintiff agreed to X's Relevant Terms. At all relevant

20   times, X has conditioned account creation on acceptance of its Terms of Service, which have been

21   prominently linked via blue hyperlinks on X's home page, between the links that allow users to

22   sign up for the X platform, and the link that allows current users to log in to their accounts. Scolari

23   Decl. ¶¶ 7, 14 ("the X sign up screen has stated that '[b]y signing up, you agree to the Terms of

24   Service.'"). Since 2023, Plaintiff has "maintain[ed] an active account on X.com." Compl. ¶ 4.

25   The Relevant Terms provide, as did the version in effect when Plaintiff created his account, that

26   X may revise the terms and that "[b]y continuing to access or use the Services after those revisions

27   become effective, you agree to be bound by the revised Terms." *Id.* ¶ 15; *id.*, Ex. A at 11; *id.*, Ex.

28   B at 11. Accordingly, Plaintiff agreed to the Relevant Terms. *See Cubria v. Uber Techs., Inc.*,

242 F. Supp. 3d 541, 548–49 (W.D. Tex. 2017) (under California and Texas law, plaintiff "agreed to be bound by future amendment, including the 2016 [terms] and the arbitration clause included within" by agreeing to 2013 terms when he created an account).

Additionally, Plaintiff expressly acknowledged the Relevant Terms on January 30, 2025. Scolari Decl. ¶ 21. As explained above, (*supra* § II.A.), beginning in mid-October 2024, X served a notification prompt about the Relevant Terms to users that logged in to their X accounts between October 16, 2024, and April 14, 2025. *Id.* ¶¶ 16–17. Among other things, the prompt notified Plaintiff that "[w]e're updating our Terms," linked to the Relevant Terms, and linked to a blog post explaining primary changes, including "**Governing law and forum changes**" highlighting that X "updated the governing law and forum for lawsuits to Texas as specified in our terms." Scolari Decl. ¶¶ 17–19 (emphasis in original). The prompt was served to Plaintiff until he affirmatively clicked the button at the bottom of the prompt labeled "Got it," on January 30, 2025. *Id.* ¶¶ 20–21. Plaintiff continued to use X months after acknowledging the Relevant Terms. Compl. ¶¶ 4, 11, 16; *see Yuksel,* 2022 WL 16748612, at *5 ("[plaintiff], by continuing to use Twitter's platform, has agreed to be bound" by the current terms of service). Setting aside Plaintiff's direct acknowledgment of the Relevant Terms, this Court routinely finds that continuing use after notification alone constitutes agreement to updated terms. *See, e.g.*, *Whalen v. NBA Props., Inc.*, No. 25-CV-01030-CRB, 2025 WL 1948591, at *7 (N.D. Cal. July 16, 2025) (collecting cases) (notice, "in combination with the plaintiff's continued use of services, was 'enough to establish reasonably conspicuous notice and assent to the [updated terms]'") (citation modified); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

The Complaint, premised entirely on X's supposed suppression of Plaintiff's posts on the platform, Compl. ¶ 1, falls squarely within the Relevant Terms' mandatory, exclusive forum selection clause which requires that "all disputes" related to either X's "Services" or the Relevant Terms themselves be brought "exclusively" in Texas. *See Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) ("A clause that covers disputes relating to an agreement . . . is broad[] and covers *any dispute with some logical or causal connection to the agreement*.")

1   (emphasis added); *accord Sun* v. *Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir.

2   2018) (a "dispute need not grow out of the contract or require interpretation of the contract in

3   order to relate to the contract."). Accordingly, the broad, mandatory forum selection clause in the

4   Relevant Terms requires that this matter be transferred to the Northern District of Texas.

5       **B.    On the Merits, All of Plaintiff's Claims Should Be Dismissed**

6       Jurisdiction and venue aside, all claims should be dismissed for four independent reasons.

7   First, the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"), immunizes

8   Defendants from liability premised on limiting the visibility of Plaintiff's posts on X's platform.

9   Second, the First Amendment protects X's editorial decisions about what content to disseminate

10  on its platform. Third, the valid disclaimer and limitation of liability clause in X's Relevant Terms

11  bars all claims, which arise out of Plaintiff's use of the X platform. Fourth, the Complaint fails to

12  state a claim.

