Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendant X Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TRUPIA,<br><br>           Plaintiff,<br><br>v.<br><br>X CORP., *et al.*,<br><br>           Defendants. | Case No.: 5:25-cv-03685-NW<br><br>Hon. Noël Wise<br><br>**DEFENDANT X CORP.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**<br><br>Date:       January 7, 2026<br>Time:       9:00 A.M.<br>Ctrm:       3 |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...............................................................................................1

II.  ARGUMENT .....................................................................................................2

   A.  Jurisdictional Defects Remain and Venue Is Still Improper...................2

      1.  Plaintiff Concedes He Has Not Properly Served the Complaint .................2

      2.  This Court Still Lacks Personal Jurisdiction over X Corp.........................3

      3.  At a Minimum, This Matter Should Be Transferred to the Northern District of Texas................................................................................5

   B.  The Opposition Confirms that Plaintiff Fails to State a Claim...............8

      1.  Section 230 Still Bars All Claims.....................................................8

      2.  The First Amendment Still Bars All Claims..........................................10

      3.  The Relevant Terms Still Bar All Claims.............................................10

      4.  Plaintiff Still Fails to State Any Claim ............................................12

III. CONCLUSION................................................................................................15

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

Page(s)

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ................................................................................................ 12

*Asbell v. Hamon*,
No. 23-1801, 2025 WL 869206 (9th Cir. Mar. 20, 2025) ........................................ 3

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) .................................................................................................... 7

*Benny v. Pipes*,
799 F.2d 489 (9th Cir. 1986) .................................................................................... 3

*Boose v. Musk*,
No. 25-CV-03366-AMO, 2025 WL 1836652 (N.D. Cal. July 3, 2025)................... 3

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ................................................................................... 4

*Calise v. Meta Platforms, Inc.*,
No. 22-15910, 103 F.4th 732 (9th Cir. 2024)........................................................... 9

*Castronuova v. Meta Platforms, Inc.,*
No. 4:24-cv-02523-YGR, 2025 WL 1914860 (N.D. Cal. June 10, 2025) .......... 8, 10

*Crowley v. Bannister*,
734 F.3d 967 (9th Cir. 2013) .................................................................................... 3

*Divino Grp. LLC v. Google LLC*,
No. 19-cv-04749, 2022 WL 4625076 (N.D. Cal. Sept. 30, 2022)........................... 15

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) .............................................................................. 8, 9

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) .................................................................................... 9

*Doe v. X Corp.*,
No. 25-cv-07597, ECF No. 40 (N.D. Cal. Nov. 5, 2025)...................................... 6, 7

*Efaw v. Williams*,
473 F.3d 1038 (9th Cir. 2007) .................................................................................. 3

*Eliza Labs, Inc. v. X Corp.*,
No. 25-cv-07243-AMO, 2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) .............. 6, 7

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
946 F.3d 1040 (9th Cir. 2019) .................................................................................. 9

*Fair Hous. Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .................................................................................. 9

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

*Forsythe v. Holder*,
No. C-08-5160 MMC, 2009 WL 2512028 (N.D. Cal. Aug. 14, 2009) ...................................... 5

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*,
26 Cal. 4th 1013 (2001) ............................................................................................... 15

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ......................................................................................... 7

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) .......................................................................................... 9

*Johnson v. Ford Motor Co.*,
No. 23-cv-01375-PCP, 2023 WL 8654930 (N.D. Cal. Dec. 14, 2023)........................................ 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......................................................................................... 4

*Lemmon v. Snap, Inc.*,
995 F.3d 1085 (9th Cir. 2021) ......................................................................................... 9

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020)......................................................................... 8, 13

*Lewis v. YouTube, LLC*,
244 Cal. App. 4th 118 (2015) ........................................................................................ 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ................................................................................................... 13

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
141 S. Ct. 13 (2020)..................................................................................................... 9

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ....................................................................................................... 7

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ................................................................................................... 10

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) .................................................................................... passim

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022)............................................................................ 10

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) ....................................................................................... 10

*Prager Univ. v. Google LLC*,
951 F.3d 991 (9th Cir. 2020) ................................................................................... 13, 15

*Pruneyard Shopping Ctr. v. Robins*,
447 U.S. 74 (1980) ............................................................................................... 10, 15

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ........................................................................................ 3

*Rostami v. Hypernet Inc.,*
　No. 22-cv-01813-EJD, 2023 WL 2717262 (N.D. Cal. Mar. 29, 2023) ..................................... 7

*Rowen v. Soundview Commc'ns, Inc.*,
　No. 14-cv-05530-WHO, 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ..................................... 7

*Scott v. Kuhlmann*,
　746 F.2d 1377 (9th Cir. 1984) ................................................................................... 2

*SEC v. Musk,*
　No. 1:18-cv-08865 (S.D.N.Y. 2018) .......................................................................... 13

*SEC v. Musk,*
　No. 1:25-cv-00105 (D.D.C. Jan. 14, 2025) ................................................................. 13

