Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
Sharon Song (Bar No. 313535)
ssong@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Attorneys for Defendant X Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TRUPIA,<br><br>          Plaintiff,<br><br>v.<br><br>X CORP., *et al.*,<br><br>          Defendants. | Case No.: 5:25-cv-03685-NW<br><br>Hon. Noël Wise<br><br>**DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANT X CORP.'S (1) MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS AND (2) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

I, Megan Scolari, declare as follows:

1.      I am a Legal Program Manager at X Corp.  I have held this position since September 9, 2019.  I submit this declaration in support of X Corp.'s (1) Motion to Transfer the Case to the Northern District of Texas ("Motion to Transfer") and (2) Motion to Dismiss the First Amended Complaint ("Motion to Dismiss" and together, the "Motions"), filed concurrently. I am over twenty-one years old, of sound mind, and fully competent and authorized in all respects to execute this Declaration.  I have personal knowledge of the facts set forth herein, which are true and correct.

2.      My duties and responsibilities in my role as a Legal Program Manager include managing electronic information created and stored in a variety of software systems X Corp. uses in the normal course of its business.  As part of my current role, I am regularly involved in assisting in the collection of evidence about aspects of services across the company's platforms and have become familiar with how the services have been delivered over time.

3.      The statements in this Declaration are based on my personal knowledge, facts learned during my investigation of this matter, and the business records of X Corp.  The business records were made by, or from information transmitted by, a person with knowledge of the events.  Such records are kept in the ordinary course of the regularly conducted activity of X Corp., and making such records is a regular practice of those activities.

4.      I received legal advice in connection with preparing this Declaration, but this Declaration is not intended to waive the attorney-client privilege or disclose any attorney work product.  Rather, it is intended to address purely factual matters that are relevant to the Motions.

5.      I am familiar with X Corp.'s Terms of Service ("TOS") for its social media platform X, sometimes called "Twitter," and the procedures by which users agree to the TOS, including updates to the TOS and notifications to users informing them of updates to the TOS.

6.      I understand that since Twitter was launched in 2006, X Corp. or its predecessor-in-interest, Twitter, Inc., have revised the TOS several times.  The current version of the Terms is publicly available at https://x.com/en/tos.  All prior material versions of the Terms are publicly available at https://x.com/en/tos/previous.

Docusign Envelope ID: 365B47E0-09B5-4A8C-B686-DCB6569E9B95

7.    At all relevant times, X's operative TOS has been prominently linked via blue hyperlinks on X's home page, between the links that allow users to sign up for the X platform and the link that allows current users to log in to their accounts, as reflected in the below screenshot:[1]







8.    A true and correct copy of the Terms of Service (effective November 15, 2024) as it was available on April 28, 2025 and December 9, 2025 (version 20), *i.e.*, the dates on which Plaintiff filed his initial Complaint and his FAC (the "Relevant TOS"), is attached hereto as Exhibit A.

9.    The Relevant TOS (version 20) provides that:

> The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

---

[1] This screenshot is of the web-archived version of the X log in screen as it was available on April 28, 2025—i.e., the date on which Plaintiff filed his initial Complaint.

DECL. OF MEGAN SCOLARI ISO X CORP.'S MOTION TO TRANSFER AND MOTION TO DISMISS

10. The Relevant TOS (version 20) also provides that:

These Terms of Service ("Terms") govern your and other users' access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

11. I have reviewed the First Amended Complaint in this matter ("FAC"; ECF No. 34-1).

12. Based on my investigation to date and my review of the FAC, I understand that Plaintiff created his account on March 22, 2023.

13. A true and correct copy of version 17 of the TOS (effective June 10, 2022, to May 17, 2023)—*i.e.*, the version of the TOS that was effective when Plaintiff created his X account—is attached hereto as Exhibit B.

14. Creating an X account requires users to affirmatively agree to the TOS. Specifically, at all relevant times, the X sign up screen has stated that "[b]y signing up, you agree to the Terms of Service." Thus, by creating his X account, Plaintiff necessarily accepted version 17 of the TOS.

