1  Kenneth M. Trujillo-Jamison (Bar No. 280212)
   ktrujillo-jamison@willenken.com
2  Sharon Song (Bar No. 313535)
   ssong@willenken.com
3  WILLENKEN LLP
   707 Wilshire Blvd., Suite 4100
4  Los Angeles, California 90017
   Telephone:  (213) 955-9240
5  Facsimile:   (213) 955-9250
6
7  Attorneys for Defendant X Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TRUPIA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>X CORP., *et al.*,<br><br>　　　　Defendants. | Case No.: 5:25-cv-03685-NW<br><br>**DEFENDANT X CORP.'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS**<br><br>Hon. Noël Wise<br><br>**Hearing**:<br>Date:　　April 29, 2026<br>Time:　　9:00 A.M.<br>Ctrm:　　3 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................1

II. FACTUAL BACKGROUND ...........................................................................................3

    A. Plaintiff's Allegations ...........................................................................................3

    B. The X Platform and the Relevant Terms .............................................................4

III. LEGAL STANDARD .......................................................................................................7

IV. ARGUMENT ....................................................................................................................7

    A. Plaintiff Agreed to the Relevant Terms, Including Their Forum Selection Clauses ..................................................................................................................7

    B. The Relevant Terms' Forum Selection Clauses Encompass All Claims .................9

    C. The Relevant Terms' Forum Selection Clauses Are Valid and Enforceable .........11

V. CONCLUSION ...............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atl. Marine Constr. Co. v. U.S. Dist. Court*,
 571 U.S. 49 (2013) ................................................................................................. 2, 7, 14

*Bauer v. Tacey Goss, P.S.*,
 No. C 12-00876 JSW, 2012 WL 2838834 (N.D. Cal. July 10, 2012) ..................................... 13

*Bromlow v. D & M Carriers, LLC*,
 438 F. Supp. 3d 1021 (N.D. Cal. 2020) ......................................................................... 10

*Castronuova v. Meta Platforms, Inc.*,
 No. 23-CV-7511(KAM)(AYS), 2024 WL 1623274 (E.D.N.Y. Apr. 15, 2024) ...................... 11

*Doe v. X Corp.*,
 No. 25-cv-07597-TLT, 2025 WL 3500543 (N.D. Cal. Nov. 6, 2025) ............................ 2, 8, 11

*Eliza Labs, Inc. v. X Corp.*,
 No. 25-cv-07243-AMO, 2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) .................... 2, 8, 11, 13

*Intershop Commc'ns AG v. Superior Court*,
 104 Cal. App. 4th 191 (2002) ..................................................................................... 12

*Lloyd v. Facebook, Inc.*,
 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .................................................................... 5

*Lu v. Dryclean-U.S.A. of Cal.*, Inc.,
 11 Cal. App. 4th 1490 (1992) ..................................................................................... 13

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972) .................................................................................................... 13

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
 858 F.2d 509 (9th Cir. 1988) ........................................................................................ 7

*Moretti v. Hertz Corp.*,
 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .................................................................. 13

*Murphy v. Twitter, Inc.*,
 60 Cal. App. 5th 12 (2021) ......................................................................................... 12

*Rostami v. Hypernet Inc.*,
 No. 22-cv-01813-EJD, 2023 WL 2717262 (N.D. Cal. Mar. 29, 2023) .................................. 12

*Sun v. Advanced China Healthcare, Inc.*,
 901 F.3d 1081 (9th Cir. 2018) ........................................................................ 7, 10, 11, 14

*Taddeo-Waite v. X Corp.*,
 No. 3:25-CV-00874 (VDO), 2025 WL 3237422 (D. Conn. Nov. 20, 2025) ................ 2, 7, 9, 12

*Whalen v. NBA Props., Inc.*,
 No. 25-CV-01030-CRB, 2025 WL 1948591 (N.D. Cal. July 16, 2025) .................................. 8

*Williams v. X Corp.*,
   No. 1:25-00058-JB-MU, 2025 WL 2801626 (S.D. Ala. Oct. 1, 2025) ............................ 2, 8, 12