13      The Relevant Terms provide that this dispute be governed by Texas law. Scolari Decl. ¶ 8

14  & Ex. A at 11 ("The laws of the State of Texas, excluding its choice of law provisions, will govern

15  these Terms and any dispute that arises between you and us, notwithstanding any other agreement

16  between you and us to the contrary")). Given Plaintiff's *pro se* status and assumption that

17  California law applies, the below arguments explain (when relevant) why all claims fail under

18  either states' laws.

19          *1.    Section 230 Immunizes Defendants from All Claims*

20      "No provider or user of an interactive computer service shall be treated as the publisher

21  or speaker of any information provided by another information content provider." 47 U.S.C.

22  § 230(c)(1) ("Section 230"). Courts routinely hold that X is an "interactive computer service

23  provider[]" and that its users' accounts and posts are "information provided by another

24  information content provider," under Section 230. *See e.g.*, *Al-Ahmed v. Twitter*, Inc., 603 F.

25  Supp. 3d 857, 880–81 (N.D. Cal. 2022) ("Twitter provides the prototypical service entitling it to

26  protections of Section 230' and 'every decision the Court has seen to consider the issue has treated

27  Twitter as an interactive computer service provider, even at the motion to dismiss stage.'")

28  "Section 230 must be interpreted to protect websites," like X, "not merely from ultimate liability,

1    but from having to fight costly and protracted legal battles." *Roommates*, 521 F.3d at 1174. Even

2    "close cases," which this is not, "must be resolved in favor of immunity." *Id.*

3          Accordingly, X is "perforce immune under Section 230" from suits, like this one, based

4    on "activity that can be boiled down to deciding whether to exclude material that third parties

5    seek to post online." *Id.* at 1162; *Computer v. Paxton*, 747 F. Supp. 3d 1011, 1042 (W.D. Tex.

6    2024) (quoting *Roommates*). All of Plaintiff's claims arise from X's supposed "suppress[ion] [of]

7    Plaintiff's content through shadow bans, deboosting, and limited visibility," (Compl. ¶¶ 1, 15)—

8    *i.e.*, "activity that can be boiled down to deciding whether to exclude material" that he sought to

9    post online. Specifically," the Ninth Circuit has made clear that removing or restricting postings

10   falls within a publisher's traditional functions," so "[Section 230](c)(1), by itself, shields from

11   liability all publication decisions, whether to edit, to remove, or to post, with respect to content

12   generated entirely by third parties." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal.

13   2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (dismissing free speech, Lanham Act, and other

14   claims); *accord Roommates*, 521 F.3d at 1162; *Computer*, 747 F. Supp. 3d at 1042.

15   Unsurprisingly, this Court dismissed materially identical claims against X with prejudice after

16   correctly holding that Section 230 immunized it from claims that it "suppress[ed] [p]laintiff's

17   speech" through "shadow banning." *Castronuova*, 2025 WL 1914860, at *2; *see also Lewis*, 461

18   F. Supp. 3d at 954 (dismissing all claims based on allegations that YouTube was "wrongfully

19   demonetizing, censoring, restricting and removing [plaintiff's] videos" despite "market[ing] itself

20   as a website that promotes free speech and freedom of expression free from censorship").

21         Section 230 immunizes X from Plaintiff's suit "[w]hether . . . styled as breach of contract,

22   tort, or fraud claims." *See Zhang v. Twitter Inc.*, 2023 WL 5493823, at *4 (N.D. Cal. Aug. 23,

23   2023), *aff'd*, No. 23-16125, 2025 WL 66050 (9th Cir. Jan. 10, 2025). Indeed, "[n]umerous courts

24   have applied Section 230(c)(1) at the pleading stage" to dismiss the claims advanced here with

25   prejudice. *E.g.*, *King v. Facebook, Inc.*, No. 19-CV-01987-WHO, 2019 WL 4221768, at *4 (N.D.