*SHLA Grp. Inc. v. Kissler & Co.*,
　No. CV 23-07567 TJH (BFMx), ECF No. 34 (C.D. Cal. Mar. 3, 2025) ............................... 15

*Sun v. Advanced China Healthcare, Inc.,*
　901 F.3d 1081 (9th Cir. 2018) ............................................................................... 5, 7

*Taddeo-Waite v. X. Corp.*,
　No. 3:25-CV-00874 (VDO), 2025 WL 3237422 (D. Conn. Nov. 20, 2025) ........................... 6

*Thomas v. JPMorgan Chase Bank, N.A.*,
　No. SA CV 15-00518 DMG (FFMx), 2015 WL 12683961 (C.D. Cal. Sep. 15, 2015) ........... 14

*Ting v. AT&T,*
　319 F.3d 1126 (9th Cir. 2003) ............................................................................... 12

*Walden v. Fiore*,
　571 U.S. 277 (2014) ............................................................................................... 4

*Williams v. X Corp.*,
　No. 1:25-00058-JB-MU, 2025 WL 2801626 (S.D. Ala. Oct. 1, 2025) ............................... 6, 7

*Zhang v. Twitter Inc.*,
　No. 23-cv-00980-JSC, 2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) ................................. 8

**Statutes**

28 U.S.C. § 1391(b)(2) ............................................................................................... 5

28 U.S.C. § 1404(a) ................................................................................................... 5

47 U.S.C. § 230 .................................................................................................... 1, 8

**Rules**

Fed. R. Civ. P. 4(f)(3) ................................................................................................ 3

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 5

Fed. R. Civ. P. 12(b)(5) ............................................................................................. 3

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

## I. **INTRODUCTION**

The Opposition (Dkt. 32) does not address *any* of the Motion's authority and confirms that various procedural and substantive defects require dismissal of all claims.

Plaintiff concedes his failure to effectuate proper service on X Corp., and he cannot avoid dismissal on that basis based on "actual notice" or his *pro se* status. With respect to personal jurisdiction, Plaintiff abandons his allegation that X Corp. maintains its principal place in California, and he has no answer for X Corp.'s authority showing that his vague allegations of "algorithmic design[,]" "policy decisions[,]" and "operations in the state" are insufficient to establish personal jurisdiction. Plaintiff's unalleged "partial residency" in California changes nothing. Relatedly, the Complaint still fails to allege that the challenged conduct occurred in California such that venue is even proper here.

At a minimum, the Opposition confirms that this case should be transferred to the Northern District of Texas under the Relevant Terms' forum selection clause. Plaintiff does not dispute that he received notice of and repeatedly agreed to the Relevant Terms, or that the forum selection clause covers all of his claims. His unalleged conclusion that the forum selection clause is nonetheless invalid finds no basis in law or fact. Indeed, in the past two months alone, *four* separate federal courts have held otherwise and transferred claims against X Corp. to the Northern District of Texas.

On the merits, the Opposition has no answer for any of X Corp.'s authority holding that it is immune from all claims under 47 U.S.C. § 230, the First Amendment, and the Relevant Terms. The Opposition's attempt to end-run Section 230 while unabashedly challenging X Corp.'s moderation activity is betrayed by its own authority. Separately, Plaintiff's misreading of X Corp.'s First Amendment defense does not preclude it. Finally, Plaintiff does not dispute that the Relevant Terms disclaim liability for the challenged actions, and his unsupported claims of unconscionability falls flat given the Motion's undisputed authority to the contrary.

Even if Plaintiff could avoid the immunity afforded by Section 230, the First Amendment, and the Relevant Terms (he cannot), his Opposition confirms that he fails to state any claim against X Corp. The Opposition concedes there was no breach of the Relevant Terms,

and it ignores the Motion's authority showing that vague, contrary public posts did not create a separate contract. Plaintiff's insistence that he asserts his Lanham Act claim as a "harmed consumer" is fatal to his claim, as uncontroverted authority establishes that the alleged statements were puffery at most. His UCL claim fares no better, as his unalleged "partial residency" does not remedy this Oklahoman Plaintiff's statutory standing issue, including the Complaint's failure to allege loss of income, or the glaring lack of unfair, fraudulent, or unlawful conduct—especially where the Relevant Terms permit the exact conduct challenged here. Plaintiff admits his implied covenant claim is premised on a non-existent free speech contract and seeks "unmoderated free speech" contrary to the Relevant Terms, so it fails for both of those reasons. Relatedly, Plaintiff does not dispute that the Relevant Terms govern X Corp.'s relationship with him, and he has no answer for his failure to allege clear promises or his inability to rely on them given that he created his account in 2023, let alone the unreasonableness of reliance given the Relevant Terms. Finally, the Opposition concedes that the Complaint does not allege any state action, which is fatal to his California Constitution claim, and Plaintiff ignores X Corp.'s authority rejecting the unprecedented extension of *Pruneyard* it proposes.

The Opposition's unfounded assertion that dismissal is "premature" is belied by the Motion's authority dismissing similar claims on similar grounds. Opp. ¶ 15 (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (irrelevant case *affirming* dismissal)).