15. In the Relevant TOS and at all relevant times, including in version 17, the TOS provided that X Corp. "may revise these Terms from time to time," and that continued access or use of the X platform constitutes acceptance of any change: "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."

16. It is X Corp.'s longstanding business practice to give notice of each materially new version of the TOS to all X users. Specifically, it is X Corp.'s longstanding business practice that each time that X Corp. has made material revisions to the TOS, X Corp. gives notice to X users by a notification prompt that appears when the user logs into their account.

17. The Relevant TOS (version 20) was published on October 16, 2024, and went into effect on November 15, 2024. X Corp. began notifying users about the most recent updated

Docusign Envelope ID: 365B47E0-09B5-4A8C-B68C-DCB6569E9B95

Relevant TOS on October 16, 2024.  In particular, X Corp. served a notification prompt to X users that logged in to their X accounts via X.com or the X application between October 16, 2024, and April 14, 2025.  The notification prompt served to X account holders provided:

**Updates to our Terms of Service and Privacy Policy**

We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center.

18.     The words "Terms of Service" in the above-mentioned notification prompt appeared as a blue hyperlink that led to the Relevant TOS.

19.     The words "X Privacy Center" in the above-mentioned notification prompt appeared as a blue hyperlink that led to the X Privacy Center blog post summarizing the primary changes, which can be found here:  https://privacy.x.com/en/blog/2024/updates-tos-privacy-policy.  Among other things, the blog post included the following language: "**Governing law and forum changes**: For users residing outside of the European Union, EFTA States, and the United Kingdom, we've updated the governing law and forum for lawsuits to Texas as specified in our terms."

20.     At the bottom of the above-mentioned notification prompt, the X user who received it was prompted to click a button labeled "Got it."  The prompt was served for 180 days or until the user clicked "Got it." A true and correct copy of the above-mentioned notification prompt that was served in connection with the update to the Relevant TOS (version 20) is attached hereto as Exhibit C.

21.     Plaintiff expressly accepted the Relevant TOS (version 20).  Specifically, based on my review of available data, I have confirmed that his account clicked on the "Got it" button on the above-mentioned notification prompt relating to the Relevant TOS on January 30, 2025.  In so doing, Plaintiff saw that X updated its TOS and expressly accepted the Relevant TOS.

22.     I have also confirmed upon reviewing available data that Plaintiff has maintained an active account on the X platform since he created it, and he continues to use and access the platform to this day (*i.e.*, January 21, 2026).

DECL. OF MEGAN SCOLARI ISO X CORP.'S MOTION TO TRANSFER AND MOTION TO DISMISS

23.     In addition, based on my investigation to date and my review of the FAC, I understand that Plaintiff alleges he subscribed to X Premium in July 2024, which required him to agree to X's Purchaser Terms of Service ("Purchaser Terms"). Also based on those investigations, I understand Plaintiff has continued to use Paid Services on X to this day (*i.e.*, January 21, 2026).

24.     The version of the Purchaser Terms that were in effect in July 2024 when Plaintiff subscribed to X Premium states that "X may revise these X Purchaser Terms of Service from time to time" and that "[b]y continuing to access or use the Paid Services after those revisions become effective, you agree to be bound by the revised X Purchaser Terms of Service."

25.     A true and correct copy of the version of the Purchaser Terms that were in effect when Plaintiff filed the initial Complaint in this case–*i.e.*, on April 28, 2025–is attached hereto as Exhibit D (the "Relevant Purchaser Terms"). And a true and correct copy of the Purchaser Terms that were in effect when Plaintiff filed his FAC in this case–*i.e.*, on December 9, 2025–is attached hereto as Exhibit E.

26.     The Relevant Purchaser Terms provide:

> The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. All disputes related to these Terms, including any disputes, claims, or controversies arising out of or relating to these Terms, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: January 21, 2026

Signed by:

*Megan Scolari*
2CD7F44EE33D40D...

Megan Scolari

DECL. OF MEGAN SCOLARI ISO X CORP.'S MOTION TO TRANSFER AND MOTION TO DISMISS