*Yuksel v. Twitter Inc.*,
   No. CV-21-00137-TUC-RM, 2022 WL 4367619 (D. Ariz. Sept. 21, 2022) ......................... 12

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................................ 3

28 U.S.C. § 1404(a) ............................................................................................................ 1, 7

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 4

Cal. Civ. Code § 1670.5 ......................................................................................................... 4

<b><u>NOTICE OF MOTION AND MOTION TO TRANSFER</u></b>

**PLEASE TAKE NOTICE** that on April 29, 2026, at 9:00 A.M., before the Honorable Noël Wise, in Courtroom 3 of the United States District Court for the Northern District of California, this Motion to Transfer the Case to the Northern District of Texas filed by Defendant X Corp. ("X Corp.") will be heard. X Corp. hereby moves for an order transferring this case to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a) (the "Motion"). The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declarations of Megan Scolari and Seth Fuchs, the papers on file, and the argument received by the Court.

<b><u>STATEMENT OF RELIEF SOUGHT</u></b>

X Corp. respectfully requests that the Court transfer this action to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a).

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

**I.   INTRODUCTION**

Plaintiff Anthony Trupia ("Plaintiff") filed both his initial complaint (ECF No. 1) and the operative First Amended Complaint (ECF No. 34-1; "FAC") in the wrong forum.

The FAC remains focused on X Corp.'s alleged "algorithmic suppression of plaintiff's content" (FAC ¶ 2) and on posts allegedly made by Musk and Yaccarino. *See id.* ¶ 19. Plaintiff's claims are all related to these allegations. *See generally id.* ¶¶ 43-57.

When Plaintiff created and used his X account, he necessarily agreed to X's Terms of Service. The operative version of X's Terms of Service ("Relevant TOS") required that Plaintiff assert his claims in Texas—not here: "*All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States . . . .*" Declaration of Megan Scolari ("Scolari Decl.") ¶ 9; *id.*, Ex. A at § 6 (emphasis added). The operative version of the X Purchaser Terms of Service ("Relevant Purchaser Terms"; and collectively, with the Relevant

1  TOS, the "Relevant Terms"), which govern Plaintiff's use of Paid Services on X, contains a
2  forum selection clause that also provides that "[a]ll disputes related to these Terms, including
3  any disputes, claims, or controversies arising out of or relating to these Terms, will be brought
4  exclusively in the U.S. District Court for the Northern District of Texas or state courts located in
5  Tarrant County, Texas, United States . . . ." Scolari Decl. ¶ 26; *id.*, Ex. D at 13. Plaintiff's
6  claims—all of which concern X Corp.'s alleged moderation of that content—are clearly "related
7  to" his use of X and, therefore, fall within the broad scope of these forum selection clauses.

8        Indeed, Plaintiff himself *concedes* that "[t]he Terms' forum selection clause requir[es]
9  disputes [to be brought] in Texas . . . ." FAC ¶ 13. Despite that concession, Plaintiff alleges in
10 conclusory fashion that the forum selection clauses in the Relevant Terms are "unconscionable—
11 adhesive, unilateral, and against public policy favoring access to justice in the forum of
12 substantial contacts" and therefore should not be enforced. *Id.* Plaintiff is mistaken: the Supreme
13 Court has held that agreed-upon forum selection clauses like those contained in the Relevant
14 Terms are presumptively valid and must be enforced absent extraordinary circumstances not
15 present here. *See, e.g., Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 63 (2013).
16 Consistent with this guidance, *four* federal judges—including two from this Court—have held
17 that the Relevant TOS's and/or the Relevant Purchaser Terms' forum selection clauses are valid
18 and enforceable and have transferred cases against X Corp. to the Northern District of Texas in
19 just the past four months alone. *See Doe v. X Corp.,* No. 25-cv-07597-TLT, 2025 WL 3500543
20 (N.D. Cal. Nov. 6, 2025); *Eliza Labs, Inc. v. X Corp.*, No. 25-cv-07243-AMO, 2025 WL
21 3003766 (N.D. Cal. Oct. 27, 2025); *see also Taddeo-Waite v. X Corp.*, No. 3:25-CV-00874
22 (VDO), 2025 WL 3237422 (D. Conn. Nov. 20, 2025) (enforcing clause in the TOS and Purchaser
23 Terms); *Williams v. X Corp.*, No. 1:25-00058-JB-MU, 2025 WL 2801626 (S.D. Ala. Oct. 1,
24 2025). This case is no different.