26   Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021) (collecting cases) (dismissing breach

27   of contract, UCL, implied covenant of good faith and fair dealing, and promissory estoppel

28   claims); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 28 (2021) (dismissing breach of contract,

1    promissory estoppel, and UCL claims based on alleged promises to not censor the platform

2    because "Twitter's alleged actions in refusing to publish and banning Murphy's tweets . . . reflect

3    paradigmatic editorial decisions that are protected by Section 230"); *Brittain v. Twitter, Inc.*, No.

4    19-cv-00114-YGR, 2019 WL 2423375, at *2–4 (N.D. Cal. June 10, 2019) (dismissing free

5    speech, breach of contract, promissory estoppel, and other claims); *Yuksel*, 2022 WL 16748612,

6    at *5 (collecting cases) (dismissing contractual claims alleging plaintiff was banned for political

7    speech). In sum, Section 230 immunizes X from all of Plaintiff's claims.[8]

8                    *2.    The First Amendment Independently Bars All of Plaintiff's Claims*

9          "A private party's collection of third-party content into a single speech product . . . is itself

10    expressive, and intrusion into that activity must be specially justified under the First

11    Amendment." *Moody*, 603 U.S. at 730. Accordingly, this Court recognizes that "[l]ike a

12    newspaper or a news network, Twitter [now X] makes decisions about what content to include,

13    exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First

14    Amendment." *Padilla*, 579 F. Supp. 3d at 1186–87 (collecting cases and dismissing claims based

15    on X Corp.'s First Amendment grounds); *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ("[T]he

16    First Amendment . . . can serve as a defense in state tort suits").

17          Plaintiff asks the government, this court, to impose liability on X based on X's alleged

18    decisions to "suppress," "censor," "manipulate," or "limit visibility" Plaintiff's posts on its

19    platform. Compl. ¶¶ 1–2. But the First Amendment protects "exactly th[is] kind of editorial

20    judgment[][,]" of "remov[ing], alter[ing], organiz[ing], prioritiz[ing], or disclaim[ing] posts."

21    *Moody,* 603 U.S. at 718, 735. Accordingly, the First Amendment mandates dismissal of all claims.

22    *E.g.*, *O'Handley*, 579 F. Supp. at 1186 (First Amendment barred claims based on "Twitter

23

24    _____

25    [8] Defendants Musk and Yaccarino "are immune under § 230 to the same extent" as X because
      Plaintiff "sues them based on" X's conduct. *Loomer*, 2023 WL 6464133, at 12 (Section 230
26    immunized executives who allegedly "falsely induced the public to believe that political
      candidates would be treated fairly"); *Igbonwa v. Facebook, Inc.*, No. 18-cv-02027-JCS, 2018 WL
27    4907632, at *3 (N.D. Cal. Oct. 9, 2018) (executive immunized from claims based on his
      congressional testimony), *aff'd*, 786 F. App'x 104 (9th Cir. 2019); Compl. ¶¶ 2 ,15,18, (alleging
28    "X.com" limited Plaintiff's reach).

1    appending labels to [plaintiff's] tweets . . . its limitation on the reach of [plaintiff's] tweets, and

2    its ultimate removal of [plaintiff's] account from the platform").[9]

3        *3.*   <u>*The Relevant Terms Separately Foreclose All Claims*</u>

4       The Relevant Terms, to which Plaintiff necessarily agreed when he created and used his

5    X account (*see supra* § II.A; Scolari Decl. ¶ 14) separately bar all claims. The Relevant Terms

6    provide that X may "remove or refuse to distribute any Content on the Services, limit distribution

7    or visibility of any Content on the service, suspend or terminate users, and reclaim usernames

8    *without liability to*" the user. Scolari Decl., Ex. A at 6 (emphasis added). The Relevant Terms'

9    waiver of liability clause confirms that the "X Entities make no warranty or representation and

10   disclaim all responsibility and liability for the deletion of, or the failure to store or to transmit,

11   any Content and other communications maintained by the Services." *Id.* at 10. Finally, the

12   Relevant Terms' limitation of liability clause emphasizes, in all capital letters, that:

13      TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE X
        ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL,
14      SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, RELIANCE OR
        ANY LOSS OF PROFITS OR REVENUES, WHETHER INCURRED
15      DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL,
        OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS
16      TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES.