Accordingly, X Corp.'s Motion should be granted.

## II. ARGUMENT

### A. Jurisdictional Defects Remain and Venue Is Still Improper

#### 1. Plaintiff Concedes He Has Not Properly Served the Complaint

Plaintiff does not dispute that his only attempt to serve X Corp. was by (i) *mailing* the complaint and summons (ii) *himself*, (iii) *more than 90 days after he filed the Complaint*, nor does he contest that dismissal is warranted for any of those three reasons. *See* Mot. at 16–17.[1]

---

[1] In this brief, references to page numbers in X Corp.'s Motion refer to the ECF page numbers at the top of each page.

Case No.: 5:25-cv-03685-NW

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

Plaintiff does not even argue that his attempt substantially complied with Rule 4.

Instead, ignoring the Motion's authority and the Court-provided Pro Se Handbook explaining how to effectuate service (ECF No. 12), Plaintiff claims his failure must be excused because "certified mail achieved actual notice" or because of his "*pro se* status." Opp. ¶ 7. Plaintiff is wrong. As X Corp. explained in its Motion, "[n]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." Mot. at 7 (citing *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013). And "[p]roceed[ing] without counsel does not excuse the failure to effectuate service." Mot. at 16–17 (quoting *Boose v. Musk*, No. 25-CV-03366-AMO, 2025 WL 1836652, at *2 (N.D. Cal. July 3, 2025) and *Asbell v. Hamon*, No. 23-1801, 2025 WL 869206 (9th Cir. Mar. 20, 2025)).

Contrary to Plaintiff's suggestion (Opp. ¶ 7), neither *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002), nor *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007), suggests that Plaintiff properly served X Corp. *Rio Properties* merely held that "the district court properly exercised its discretionary powers to craft alternate means of service" for an evasive foreign defendant under Rule 4(f)(3), while *Efaw* held that "the district court abused its discretion in *denying Defendan''s motion for dismissal based on Plaintiff's failure to comply with Rule 4's service* requirements" (emphasis added). For the avoidance of doubt, *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended,* 807 F.2d 1514 (9th Cir. 1987), (Opp. ¶ 7), held that the defendants did not waive service arguments and reiterated the rule that no waiver occurs where, as here, arguments are asserted in the first responsive pleading.

This case should be dismissed for insufficient service of process under Rule 12(b)(5).

*2.    This Court Still Lacks Personal Jurisdiction over X Corp.*

The Opposition erases any doubt that this Court lacks personal jurisdiction over X Corp. As for general jurisdiction, Plaintiff correctly abandons the allegation that X Corp. maintains its principal place of business in California. *See* Mot. at 17–18; ECF No. 22-7 at 2 (explaining that X Corp.'s principal place of business is in Texas); Opp. ¶ 8 (arguing instead that X Corp.'s "historical headquarters in San Francisco" establishes general jurisdiction). The location of X

Corp.'s "historical headquarters" before this suit says nothing about where it is at home now.[2]

As for specific jurisdiction, the Opposition does nothing to reconcile the Complaint's conflicting and conclusory allegations, which remain insufficient. *Compare* Opp. ¶ 8 *with* Mot. at 17–19 (explaining why alleged "representations targeted nationwide[,]" and conclusory statements about "algorithmic design" and "policy decisions" fail, especially considering allegations that Defendant Musk, *"residing in Texas"* is the "primary architect of X.com's policies, public statements, and operational decisions").

Plaintiff ignores the Motion's authority, instead relying solely on a privacy tort case that only highlights the sort of allegations missing here. *See* Opp. ¶ 8 (citing *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (finding jurisdiction because Shopify "deliberately targeted [plaintiff] in California"). In *Briskin*, the parties did not dispute that Plaintiff's harm occurred in California, and Shopify's surreptitious installation of software onto devices it knew were located in California constituted "entry into the state of California." *Id.* at 756. No reading of *Briskin* permits exercising personal jurisdiction here, where California harm and California-directed actions are both lacking. Plaintiff's argument that *he* had "partial California residency[,]" in 2023-2024 (Opp. ¶ 4), is not alleged in the Complaint, and in any event is irrelevant, considering that Plaintiff claims harm occurred in 2024-2025. In any event, Plaintiff's unalleged partial residence in California changes nothing: "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also Briskin*, 135 F.4th at 759 (emphasizing that Shopify knew that plaintiff was located in California when it

---

[2] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018), (Opp. ¶ 15b), unlike here, concerned documents noticed for a "reasonabl[y] dispute[d]" fact of what investors "already knew" in a securities fraud complaint despite well-pled allegations to the contrary. Moreover, *Khoja* permitted judicial notice of factual information that "can be accurately and readily determined from" a document published by a government agency, like X Corp.'s Statement of Information filed with the California Secretary of State, which Plaintiff does not dispute is accurate and authentic. *Id.* at 1001–02; *see, e.g., Johnson v. Ford Motor Co.*, No. 23-cv-01375-PCP, 2023 WL 8654930, at *2 (N.D. Cal. Dec. 14, 2023); *White v. PayPal, Inc.*, No. 19-cv-08015-WHO, ECF No. 10, at *1 (N.D. Cal. Feb. 27, 2020).