25       The Court should enforce the Relevant Terms' forum selection clauses, to which Plaintiff
26 assented, and transfer this case to the Northern District of Texas.

27

28

## II. FACTUAL BACKGROUND

### A. Plaintiff's Allegations

Plaintiff alleges he resides in Oklahoma City, Oklahoma. *See* FAC ¶ 7. Plaintiff also alleges that X Corp. "is a corporation organized under the laws of Nevada, with its principal place of business in Bastrop, Texas," that "Elon Musk is the Chairman and CTO of X Corp., residing in Texas, and is the primary architect of X.com's policies, public statements, and operational decisions," and that "Linda Yaccarino is the CEO of X Corp., residing in California, and is responsible for overseeing X.com's operations and public representations." *Id.* ¶¶ 8–10. Plaintiff alleges he has "maintained an active account on X.com" since 2023 (*id.* ¶¶ 7, 27), and that he "signed up for a paid X.com account in July 2024 at the original $8 monthly rate, then upgraded to the Premium+ tier shortly after its introduction in November 2024." *Id.* ¶ 28.

The FAC alleges that X Corp. engaged in "algorithmic suppression of Plaintiff's content" on X (*id.* ¶ 3), purportedly demonstrated because his posts "disseminat[ing] two civil cases of public import (*Trupia v. Roberts et al* 5:2025cv00621, and *Trupia v. Heritage Hard Assets LLC et al* 5:2024cv00498)" allegedly got "less reach" than other posts he made in 2023. FAC ¶ 17. Plaintiff also claims that "X flagged and deboosted" his "critique of free speech practices posted on Yaccarino's account," that "Plaintiff's posts exposing invisible replies were marked as spam," that a third-party user was required "to complete verification steps" after messaging him on the X platform in September 2025, and that the price of his X Premium subscription increased in November 2025 "without proportional value." *Id.* ¶¶ 4, 24–25, 28–42. According to Plaintiff, posts from Yaccarino and Musk "that X.com was a 'free speech platform'" and a "public square" (*id.* ¶¶ 14–19), and the "promised benefit of 'priority/boosted placement in replies, mentions, and searches,' formed enforceable obligations to provide unmoderated free speech to the extent allowed by law[,]" which X Corp. allegedly broke by purportedly suppressing his content. *Id.* ¶ 48.

Based on these allegations, Plaintiff asserts seven claims against X Corp.: (1) "Violation of the Lanham Act (15 U.S.C. § 1125(a)) - False Advertising"; (2) "Breach of Contract"; (3) "Breach of Implied Covenant of Good Faith and Fair Dealing"; (4) "Promissory Estoppel";

(5) "Unfair Competition (Cal. Bus. & Prof. Code § 17200)"; (6) "Declaratory Relief - Unconscionable Contract (Cal. Civ. Code § 1670.5)"; (7) "Violation of California Free Speech Protections (Pruneyard Doctrine)." FAC ¶¶ 43–57. Plaintiff demands "[c]ompensatory damages in an amount to be proven at trial, but not less than $5,000,000[,]" punitive damages, "[i]njunctive relief enjoining Defendants from further suppression and requiring transparency[,]" declaratory relief that "the subscription terms and TOS are unconscionable[,]" and attorneys' fees. *Id.* at 15 (Section VI, Prayer for Relief).

### B. The X Platform and the Relevant Terms

In creating, accessing, and using his X account, Plaintiff affirmatively agreed to the Relevant TOS. X Corp. is a private company that operates an online platform where users like Plaintiff can make and share posts. *See generally* FAC. To create and use an X account, users must agree to a set of binding Terms of Service that "govern . . . users' access to and use of [X Corp.'s] services," and are at all times publicly available on the X website and application. Scolari Decl. ¶¶ 7, 10, 14; *id.*, Ex. A at 2. At all relevant times, X's operative TOS has been prominently linked via blue hyperlinks on X's home page, between the links that allow users to sign up for the X platform and the link that allows current users to log in to their accounts, as reflected in the below screenshot:



*Id.* ¶ 7.