17   *Id.*

18      All of Plaintiff's claims seek to hold X liable for allegedly "limit[ing the] visibility"

19   (Compl ¶ 2) of Plaintiff's posts: the very conduct disclaimed by the Relevant Terms. This alone

20   warrants dismissal. *E.g.*, *Murphy*, 60 Cal. App. 5th at 36 (enforcing the limitation of liability

21   clause in the Twitter Terms and affirming dismissal); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th

22   118, 125 (2015) (recognizing that similar clauses "have long been recognized as valid in

23

24   _____

25   [9] For these same reasons, Plaintiff's requested injunctive relief would be unconstitutional. *Moody*,
     603 U.S. at 733 ("in case after case, the [Supreme] Court has barred the government from forcing
26   a private speaker to present views it wished to spurn in order to rejigger the expressive realm");
     *see also Madsen v. Women's Health Ctr. Inc.,* 512 U.S. 753, 765 (1994) (refusing to grant
27   injunction that would offend another party's First Amendment rights). Separately, Plaintiff has
     not alleged "continuing" conduct with "present adverse effects" and thus lacks standing to seek
28   future injunctive relief. *Abdulaziz v. Twitter, Inc.*, No. 21-16195, 2024 WL 4688893, at *2 (9th
     Cir. Nov. 6, 2024).

California" and affirming dismissal); *Bomardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 233 (Tex. 2019) ("Limitation-of-liability clauses . . . are generally valid and enforceable" under Texas law).[10]

    *4.    <u>Absent Immunity, Plaintiff Fails to State a Claim</u>*

       Setting aside that Section 230, the First Amendment, and X's Terms foreclose all claims, Plaintiff still fails to state a claim. Because "this action arises from Defendants' [alleged] *misrepresentation* of X.com as a 'free speech platform,'" (Compl. ¶ 1), the heightened pleading standard of Rule 9(b) applies. *Kearns v. Ford Motor Co*., 567 F.3d 1120 (9th Cir. 2009) (applying heightened pleading standard to claims premised on alleged misrepresentations). But all claims fail even under the ordinary pleading standard, as the Complaint is devoid of factual allegations, relies on conclusory statements, and utilizes group pleading throughout. *Gazaway v. Nelson*, 224 WL 3381036, at *2 (N.D. Cal. July 10, 2024) (dismissing claims where "the complaint repeats group allegations . . . and lacks the differentiated allegations . . . required by Rule 8").

       **a.    Plaintiff Fails to State a Breach of Contract Claim**

       Tellingly, Plaintiff does not allege a breach of the Relevant Terms that "govern [X Corp.'s] relationship with [him]" and "[his] use of X." Scolari Decl., Ex. A at 2, 11. Nor could he: the Relevant Terms expressly permit the allegedly breaching conduct and have since Plaintiff created his account in 2023. *Id.*, Ex. A at 6; *Id.*, Ex. B at 7 (reserving X's right to "remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service . . . without liability to [Plaintiff].").

       Instead, Plaintiff invents a separate, contrary contract stitched from Musk and Yaccarino's aspirational public posts: "Defendants' free speech promises formed a contract, accepted by Plaintiff's payment and participation, breached by suppression, causing damages." Compl ¶ 26. This theory lacks any basis in law or fact. *See e.g., Fabien Ho Ching Ma v. Twitter, Inc*., No. 23-CV-03301-JST, 2025 WL 436636, at *4 (N.D. Cal. Feb. 7, 2025) (there is "no legal authority for

---

[10] For the avoidance of doubt, the version of X's Terms of Service effective when Plaintiff created his account in 2023 contained these same provisions. Scolari Decl., Ex. B at 7, 10, 11.

1    the proposition that Musk's post [on X] created a contract"); *Cubria*, 242 F. Supp. 3d at 547

2    ("California contract law is substantially the same as Texas contract law"). In fact, Plaintiff's

3    claims fail "from a simple chronological standpoint," as the alleged posts that even mention X

4    were made *after* Plaintiff created his account. *See Young v. Tesla, Inc.*, No. 1:21-CV-00917-JB-

5    SCY, 2022 WL 3355832, at *5 (D.N.M. Aug. 15, 2022) (rejecting argument that Musk's post

6    induced Plaintiff to enter a contract, amend an existing contract, or constituted a new promise).