"reached out beyond its home state" to install software).

Thus, this case may be dismissed for lack of personal jurisdiction under Rule 12(b)(2).

        3.    *At a Minimum, This Matter Should Be Transferred to the Northern District of Texas*

Relatedly, the Motion made clear that Plaintiff's conclusory statements about "algorithmic design" and "representations" fail to establish venue. Mot. at 18–19 (citing *Forsythe v. Holder*, No. C-08-5160 MMC, 2009 WL 2512028, at *6 (N.D. Cal. Aug. 14, 2009)). Plaintiff ignores this authority, as well as his own contradictory allegations that Defendant Musk, "residing in *Texas*[,]" is the "primary architect" of "X.com's policies, public statements, and operational decisions." Compl. ¶ 6. Plaintiff's unalleged "partial residency" in California during 2023-2024 is irrelevant, especially where Plaintiff alleges harm in "2024-2025." Compl. ¶ 16. And the Opposition's incorrect insistence that "Defendant Yaccarino resides in California," Opp. ¶ 9, even if true, does not establish that a "substantial portion of events" in this case occurred here. *See* 28 U.S.C. § 1391(b)(2).

At any rate, the Motion explained why this matter should be transferred to the Northern District of Texas pursuant to the valid forum selection clause in the Relevant Terms. Mot. at 19–22; 28 U.S.C. § 1404(a); *see also Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081, 1088 (9th Cir. 2018) ("[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied"). Plaintiff does not dispute that he had notice of and agreed to the Relevant Terms, including when he received and clicked a button to acknowledge a prompt notifying him that "[w]e're updating our Terms," which linked to the Relevant Terms and a blog post explaining "**Governing law and forum changes**," and through his continued use of his X account. Nor does Plaintiff dispute that the forum selection clause covers all of his claims. Mot at 19–22. Accordingly, the case must be transferred absent a "strong showing" that the forum selection clause is invalid due to "fraud or overreaching[,]" "that enforcement would contravene a strong public policy of [California][,]" or that "trial in [Texas] will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1088.

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

The Opposition makes no such "strong showing": it merely concludes, without supporting allegations, that the clause is "unconscionable—adhesive, unilateral, and against public policy favoring California's free speech protections" while ignoring the horde of authority holding otherwise. Opp. ¶ 9; *but see* Mot. at 20–22 (collecting cases holding that the forum selection clause is valid and enforceable). Plaintiff's failure to meet his burden to avoid enforcement of the forum selection clause is unsurprising: in the past few months alone, four federal judges—two from this Court—have held that the Relevant Terms' forum selection clause is valid and enforceable and have transferred cases against X Corp. to the Northern District of Texas for the reasons explained in the Motion. *See Doe v. X Corp.*, No. 25-cv-07597, ECF No. 40 (N.D. Cal. Nov. 5, 2025) (rejecting arguments that no valid agreement existed or that "exceptional and unusual circumstances" justified setting it aside because of notice and assent even without the affirmative acknowledgment of Relevant Terms present here); *Eliza Labs, Inc. v. X Corp.*, No. 25-cv-07243-AMO, 2025 WL 3003766, at *6 (N.D. Cal. Oct. 27, 2025) (voluntary agreement to the Relevant Terms "undermine[s] any potential arguments as to fraud or overreaching[,]" "enforcing the forum selection clause would not contravene a strong public policy of California[,]" and litigating in Texas does not impose "grave inconvenience"); *see also Taddeo-Waite v. X. Corp.*, No. 3:25-CV-00874 (VDO), 2025 WL 3237422, at *2 (D. Conn. Nov. 20, 2025) (rejecting argument that plaintiff "never saw the Relevant Terms" and finding "no fraud, overreaching, or fundamental unfairness"); *Williams v. X Corp.*, No. 1:25-00058-JB-MU, 2025 WL 2801626, at *3 (S.D. Ala. Oct. 1, 2025) ("no suggestion" of "fraud or overreaching" because "Plaintiff has voluntarily agreed to the forum selection clause when he created and continued to use his X account[,]" and "litigating in the Northern District of Texas does not deprive plaintiff of his day in court"). This case is no different.

The Opposition cites no authority for the dubious proposition that a purported "free speech" public policy of California prevents transferring an Oklahoman's claims to Texas as the parties agreed. Rather, courts have rejected even California residents' arguments that "transfer would violate California's public policy against deceptive business practices (as codified in the UCL[]) and California's strong policy of protecting its citizens' rights to speech and expression."