At all relevant times, including when Plaintiff created his account in March 2023, *see id.*

¶¶ 12–13, the Relevant TOS provided that "[b]y using the Services you agree to be bound by these Terms." *Id.*, Ex. A at 1; *id.*, Ex. B at 1.[1] And at all relevant times, the Relevant TOS has provided that X Corp. "may revise the terms from time to time," and that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶ 15; *id.*, Ex. A at § 6.[2]

The Relevant TOS contained the following choice of law and mandatory forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and [users] consent to personal jurisdiction in those forms and waive any objection to inconvenient forum.

*Id.* ¶ 9; *id.*, Ex. A at § 6.[3] X Corp.'s records further show that Plaintiff clicked to acknowledge the Relevant TOS on January 30, 2025. *See id.* ¶ 21.

When Plaintiff "signed up for a paid X.com account in July 2024 at the original $8 monthly rate" (FAC ¶ 28), he necessarily agreed to the X Purchaser Terms of Service ("Purchaser Terms"). When he subscribed to X Premium, Plaintiff was required to click a

---

[1] And at all relevant times, "Services" was defined broadly to include X's "various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services')." Scolari Decl., Ex. A at 1; *id.*, Ex. B at 1.

[2] The Relevant TOS also defines the "X Entities" as "X Corp., its parents, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors." *Id.*, Ex. A at § 5.

[3] This Court may take judicial notice of the Relevant TOS, as well as the Relevant Purchaser Terms (as defined above) because they are available on X's website and their validity and authenticity cannot reasonably be in dispute. *See Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022).

"Subscribe & Pay" button, directly beneath which appeared the sentence: "By subscribing, you agree to our Purchaser Terms of Service." Declaration of Seth Fuchs ("Fuchs Decl.") ¶ 7. The words "Purchaser Terms of Service" were in blue font, in contrast to the lighter text around it, and contained a hyperlink directing users to a webpage where the Purchaser Terms could be reviewed in full. *Id.* ¶ 8. Clicking on the "Subscribe & Pay" button took Plaintiff to a separate third-party webpage where Plaintiff input his contact information and a payment method, and after inputting that information and clicking on the "Subscribe" button at the bottom of that webpage, Plaintiff subscribed to X Premium. *Id.* ¶ 9.

The version of the Purchaser Terms in effect when Plaintiff allegedly signed up for a paid account on X in July 2024 stated that "X may revise these X Purchaser Terms of Service from time to time" and that "[b]y continuing to access or use the Paid Services after those revisions become effective, you agree to be bound by the revised X Purchaser Terms of Service." Scolari Decl. ¶ 24.[4] Plaintiff alleges he has "maintained an active account on X.com" since 2023 (FAC ¶¶ 7, 27), which he continues to use and access to this day. *See* Scolari Decl. ¶ 22; *see also* FAC ¶¶ 39–40 (alleging a third-party user "viewed Plaintiff's pinned video" on X and sent Plaintiff a message through X in September 2025). The Relevant Purchaser Terms contain a forum selection clause that provides: "All disputes related to these Terms, including any disputes, claims, or controversies arising out of or relating to these Terms, will be brought exclusively in the federal or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum." Scolari Decl. ¶ 26; *id.*, Ex. D at 13.[5]

Plaintiff concedes that "[t]he Terms' forum selection clause requir[es] disputes in Texas[.]" FAC ¶ 13.

---

[4] The Purchaser Terms define "Paid Service" as "certain features [a user may access] in exchange for payment of a one-time or recurring fee, as applicable to the relevant features." Scolari Decl., Ex. D at 2.

[5] The Relevant Purchaser Terms also define the "X Entities" as "X, its parents, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors." *Id.*, Ex. D at 11.