7            At any rate, posts allegedly made by Yaccarino and Musk, Compl. ¶ 15, are far too vague

8    to constitute the "mutual assent or consent on definite or complete terms" required for contract

9    formation. *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007)

10   (contract formation "requires that the parties' reach mutual assent or consent on definite or

11   complete terms"); *Hammerhead Managing Partners, LLC v. Nostra Terra Oil & Gas Co. PLC*,

12   No. 3:18-CV-1160-N, 2019 WL 1403363, at *2 (N.D. Tex. Mar. 27, 2019) (similar); *Cal. Lettuce

13   Growers v. Union Sugar Co.,* 45 Cal. 2d 474, 481 (1955) ("[u]nless the court has ascertainable

14   provisions of agreement before it, there is no contract on which the court may act"); *Moore v.

15   Dilworth*, 142 Tex. 538, 542–43 (1944) (similar). The posts do not contain anything about

16   forming, offering, or accepting a contract, any terms, any supposed duration, or what performance

17   would be required. *E.g., Soil Retention Prods. v. Brentwood Indus.*, 521 F. Supp. 3d 929, 952

18   (S.D. Cal. 2021) (dismissing claims because the "complaint makes it entirely unclear" (1) when

19   the contract was formed; (2) what its terms were; (3) whether the defendant consented and how;

20   (4) what performance was required; and (5) its nature); *Wiskind v. JPMorgan Chase Bank, N.A.*,

21   No. 14-CV-04223 NC, 2015 WL 1798962, at *7 (N.D. Cal. Apr. 17, 2015) (dismissing claim for

22   failure to allege "the definite contractual terms"); *Ellis v. Wells Fargo Bank, N.A.*, No. CV V-15-

23   0092, 2016 WL 3017160, at *3 (S.D. Tex. May 26, 2016) (dismissing claim under Texas law

24   where "Plaintiff failed to allege a factual basis for a specific offer"). The Complaint is devoid of

25   any other allegations about an agreement or any other element required to state a claim, including

26   Plaintiff's performance, Defendant's breach, or any resulting damages, so it should be dismissed.

27   *See Watkins v. X Corp.*, No. 25-CV-04696-LJC, 2025 WL 2521733, at *4 (N.D. Cal. Sept. 2,

28   2025) (threadbare conclusions and recitations of elements are insufficient, and plaintiff "has not

1  alleged basic facts to support such a claim"); *Zhang*, 2023 WL 5493823, at *6 (dismissing breach

2  of contract claim because "while Plaintiff seeks millions of dollars in damages, he does not allege

3  any actual damages based on Twitter's alleged contractual breaches."[11]

4          **b.**    **Plaintiff Fails to State a 15 U.S.C. § 1125(a) ("Lanham Act")**

5                   **Claim**

6        Plaintiff lacks statutory standing to bring a Lanham Act claim because he asserts it as a

7  "user" of the X platform (Compl. ¶¶ 2–3) "and not as a *competitor* with a commercial interest in

8  reputation or sales." *Lewis*, 851 F. App'x at 724–25 (emphasis added); *Bacon v. Sw. Airlines Co*.,

9  997 F. Supp. 775, 781 (N.D. Tex. 1998) (no private right of action for consumers under

10  § 1125(a)). In *Lewis*, this Court held a user lacked standing to bring a materially identical Lanham

11  Act claim based on far more specific allegations than those here. There, the plaintiff claimed

12  YouTube falsely "market[ed] itself as a website that promotes free speech . . . free from

13  censorship," and "an equal, open and diverse public forum committed to American style free

14  speech," while censoring and demonetizing his posts, causing "lower and diverted viewership,

15  decreased and lost ad revenue, a reduction in advertisers, and damage to his brand, reputation and

16  goodwill." *Lewis*, 461 F. Supp. 3d at 958. The Ninth Circuit affirmed dismissal because "even if

17  [plaintiff] could allege facts to show . . . some loss to his commercial interest or reputational

18  harm," it occurred "by interacting with YouTube as a consumer, not as a competitor." *Lewis*, 851