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

*Rowen v. Soundview Communs., Inc*., No. 14-cv-05530-WHO, 2015 WL 899294, at *5 n.3 (N.D. Cal. Mar. 2, 2015) (finding "no cases where California courts have relied on these general public policies to invalidate a forum selection clause"); *see also Eliza Labs, Inc.,* 2025 WL 3003766, at *6 ("Plaintiffs' concerns over losing access to California causes of action are of no relevance because they do not relate to the question of forum but the separate issue of choice of law . . . ."). The Opposition's sole authority makes no mention of any policy of "free speech protection" and concerns an irrelevant mass arbitration waiver under drastically different circumstances than those here, as Plaintiff's own parenthetical makes clear. Opp. ¶ 9 (citing *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024) (noting adhesion, market power, and provisions absent here).[3]

Finally, the Opposition's bare assertion that transfer to the agreed Texas forum is "inconvenient" (Opp. ¶ 9) is foreclosed by *Atlantic Marine. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,* 571 U.S. 49, 62 (2013) (requiring transfer to the agreed forum except for "extraordinary circumstances *unrelated to the convenience of the parties*") (emphasis added). To the contrary, courts transferring similar matters to Texas under the Relevant Terms have noted that the public interest factors that may be considered favor transfer to Texas. *Doe*, No. 25-cv-07597, ECF No. 40, at 13 ("the Court finds that the Northern District of Texas has a greater capacity to expeditiously resolve Plaintiff's motion"); *Eliza Labs, Inc.*, 2025 WL 3003766, at *3 ("X Corp. is a Nevada Corporation with a principal place of business in Bastrop, [Texas] thus significantly limiting any local interest California may have in this controversy"); *Williams*, 2025 WL 2801626, at *4 ("a Texas court likely would be more familiar with applying Texas law, as

---

[3] Separately, *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972) controls enforcement of forum clauses, not California's unconscionability analysis. *Sun,* 901 F.3d at 1088 (applying *Bremen*). Regardless, the forum selection clause is neither procedurally nor substantively unconscionable for the same reasons discussed here and the Motion. *See also Rostami v. Hypernet Inc.,* No. 22-cv-01813-EJD, 2023 WL 2717262, at *7 (N.D. Cal. Mar. 29, 2023) ("California appellate courts have implemented this broader policy [approving forum selection clauses] and enforced forum selection clauses in adhesion contracts, particularly in a non-arbitration context"); *Murphy v. Twitter, Inc.,* 60 Cal. App. 5th 12, 37–38 (2021) (finding no substantive or procedural unconscionability in Twitter's Terms).

required under Defendant's choice of law clause").[4]

Accordingly, this case should be transferred to the Northern District of Texas.

**B. The Opposition Confirms that Plaintiff Fails to State a Claim**

*1. Section 230 Still Bars All Claims*

As the Motion explains, Section 230 "shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." Mot. at 23 (quoting *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021)). This remains true here, where the Opposition confirms that all claims indisputably challenge X Corp.'s "suppression" of Plaintiff's posts, "[w]hether . . . styled as breach of contract, tort, or fraud claims.'" *Id.* (quoting *Zhang v. Twitter Inc.*, No. 23-cv-00980-JSC, 2023 WL 5493823, at *4 (N.D. Cal. Aug. 23, 2023), *aff'd,* No. 23-16125, 2025 WL 66050 (9th Cir. Jan. 10, 2025), and citing *Castronuova v. Meta Platforms, Inc.,* No. 4:24-cv-02523-YGR, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025) (applying Section 230 to dismiss materially identical free speech, UCL, and breach claims based on allegations that X "suppress[ed] [p]laintiff's speech" through "shadow banning")).

The Opposition ignores the Motion's authority and insists that Section 230 is inapplicable to certain claims styled to challenge "X's own misrepresentation and suppression as breaches[.]" Opp. ¶ 10. As a preliminary point, no alleged statements are attributed to X Corp.—rather, Plaintiff impermissibly treats X Corp. as the speaker of information allegedly provided by Musk and Yaccarino. At any rate Section 230 is not so easily skirted—"[c]ourts routinely hold Section 230 immunizes platforms from contract claims, where, as here, they seek to impose liability for protected publishing activity." *Zhang*, 2023 WL 5493823, at *4. Supposed "false representations of X.com as a free speech platform" that "provide[s] . . . unmoderated free speech" (Opp. ¶¶ 1–2), if anything, "is not a specific promise, but a description of [X Corp.'s] moderation policy, and thus protected from liability under § 230." *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) (distinguishing cases where "[w]e have held that § 230 does not bar causes of action

---

[4]  Regardless, this assertion is belied by the fact that Plaintiff resides in Oklahoma, which is 200 miles from the Northern District of Texas but over 1500 miles from this Court.

Case No.: 5:25-cv-03685-NW

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

seeking to enforce contracts or promises *unrelated to a defendant's role as a publisher*") (emphasis added)); *see also Murphy*, 60 Cal. App. 5th at 29–30 (rejecting argument that "section 230 immunity does not apply here because the content at issue is Twitter's own promises")).