## III. LEGAL STANDARD

A forum selection clause "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine*, 571 U.S. at 59. "[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 59–60 (internal quotations omitted). "[A] resisting party bears a heavy burden in overcoming a presumptively enforceable forum selection clause." *Id*. at 219 (quotations omitted). "Only under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied." *Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1088 (9th Cir. 2018).

## IV. ARGUMENT

This Court should transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) because (1) Plaintiff agreed to the mandatory, exclusive forum selection clauses in the Relevant Terms; (2) the clauses encompass the claims at issue; and (3) the clauses are valid and enforceable.[6]

### A. Plaintiff Agreed to the Relevant Terms, Including Their Forum Selection Clauses

The FAC, filed months after X filed its Motion to Dismiss or Transfer the initial complaint (the "Prior Motion"), *concedes* that "[t]he Terms' forum selection clause requir[es] disputes in Texas[.]" FAC ¶ 13. Plaintiff's Opposition to X's Prior Motion also did not dispute that Plaintiff had notice of and agreed to the Relevant TOS. *See generally* ECF No. 32.

---

[6] That unserved Defendants Musk and Yaccarino are named in their capacities as X Corp. executives does not impact the Court's transfer analysis. *See Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509 (9th Cir. 1988) ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses"). In any event, Mr. Musk and Ms. Yaccarino, as current or former "officers, directors, [or] employees" of X Corp., fall within the definition of "X Entities" in the Relevant TOS, and therefore could enforce the Relevant Terms' forum selection clause here. *See* Scolari Decl., Ex. A at § 5; *Taddeo-Waite*, 2025 WL 3237422, at *3 ("'X Entities' includ[ed] X Corp.'s 'related companies'" and thus, was "broad enough such that X.AI Corp.'s enforcement of the [forum selection] clauses was foreseeable.").

Even if Plaintiff tries to backtrack from his concession, the FAC's allegations further confirm that Plaintiff necessarily agreed to the Relevant TOS. According to the FAC, Plaintiff has "maintain[ed] an active account on X.com" since 2023 and has used his account as late as September 22, 2025. FAC ¶¶ 7, 27, 39–40. Indeed, Plaintiff has continued to use and access X to this day, months after X Corp.'s Prior Motion highlighted that Plaintiff was bound to the Texas forum selection clause by, among other things, "continuing to access or use the Services." Scolari Decl. ¶¶ 15, 22; *see* ECF No. 22 at 19–22; ECF No. 33 at 10–13. At all relevant times, X has conditioned account use and creation on acceptance of X's Terms of Service, which have been prominently linked via blue hyperlinks on X's home page, between the links that allow users to sign up for the X platform and the link that allows current users to log in to their accounts. Scolari Decl. ¶¶ 7, 14 ("the X sign up screen has stated that '[b]y signing up, you agree to the Terms of Service'"). And the Relevant TOS provides, as did the version in effect when Plaintiff created his account, that X Corp. may revise the terms and that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶ 15; *id.*, Ex. A at § 6; *id.*, Ex. B at § 6. In sum, Plaintiff necessarily agreed to the Relevant TOS—including its forum selection clause—when he created and used his X account. *See* FAC ¶ 13; Scolari Decl. ¶¶ 12–15; *Eliza Labs*, 2025 WL 3003766, at *4 ("there can be no serious question as to whether Plaintiffs voluntarily assented to" X's Terms and the Texas Forum selection clause "by acknowledging receipt and continuing to use the X platform"); *Doe*, 2025 WL 3500543, at *6 (finding adequate notice under the above-described circumstances even absent the direct acknowledgement present here, holding that "according to the explicit terms of the contract Plaintiff agreed to, continued use of the platform manifested his assent to the Terms of Service as they were revised"); *see also Williams*, 2025 WL 2801626, at *3 ("Plaintiff has voluntarily agreed to the [Texas] forum selection clause when he created and continued to use his X account"); *accord Whalen v. NBA Props., Inc.*, No. 25-CV-01030-CRB, 2025 WL 1948591, at *7 (N.D. Cal. July 16, 2025) (collecting cases) (notice and continued use of services was "enough to establish . . . assent to the [updated terms]").