19  F. App'x at 724.

20        Even if Plaintiff somehow had standing, his Lanham Act claim fails because the alleged

21  posts "are mere 'puffery.'" *Lewis*, 461 F. Supp. 3d at 958. The Ninth Circuit has held that

22  "braggadocio about [a] commitment to free speech constitutes opinions that are not subject to the

23  Lanham Act." *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020). The alleged posts

24  

25  ---

[11] This remains true even if the alleged posts were somehow construed as advertisements. "Ninth

26  Circuit and California law are clear: for an advertisement to constitute an offer that forms the
basis for a unilateral contract, the advertiser must, 'in clear and positive terms, promise[] to

27  render performance in exchange for something requested by the advertiser,' and the recipient of
the advertisement must have been able to conclude that 'by acting in accordance with the request

28  a contract would be formed." *Roley v. Google LLC*, No. 18-CV-07537-BLF, 2021 WL 1091917,
at *6 (N.D. Cal. Mar. 22, 2021), *aff'd*, 40 F.4th 903 (9th Cir. 2022).

are the same type of aspirational generalizations identified as "classic, non-actionable opinions or puffery" in *Lewis* and *Prager*. *Compare* Compl. ¶ 15 ("fortunately, X believes in free speech")) *with Prager Univ.*, 951 F.3d at 1000 ("YouTube believes that people should be able to speak freely, share opinions, foster open dialogue . . . "). Dismissal is even more appropriate here, where the alleged statements are not attributed to X.

> **c.    Plaintiff Fails to State a Cal. Bus. & Prof. Code § 17200 ("UCL") Claim**

The choice of Texas law in the Relevant Terms bars Plaintiff's California UCL claim. *E.g., Cory v. Stewart*, 103 F.4th 1067 (5th Cir. 2024) ("Under Texas rules, if the Sellers want to sue under a state statute, the Agreement's enforceable, applicable Delaware Choice of Law clause mandates that state be Delaware. The Sellers contractually precluded themselves from [Texas law]. End of Story.")

Even under California law, Plaintiff, "a resident of Oklahoma City, OK," (Compl. ¶ 2), lacks statutory standing for two reasons. First, "[t]he California UCL is a state statutory remedy designed to address harm suffered by residents of California, or harm to non-residents that occurred in California," and "California's Supreme Court has made clear that there is a strong presumption against the extraterritorial application of California law, including the UCL." *Silverman v. Wells Fargo & Co*., No. 18-CV-03886-YGR, 2018 WL 6046209, at *3 (N.D. Cal. Nov. 19, 2018) (collecting cases). No allegations suggest that any harm occurred in California, so Plaintiff's UCL claim fails—mistaken assertions that X's principal place of business or headquarters and Yaccarino's residence are in California are insufficient. *Id.* (dismissing non-resident's UCL claims despite undisputed allegations that defendants maintained their headquarters, principal places of business, and conducted substantial sales and marketing in California); *see also Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST ANX, 2012 WL 4761733, at *6 (C.D. Cal. Apr. 12, 2012) (allegations that "defendants' scheme was devised, implemented, and directed from defendants' offices in California" too vague and conclusory to support a UCL claim). Second, Plaintiff fails to plausibly allege any harm, let alone the more exacting "actual loss of income or financial support" required by the UCL. *E.g., Murphy*,

1   60 Cal. App. 5th at 40. The unsubstantiated "professional, reputational, and financial harm"

2   Plaintiff supposedly suffered (Compl. ¶ 23) is far too speculative. *Id.* (dismissing UCL claim

3   despite allegations that plaintiff, as a journalist, "relies on Twitter for her livelihood"); *Zilberstein*

4   *v. Petersen*, No. 18VECV00182, 2023 WL 5317486, at *3 (Cal. Super. Ct. Apr. 27, 2023)

5   (dismissing UCL claim based "indirect and speculative" claim that plaintiff "may have lost

6   income").

7         At any rate, Plaintiff fails to allege the "unlawful, unfair, or fraudulent business act or

8   practice" or "unfair, deceptive, untrue, or misleading advertising" required to state a UCL claim.

9   *Zhang*, 2023 WL 5493823, at *7 (plaintiff must allege defendants "engaged in one of the

10  practices the statute prohibits"). Of the few posts that even mention X, all of which were

11  allegedly posted *after* Plaintiff joined the platform, none advertise X's services, paid or free.