The Opposition's authority only proves that Section 230 immunizes X Corp. from liability premised on its moderation of Plaintiff's content, however styled. Opp. ¶ 10 (collecting cases). Each case emphasized that—unlike here—the challenged conduct "has nothing to do with" defendants' traditional publisher functions. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021) (Snap's faulty speed filter product "*has nothing to do* with its editing, monitoring, or removing of the content that its users generate through Snapchat") (emphasis added); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016) ("failure to warn claim *has nothing to do* with Internet Brands' efforts, or lack thereof, to edit, monitor, or remove user generated content") (emphasis added); *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (ordinance "does not require the Platforms to *review the content* provided by the hosts of listings on their websites"); *Calise v. Meta Platforms, Inc.*, No. 22-15910, 103 F.4th 732, 743 (9th Cir. 2024) (agreement to combat scam advertisements was "*separate from its status as a publisher*") (emphasis added); *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008) ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230[,]" but not defendant's creation of violative prompts at issue). Plaintiff's claims are not "unrelated to [X Corp.'s] role as a publisher," but rather premised entirely on that role. *Grindr Inc.*, 128 F.4th at 1154. Additionally, the alleged statements here are "too general to be enforced." *Id.*[5]

---

[5] The Opposition's other authority fares no better. Opp. ¶ 10 (citing *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019), *opinion withdrawn and superseded by Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1047 (9th Cir. 2019) (considering undisputed anticompetitive motive and irrelevant intellectual property carveout); *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13 (2020) (acknowledging, that current law "grant[s] sweeping protection to Internet platforms"). Any baseless accusation of "[r]etaliatory suppression post-Motion" (Opp. ¶ 3) is not properly before the court and supposedly occurred unrelated to and after the allegations in the Complaint. *Yuksel v. Twitter,*

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

## 2. The First Amendment Still Bars All Claims

The Opposition misconstrues X Corp.'s argument that X Corp.'s own free speech rights immunize it from all claims. Mot. at 23–24. As the Opposition correctly notes, *Moody v. NetChoice, LLC,* 603 U.S. 707 (2024), "upholds moderation rights." Opp. ¶ 10. And this Court has made clear that "[l]ike a newspaper or a news network, Twitter [now X] makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-87 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (collecting cases and dismissing claims because "Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies"). *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980), says nothing about X Corp.'s own free speech rights, and contrary to the Opposition's unsupported suggestion (Opp. ¶ 10), those rights do not dissolve under the force of a vague invented "promise" to not moderate the platform. *See Castronuova,*, 2025 WL 1914860, at *4 (collecting cases and dismissing UCL, free speech, and breach of implied covenant claims because "removing or suspending social media posts and accounts . . . are the exact sort of 'editorial decisions' cases like *NetChoice* have identified as a First Amendment right"); *Padilla*, 579 F. Supp. 3d at 1186–87 (dismissing claims based on Twitter's alleged "appending labels to his tweets . . . limitation on the reach of [plaintiff's] tweets, and its ultimate removal of his account from the platform" as barred by the First Amendment because "those acts are all interrelated" and "expressive").

## 3. The Relevant Terms Still Bar All Claims

Plaintiff does not dispute that he created and continued to use his X account, Compl. ¶ 4, nor does he contest that X conditioned his account creation and use on acceptance of its Terms of

---

*Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *6 (N.D. Cal. Nov. 7, 2022) ("in determining whether Rule 12(b)(6) dismissal is proper, 'a court may not look beyond the complaint' to allegations 'in opposition to a defendant's motion to dismiss.'") (quoting *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)).

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

Service, that X Corp.'s "Terms are publicly available on the X website and application," and that "[a]t all relevant times, X's Terms have been prominently linked via blue hyperlinks on X's home page, between the links that allow users to sign up for the X platform and the link that allows current users to log in to their accounts." Mot. at 11–14. And again, the Terms make clear that "[b]y continuing to access or use the Services after those revisions become effective, [the user] agree[s] to be bound by the revised Terms." Indeed, as described in the Motion and above, Plaintiff explicitly acknowledged the Relevant Terms on January 30, 2025. Mot. at 13. In any event, the version of X's Terms effective when Plaintiff created his account in 2023 contained these same provisions. Mot. at 13, 26 n.10 (citing ECF No. 22-4 at 7, 10, 11).

Thus, the Relevant Terms—to which he necessarily agreed—plainly bar his claims, all of which seek to hold X liable for allegedly "limit[ing] the visibility" of his posts. *See* Mot. at 25–26 (explaining that, among other things, the Relevant Terms provide that X may "remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users, and reclaim usernames without liability to" the user.) (quoting ECF No. 22-3 at 6); *see also* ECF No. 22-3 at 9 (permitting X Corp. to "terminate [Plaintiff's] account or cease providing [him] with all or part of the Services for any other reason or no reason at [X Corp.'s] convenience"). Plaintiff has no answer for these provisions, nor does he address the cases holding they are valid and enforceable and bar claims like those asserted here. Mot at 25 (citing *Murphy*, 60 Cal. App. 5th at 36).