1  Plaintiff also necessarily agreed to the Relevant Purchaser Terms when he "signed up for a paid X.com account in July 2024 at the original $8 monthly rate" (FAC ¶ 28) and by continuing to use those paid services. To complete his subscription, Plaintiff was required to click a "Subscribe & Pay" button, directly beneath which appeared the sentence: "By subscribing, you agree to our Purchaser Terms of Service." Fuchs Decl. ¶ 7. The words "Purchaser Terms of Service" were in blue font, in contrast to the lighter text around it, and contained a hyperlink directing users to a webpage where the Purchaser Terms could be reviewed in full. *See id.* ¶ 8.

The version of the Purchaser Terms when Plaintiff allegedly signed up for a paid account on X stated that "X may revise these X Purchaser Terms of Service from time to time" and that "[b]y continuing to access or use the Paid Services after those revisions become effective, you agree to be bound by the revised X Purchaser Terms of Service." Scolari Decl. ¶ 24. Plaintiff further alleges he has "maintained an active account on X.com" since 2023, which he used as recently as September 22, 2025. FAC ¶¶ 7, 27; *see id.* ¶¶ 39–40 (alleging that a third-party user "viewed Plaintiff's pinned video" on X, indicating Plaintiff's X account was active on that date, and that the third-party user sent Plaintiff a message through X). Indeed, he continues to use and access the platform to this day. *See* Scolari Decl. ¶¶ 22. Finally, in the FAC, Plaintiff implicitly concedes he agreed to the Relevant Purchaser Terms. *See* FAC ¶ 55 (seeking declaratory relief that "[t]he subscription terms [*i.e.*, the Relevant Purchaser Terms] . . . are unconscionable"). In sum, Plaintiff necessarily agreed to the Relevant Purchaser Terms—including its forum selection clause—by paying for Paid Services, upgrading his account to X Premium+, and continuing to access or use the Paid Services. *See Taddeo-Waite*, 2025 WL 3237422, at *9 (enforcing Purchaser Terms' forum selection clause because "Plaintiff would necessarily have been presented with— and had the opportunity to review—the Purchaser Terms of Service before purchasing an X Premium subscription").

### B. The Relevant Terms' Forum Selection Clauses Encompass All Claims

All of Plaintiff's claims fall squarely within the broad scope of the forum selection clauses contained in the Relevant Terms. The Relevant TOS first explains that the terms "govern your and other users' access to and use of our services, including our various websites, SMS, APIs,

email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services'), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as 'Content')." Then, its forum selection clause provides that "[a]ll disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services will be brought *exclusively* in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States." Scolari Decl. ¶ 9; *id.*, Ex. A at § 6 (emphasis added). The Relevant Purchaser Terms, which explain that they "govern [the user's] use of Paid Services . . . .," similarly provide that "[a]ll disputes related to these Terms, including any disputes, claims, or controversies arising out of or relating to these Terms, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States. . . ." *Id.*, Ex. D at 13.

"A clause that covers disputes *relating to* an agreement," like the Relevant Terms' forum selection clauses, "is broad[] and covers any dispute with some logical or causal connection to the agreement." *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) (emphasis added); *accord Sun*, 901 F.3d at 1086 (a "dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract")

Here, all claims relate to Plaintiff's use of X (*i.e.*, the Services) or Content appearing on X. The FAC chiefly complains of X's alleged "algorithmic suppression of plaintiff's content" (FAC ¶ 2), and posts allegedly made by Musk and Yaccarino on X (*id.* ¶ 19). Plaintiff also takes issue with "Platform Features and Buttons" on X (*id.* ¶ 35) and a third-party user's attempt to message him on the platform. *Id.* ¶¶ 39–42. All claims arise from some combination of these allegations. *See generally id.* ¶¶ 43–57. Plaintiff's claims therefore are a "dispute" with X Corp. "related to these Terms or the Services" or "third parties' use of the Services and any Content made available by other users and third parties on the Services." *See* Scolari Decl. ¶ 9; *id.*, Ex. A