12  Courts routinely reject UCL claims premised on the vague, aspirational statements alleged here.

13  *E.g.*, *Murphy*, 60 Cal. App. 5th at 39–41 (dismissing UCL claim alleging that "Twitter engaged

14  in fraudulent activity because it held itself out to be a free speech platform" because "it is

15  unlikely that members of the public would be deceived by such statements" or construe them

16  "as a promise that Twitter would not take any action to self-regulate content on its platform.").

17        **d.    Plaintiff Fails to State a Breach of the Implied Covenant of**
18              **Good Faith and Fair Dealing**

19        Plaintiff cannot assert an implied covenant claim based on a nonexistent "free speech"

20  contract. *See supra* § IV.B.4.a; *Thomas v. JPMorgan Chase Bank, N.A.*, No. SA CV 15-00518

21  DMG (FFMx), 2015 WL 12683961, at *4 (C.D. Cal. Sep. 15, 2015) ("There is no obligation to

22  deal fairly or in good faith absent an existing contract") (citation modified); *Martin Res. Mgmt.*

23  *Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *6 (5th Cir. Sep. 20, 2021) (similar).

24        A claim based on the Relevant Terms fails too, because the implied covenant Plaintiff

25  seeks contradicts and expands X's obligations. *Storek & Storek, Inc. v. Citicorp Real Est., Inc.*,

26  100 Cal. App. 4th 44, 55 (2002) ("[T]he implied covenant of good faith and fair dealing cannot

27  contradict the express terms of a contract."); *Exxon Corp. v. Atl. Richfield Co.*, 678 S.W.2d 944

28  (Tex. 1984) (same); *see also Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349–50 (2000) (an

1    implied covenant "cannot impose substantive duties or limits on the contracting parties beyond

2    those incorporated in the specific terms of their agreement."). Plaintiff seeks an implied

3    covenant guaranteeing him unfettered reach on the X platform, but under the Relevant Terms

4    (and those in effect when Plaintiff created his account), X may moderate its platform and

5    "refuse to distribute any Content" or "limit distribution or visibility of any Content" as it sees

6    fit. Scolari Decl., Ex. A at 6; *id.*, Ex. B at 7. This claim should be dismissed. *See Symbolic*

7    *Aviation, Inc. v. PNCEF, LLC*, No. 10-CV-1228, 2010 WL 3584509, at *6 (S.D. Cal. Sept. 8,

8    2010) (dismissing claim because "a court is not at liberty to imply a covenant directly at odds

9    with a contract's express grant of discretionary power"); *Mercola.com, LLC v. Google LLC*, No.

10   3:22-cv-05567, 2023 WL 5860112, at *6 (N.D. Cal. Sep. 4, 2023), *aff'd*, No. 23-2608, 2024

11   WL 2745208 (9th Cir. May 29, 2024) (dismissing implied covenant claim because "YouTube's

12   actions were permitted by [its] Terms.").

13                    **e.      Plaintiff Fails to State a Promissory Estoppel Claim**

14           Plaintiff's promissory estoppel claim should be dismissed because X's Terms of Service

15   have always "govern[ed] [Plaintiff's] and other users' access to and use of [X's] services,

16   including [X's] various websites." Scolari Decl. ¶ 9 & Ex. A at 3; *id.*, Ex. B at 4; *see SHLA Grp.*

17   *Inc. v. Kissler & Co*., No. CV 23-07567 TJH (BFMx), 2025 U.S. Dist. LEXIS 37820, at *4 (C.D.