Against this backdrop, Plaintiff's conclusory assertion that "[f]actual disputes exist on whether [he] *truly* acknowledged or agreed to the Terms, given their buried nature" (Opp. ¶ 11) (emphasis added), rings especially hollow. Aside from this conclusory assertion, Plaintiff's agreement to the Relevant Terms is undisputed. *See* Mot. at 11–14. And as the Motion shows, this assertion and Plaintiff's related, unsupported claims that the Relevant Terms "are unconscionable" for varying reasons or "overid[den]" by public posts such that "implied terms" govern in their stead (Opp. ¶ 11) have been summarily rejected by California courts. *See Murphy,* 60 Cal. App. 5th at 36 (holding terms were neither procedurally nor substantively unconscionable and affirming dismissal of claims alleging Twitter falsely "held itself out to be a

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

free speech platform and promised not to actively monitor or censor user content[,]" because of the limitation of liability clause, despite allegations they were "adhesive[,]" "unfairly one-sided[,]" and allowed Twitter "to suspend or terminate user accounts for petty, arbitrary, irrational, discriminatory, or unlawful reasons."); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (recognizing that similar clauses "have long been recognized as valid in California" and affirming dismissal). The Opposition's sole authority concerns a mandatory arbitration provision in an employment agreement and is irrelevant here. Opp. ¶ 11 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)).

The Opposition's final theory that "algorithmic opacity" or an unspecified "societal issue" renders the Relevant Terms unconscionable finds no support in the case it cites or elsewhere. Opp. ¶ 11 (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (mentioning neither argument and examining provisions irrelevant here under different circumstances)). Rather, courts have "recognized service providers that offer free services to Internet users may have a legitimate commercial need to limit their liability and have rejected claims that such limitations are so one-sided as to be substantively unconscionable." *Murphy*, 60 Cal. App. 5th at 36 (collecting cases) ("[t]erms allowing service providers to 'discontinue service, or remove content unilaterally,' . . . are routinely found in standardized agreements and enforced by courts").

### 4. Plaintiff Still Fails to State Any Claim

<u>Plaintiff's Breach of Contract Claim Fails.</u> The Opposition concedes, as it must, that no breach of Plaintiff's only contract with X Corp. (the Relevant Terms) occurred. Mot. at 26. Instead, it insists that vague public posts formed a completely contrary contract, ignoring the legion of authority holding otherwise. Opp. ¶ 12; *but see* Mot. at 27–28 (collecting cases). As the Motion explained, this theory fails from a chronological standpoint because Plaintiff created his account before any alleged post mentioning X, and separately because the vague posts allegedly made by Yaccarino and Musk come nowhere close to resembling an offer or contract. Mot. at 27–28. Indeed, the only two alleged posts that pre-date Plaintiff's account creation were supposedly made before Defendant Musk had even purchased Twitter. Compl. ¶¶ 3, 11, 15.

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

Moreover, the Complaint is devoid of allegations about any other element required to state a claim, including Plaintiff's performance, Defendant's breach, or any resulting damages. *Id.*

Contrary to the Opposition's suggestion, two inapposite securities cases do not "show[] statements bind." Opp. ¶ 12.a. (citing *SEC v. Musk,* No. 1:18-cv-08865 (S.D.N.Y. 2018), and *SEC v. Musk*, No. 1:25-cv-00105 (D.D.C. Jan. 14, 2025)). Neither case involved X Corp.'s moderation of the platform or aspirational public posts about free speech, let alone held that such posts form a contract. The idea that vague posts about free speech created some contract with Plaintiff contrary to Relevant Terms remains unfounded, and unsupported assertions of "market demand for free speech platforms" (Opp. ¶ 12.a.) does not change this fact.

Plaintiff's Lanham Act Claim Fails. As the Motion explained, Plaintiff, a "harmed consumer" (Opp. ¶ 12.b), lacks standing to bring a Lanham Act claim. Mot. at 28 (citing *Lewis*, 851 F. App'x at 724–25). The Opposition ignores *Lewis,* which is squarely on point, and the case Plaintiff cites only compels the conclusion that he lacks standing. Opp. ¶ 12.b (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014) ("To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) [an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations]") (brackets in original)).

Even if Plaintiff had standing (he does not), Plaintiff still fails to state a Lanham Act claim because, as the Motion explained (Mot. at 28–29), the alleged posts "are mere 'puffery.'" *Lewis*, 461 F. Supp. 3d at 958; *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020). The Opposition ignores *Lewis* and *Prager*, which control here, and Plaintiff's unsupported assertion "that specific inducements filling market void (censorship trends 2022-2025 reports)" changes nothing.

Plaintiff's UCL Claim Fails. Plaintiff has no response to the Motion's arguments or authority explaining why he, an Oklahoman, lacks standing to bring a UCL claim and why he otherwise fails to state a claim. Again, the Complaint does not plausibly allege any "harm" occurred at all, let alone the more exacting UCL requirements that "actual loss of income or financial support" occurred in California as a result of prohibited conduct. Mot. at 29 (collecting

DEF.'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR TRANSFER

cases). Indeed, Plaintiff does not even address his failure to allege actual loss of income or financial support. *See* Opp. ¶ 12 c. (arguing only "standing (harm tied to state, partial residency). Deceptive acts (misrepresentations, suppression)." Plaintiff's new, unalleged assertion of "partial residency" during 2023-2024 does not remedy these deficiencies, especially where the Complaint alleges supposed suppression in 2024-2025. Mot. at 29–30.