at § 6. To the extent any claims concern the price of his X Premium subscription, which allegedly increased in November 2025 "without proportional value," they "arise[] out of" or "relat[e] to" the Relevant Purchaser Terms. *Id.*, Ex. D. Thus, the Relevant Terms's forum selection clauses plainly encompass Plaintiff's claims. *See, e.g.*, *Eliza Labs*, 2025 WL 3003766, at *5 ("Courts have also held that broad venue clauses cover noncontractual claims that fall within the scope of the forum selection clause[,]" and transferring Sherman Act and UCL claims to Texas under X's forum selection clause); *Doe*, 2025 WL 3500543, at *7 (transferring claims to Texas because "Plaintiff challenges conduct that falls well within the types of disputes covered by X's terms of service"); *see also Castronuova v. Meta Platforms, Inc.*, No. 23-CV-7511(KAM)(AYS), 2024 WL 1623274, at *7 (E.D.N.Y. Apr. 15, 2024) (holding that allegations that X shadowbanned plaintiff clearly fell within the forum selection clause).

### C. The Relevant Terms' Forum Selection Clauses Are Valid and Enforceable

"Plaintiffs bear a 'heavy burden' in showing a forum selection clause is unenforceable. They must make a 'strong showing' of either (i) fraud or overreaching, (ii) contravention of a strong public policy, or (iii) such 'grave difficult[y] and inconvenien[ce]' in having the trial in the contracted forum that they would, 'for all practical purposes be deprived of [their] day in court.'" *Eliza Labs*, 2025 WL 3003766, at *4 (quoting *Sun*, 901 F.3d at 1088); *accord Sun*, 901 F.3d at 1088 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied.").

None of these factors are present here. In the past few months alone, four federal judges– including two from this District—have held that X's forum selection clause is valid and enforceable and transferred cases against X Corp. to the Northern District of Texas. *See Doe*, 2025 WL 3500543, at *4, *7–8 (rejecting arguments that no valid agreement existed or that "exceptional" and "unusual" circumstances justified setting it aside even absent the affirmative acknowledgment present here); *Eliza Labs*, 2025 WL 3003766, at *6 (N.D. Cal. Oct. 27, 2025) (voluntary agreement to the Terms "undermine[s] any potential arguments as to fraud or overreaching[,]" "enforcing the forum selection clause would not contravene a strong public policy of California[,]" and litigating in Texas does not impose "grave inconvenience"); *see also*

*Taddeo-Waite*, 2025 WL 3237422, at *2 (finding "no fraud, overreaching, or fundamental unfairness" in the terms); *Williams*, 2025 WL 2801626, at *3 ("no suggestion" of "fraud or overreaching" because "Plaintiff has voluntarily agreed to the forum selection clause when he created and continued to use his X account[,]" and "litigating in the Northern District of Texas does not deprive plaintiff of his day in court"). These courts join a host of others that have transferred claims to the forum designated in the clause over the years. *See, e.g., Yuksel v. Twitter Inc.*, No. CV-21-00137-TUC-RM, 2022 WL 4367619, at *3 (D. Ariz. Sept. 21, 2022) ("The Court agrees with the findings of other district courts that Twitter's forum selection clause is valid and enforceable.").

The FAC's conclusory allegation that "[t]he Terms' forum selection clause requiring disputes in Texas is unconscionable—adhesive, unilateral, and against public policy favoring access to justice in the forum of substantial contacts" (FAC ¶ 13) is far from the "strong showing" required to evade transfer. Any insinuation of fraud or overreaching implied by this bare assertion cannot be squared with the above authority and his continued use of the platform even *after* X filed its first Motion invoking the Relevant TOS. Furthermore, for the avoidance of doubt, "that a contract is one of adhesion does not alone make it unconscionable" and "California appellate courts have implemented this broader policy [approving forum selection clauses] and enforced forum selection clauses in adhesion contracts, particularly in a non-arbitration context." *Rostami v. Hypernet Inc.*, No. 22-cv-01813-EJD, 2023 WL 2717262, at *7 (N.D. Cal. Mar. 29, 2023); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 37–38 (2021) (finding no substantive or procedural unconscionability in Twitter's terms of service); *see also Intershop Commc'ns AG v. Superior Court*, 104 Cal. App. 4th 191, 201–02 (2002) ("a contract of adhesion is nonetheless a valid and existing contract").