18   Cal. Mar. 3, 2025) ("Under California law, promissory estoppel is not applicable when a contract

19   exists."); *TuYo Holdings, LLC v. Transamerica Life Ins. Co*., No. SA-22-CV-00845-JKP, 2022

20   WL 17490982, at *4 (W.D. Tex. Dec. 6, 2022) (recognizing the same under Texas law).

21           In any event, Plaintiff fails to allege (through vague public posts or otherwise): (1) a

22   promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is

23   made; (3) that is both reasonable and foreseeable; and (4) that caused injury. *See Laks v. Coast*

24   *Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (Ct. App. 1976) ("a promise must be definite

25   enough that a court can determine the scope of the duty and the limits of performance"); *Gillum*

26   *v. Republic Health Corp*., 778 S.W.2d 558, 570 (Tex. App. 1989) (similar). Accordingly,

27   Plaintiff's claims should be dismissed. *Glen Holly Ent., Inc. v. Tektronix, Inc*., 352 F.3d 367,

28   381 (9th Cir. 2003) (affirming dismissal because alleged "representations were not definite

1   enough to be enforceable"); *Simulis, L.L.C. v. GE Capital Corp.*, No. 14-06-00701-CV, 2008

2   WL 1747483, at *2 (Tex. App. Apr. 17, 2008) (reliance on statements that never "discussed or

3   negotiated" any terms "is unreasonable as a matter of law and cannot be the basis for a

4   promissory estoppel claim"); *Murphy*, 60 Cal. App. 5th at 39 (no reasonable reliance on

5   promises that Twitter would not remove content).

            **f.**      **Plaintiff Fails to State a California Constitution "Free Speech" Claim**

8   Plaintiff cannot state a "free speech" claim based on X's moderation of its own private

9   platform because "California's free speech clause contains a state action limitation." *E.g., Golden*

10  *Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1023 (2001). Here, no state

11  action is even alleged, and this Court has rejected allegations "that Twitter [now X] is an entity

12  that may fairly be said to be a state actor." *Rutenburg v. Twitter, Inc.*, No. 4:21-cv-00548-YGR,

13  2021 WL 1338958, at *2 (N.D. Cal. Apr. 9, 2021). The state action requirement "protects a robust

14  sphere of individual liberty[,]" and "[i]t is not up to the courts to supervise social media platforms

15  through the blunt instrument of taking First Amendment doctrines developed for the government

16  and applying them to private companies." *Children's Health Def. v. Meta Platforms, Inc.*, 112

17  F.4th 742, 764 (9th Cir. 2024).[12]

18  Plaintiff argues that X "has evolved into a virtual public square" under *Pruneyard*

19  *Shopping Ctr. v. Robins*, 447 U.S. 74 (Compl. ¶¶ 36–37), but "[n]o court has extended the

20  *Pruneyard* line of cases, which concern physical property, to the Internet." *Divino Grp. LLC v.*

21  *Google LLC*, No. 19-cv-04749, 2022 WL 4625076, at *22 (N.D. Cal. Sept. 30, 2022)

22  (collecting cases) (rejecting argument that "YouTube is the cyber-equivalent of a town square")

23  (citation modified). Nor can any alleged post transform X into a public square or state actor.

24  *E.g.*, *Prager Univ.*, 951 F.3d at 997 (plaintiff "cannot avoid the state action question by calling

25

26

---

27  [12] Separately, California's Supreme Court ruled "there is no indication in the language of article

28  I, section 2(a), nor any evidence in the history of that provision, from which we may find, within that provision, an implied right to seek damages for a violation of the free speech right set out therein." *Degrassi v. Cook*, 127 Cal. Rptr. 2d 508, 514 (2002).

1  YouTube a public forum" using allegations that "YouTube declared itself a public forum,"

2  because that "is not a matter of election by a private entity.") Plaintiff's claims should be

3  dismissed, and his proposed extension of *Pruneyard* "would be a dramatic expansion of

4  California law" with "potentially sweeping consequences" and a "host of potential slippery

5  slope problems that are likely to surface." *Newman v. Google LLC*, No. 20-cv-04011-VC, 2022

6  WL 2556862, at *8 (N.D. Cal. July 8, 2022) (citation modified).

7  **V.    CONCLUSION**

8        For the foregoing reasons, X respectfully requests dismissal of Plaintiff's Complaint, or

9  alternatively, an order transferring this matter to the U.S. District Court for the Northern District

10  of Texas.

11                                    Respectfully submitted,

12  Dated:  September 24, 2025           WILLENKEN LLP

13

14                           By:   */s/ Kenneth M. Trujillo-Jamison*
                                   Kenneth M. Trujillo-Jamison
15                                   Attorneys for Defendant X Corp.

16

17

18

19

20

21

22

23

24

25

26

27

28