Likewise, Plaintiff has no rebuttal for the fact that the timing of the alleged posts and their vague, aspirational nature independently foreclose his claim. *Id.* (citing *Murphy*, 60 Cal. App. 5th at 39–41 (dismissing UCL claim alleging that "Twitter engaged in fraudulent activity because it held itself out to be a free speech platform" because "it is unlikely that members of the public would be deceived by such statements" or construe them "as a promise that Twitter would not take any action to self-regulate content on its platform")). The same is undeniably true here, where the Relevant Terms, like in *Murphy*, allow X Corp. to "remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service . . . without liability[,]" or even "terminate your account or cease providing you with all or part of the Services for any other reason or no reason at our convenience." ECF No. 22-3 at 6, 9.

Plaintiff's Implied Covenant Claim Fails. The Opposition concedes the dispositive fact that this claim "arises from promises" (Opp. ¶ 12d), rather than the Relevant Terms. Mot. at 30 (citing *Thomas v. JPMorgan Chase Bank, N.A.*, No. SA CV 15-00518 DMG (FFMx), 2015 WL 12683961, at *4 (C.D. Cal. Sep. 15, 2015) ("There is no obligation to deal fairly or in good faith absent an existing contract")). Regardless, as the Motion explained, Plaintiff's implied covenant claim fails because it contradicts and expands X's obligations under the Relevant Terms. Mot. at 30–31 (collecting cases). Again, the Relevant Terms that allow X to moderate its platform and "refuse to distribute any Content" or "limit distribution or visibility of any Content" without liability as it sees fit. *Id.* Plaintiff ignores the Motion's authority and makes no effort to square this broad grant of discretionary power with the purportedly implied covenant of "unmoderated free speech" (Opp. ¶ 12) that he seeks. Opp. ¶ 12d. This claim should be dismissed.

Plaintiff's Promissory Estoppel Claim Fails. The Opposition does not dispute that X's Terms of Service have always "govern[ed] [Plaintiff's] and other users' access to and use of

[X's] services, including [X's] various websites[,]" which alone warrants dismissal. Mot. at 31 (citing *SHLA Grp. Inc. v. Kissler & Co.*, No. CV 23-07567 TJH (BFMx), ECF No. 34, at 3 (C.D. Cal. Mar. 3, 2025) ("promissory estoppel is not applicable when a contract exists.")).

At any rate, as the Motion explained, Plaintiff fails to allege any of the requisite elements of a promissory estoppel claim, including a clear unambiguous promise, reliance that is reasonable and foreseeable, and resulting injury. Mot. at 31–32 (collecting cases). Despite the vague nature of the alleged promises, the impossibility of reliance given that Plaintiff created his account before they allegedly occurred, the unreasonableness of relying on them given the Relevant Terms, and the failure to allege any harm, the Opposition ignores the Motion's authority and offers only the following barebones assertion: "Clear promises; reasonable reliance; no Terms preclusion." Opp. ¶ 12e.  This claim should be dismissed. Mot. at 31–32.

Plaintiff's California Constitution Claim Fails. The Opposition concedes that the Complaint does not allege any state action, which is fatal to this claim. Opp. ¶ 12f ("Defendants' state-action argument distracts, as claim involves quasi-public forum status); *but see* Mot. at 24 ("California's free speech clause contains a state action limitation") (citing *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1023 (2001)).

At any rate, the Opposition ignores the Motion's authority explaining that neither *Pruneyard* nor any of the alleged statements transform X into a public square. Mot. at 32–33 (collecting cases). Plaintiff's contrary, unsupported assertion that "Pruneyard extends to virtual squares; X's role (Musk statements) triggers protections" is belied by the authority he ignores. Mot. at 32 (citing *Divino Grp. LLC v. Google LLC*, No. 19-cv-04749, 2022 WL 4625076, at *22 (N.D. Cal. Sept. 30, 2022) ("[n]o court has extended the Pruneyard line of cases, which concern physical property, to the Internet") and *Prager Univ.*, 951 F.3d at 997 (plaintiff "cannot avoid the state action question by calling YouTube a public forum" using allegations that "YouTube declared itself a public forum," because that "is not a matter of election by a private entity.")).

## III.  CONCLUSION

For these reasons, X respectfully requests dismissal of Plaintiff's Complaint, or alternatively, transfer of this matter to the U.S. District Court for the Northern District of Texas.

Respectfully submitted,

Dated:  December 8, 2025          WILLENKEN LLP


By:   /s/ Kenneth M. Trujillo-Jamison
       Kenneth M. Trujillo-Jamison
       Attorneys for Defendant X Corp.