The FAC's claim that transfer would violate some "policy favoring access to justice in the forum of substantial contacts" holds no weight. FAC ¶ 13. The question "is not whether California has a strong public interest in regulating alleged misconduct occurring within its borders, but whether enforcement of the forum selection clause 'would contravene a strong public policy of the forum in which the suit is brought,'" and Plaintiff identifies none. *Bauer v. Tacey Goss, P.S.*,

No. C 12-00876 JSW, 2012 WL 2838834, at *2 (N.D. Cal. July 10, 2012) (rejecting argument that "any forum selection clause requiring California-law claims to be adjudicated in a different state would violate California's strong public policy") (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). At any rate, the FAC fails to establish any significant interest in California. To the contrary, it alleges that Plaintiff resides in Oklahoma (FAC ¶ 7), that X Corp. is incorporated in Nevada with its principal place of business in Texas (*id.* ¶ 8), that Defendant Musk, "resid[es] in Texas," where he allegedly directs "X.com's policies, public statements, and operational decisions," (*id.* ¶ 9), and that the alleged representations were "targeted nationwide." *Id.* ¶ 12. These allegations confirm that California has little interest in this dispute. *See Eliza Labs*, 2025 WL 3003766, at *3 ("X Corp. is a Nevada Corporation with a principal place of business in Bastrop, [Texas] thus significantly limiting any local interest California may have in this controversy"); *see also Moretti v. Hertz Corp.*, 2014 WL 1410432, at *5 (N.D. Cal. Apr. 11, 2014) (where "defendants are not California corporations, California has little interest in keeping the litigation in this state to deter future wrongful conduct"). And regardless of any California contacts, "it is perfectly reasonable" for defendants with nationwide operations "to limit the fora in which they are potentially subject to suit" to their principal place of business. *Lu v. Dryclean-U.S.A. of Cal.*, Inc., 11 Cal. App. 4th 1490, 1493 n.2 (1992) (affirming dismissal of dispute concerning California laundromat given forum selection clause, despite allegations that "(1) both of the plaintiffs reside in California, (2) neither plaintiff has ever visited Florida in connection with business of the dry cleaning franchise, and (3) the Agreement was negotiated at Dryclean California's offices in Emeryville, California").[7]

Finally, Plaintiff cannot plausibly claim that trial in the Northern District of Texas will be so gravely difficult and inconvenient that they will be deprived of his day in court. As the Ninth Circuit has recognized, Supreme Court jurisprudence suggests this factor "is difficult to satisfy" because "[w]here the parties have agreed to a forum-selection clause, they 'waive the right to

---

[7] For these same reasons, even absent a forum selection clause, private-interest factors would favor transfer to Texas. 28 U.S.C. § 1404(a). Transfer to Texas would *decrease* the burden on Plaintiff, who resides in the adjacent state of Oklahoma. *See* FAC ¶ 7.

challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571 U.S. at 64). Thus, this factor is inapplicable "even when the contractually selected forum may afford the plaintiff[] less effective remedies than they could receive in the forum where they filed suit." *Id*. at 1092.

Because Plaintiff cannot make a "strong showing" that Relevant Terms' forum selection clause are unenforceable, this matter should be transferred to the Northern District of Texas.[8]

## V. CONCLUSION

For the reasons stated above, X Corp. respectfully requests that the Court transfer this action to the United States District Court for the Northern District of Texas.

Respectfully submitted,

Dated: January 21, 2026          WILLENKEN LLP

By: */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
Attorneys for Defendant X Corp.

---

[8] Should the court consider public interest factors, "those rarely override the parties' agreement," and at any rate, also favor transfer to Texas. *See Doe*, 2025 WL 3500543, at *4 ("Considering the goal of § 1404 (a) . . . the Court finds that the Northern District of Texas has a greater capacity to expeditiously resolve Plaintiff's motion.").