Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
Sharon Song (Bar No. 313535)
ssong@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:  (213) 955-9250

Attorneys for Defendant X Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY TRUPIA, | Case No.: 5:25-cv-03685-NW |
| Plaintiff, | **DEFENDANT X CORP.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| X CORP., *et al.*, | Hon. Noël Wise |
| Defendants. | **Hearing**:<br>Date:        April 29, 2026<br>Time:        9:00 A.M.<br>Ctrm:        3 |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................2

      A.    Plaintiff's Allegations .................................................................................2

      B.    The X Platform and the Relevant Terms ....................................................3

III.  ARGUMENT .........................................................................................................6

      A.    The FAC Should Be Dismissed Because Plaintiff Has Not Properly Served
            X Corp.........................................................................................................6

      B.    The FAC Should Be Dismissed Because Plaintiff Fails to Establish This
            Court Has Personal Jurisdiction over X Corp.............................................7

      C.    The FAC Should Be Dismissed Because Plaintiff Fails to State Any Claim .........9

            1.    Section 230 Provides Immunity from All Claims....................................10

            2.    The First Amendment Independently Bars Plaintiff's Claims.................13

            3.    The Relevant Terms Separately Foreclose Plaintiff's Claims ................14

            4.    Plaintiff Fails to State a Claim ................................................................16

                  a.    Plaintiff's 15 U.S.C. § 1125(a) ("Lanham Act") Claim Fails........16

                  b.    Plaintiff Fails to State a Breach of Contract Claim......................18

                  c.    The Implied Covenant of Good Faith and Fair Dealing
                        Claim Fails...................................................................................19

                  d.    Plaintiff Fails to State a Promissory Estoppel Claim....................20

                  e.    The Cal. Bus. & Prof. Code § 17200 ("UCL") Claim Fails ..........21

                  f.    Plaintiff Fails to State an "Unconscionable Contract" Claim........23

                  g.    Plaintiff's California Constitution "Free Speech" Claim
                        Fails.............................................................................................25

IV.   CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdulaziz v. Twitter, Inc.*,
  2024 WL 4688893 (9th Cir. Nov. 6, 2024) .................................................. 14

*Al-Ahmed v. Twitter*, Inc.,
  603 F. Supp. 3d 857 (N.D. Cal. 2022) ......................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 9

*Bacon v. Sw. Airlines Co.*,
  997 F. Supp. 775 (N.D. Tex. 1998) ............................................................. 16

*Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*,
  572 S.W.3d 213 (Tex. 2019) ....................................................................... 15

*Boose v. Musk*,
  2025 WL 3697037 (N.D. Cal. Dec. 19, 2025) ............................................. 18

*Bradley v. T-Mobile US, Inc.*,
  2020 WL 1233924 (N.D. Cal. Mar. 13, 2020) ............................................... 8

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  582 U.S. 255 (2017) ....................................................................................... 7

*Brittain v. Twitter, Inc.*,
  2019 WL 2423375 (N.D. Cal. June 10, 2019) ............................................. 12

*Brockmeyer v. May*,
  383 F.3d 798 (9th Cir. 2004) ......................................................................... 6

*Castronuova v. Meta Platforms, Inc.*,
  2025 WL 1914860 (N.D. Cal. June 10, 2025) ............................................. 11

*Comput. v. Paxton*,
  747 F. Supp. 3d 1011 (W.D. Tex. 2024) ..................................................... 11

*Cory v. Stewart*,
  103 F.4th 1067 (5th Cir. 2024) ............................................................. 21, 23

*Crowley v. Bannister*,
  734 F.3d 967 (9th Cir. 2013) ......................................................................... 6

*Cubria v. Uber Techs., Inc.*,
  242 F. Supp. 3d 541 (W.D. Tex. 2017) ....................................................... 18

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................................... 7

*Das v. WMC Mortgage Corp.*,
  831 F. Supp. 2d 1147 (N.D. Cal. 2011) ...................................................... 23

*Divino Grp. LLC v. Google LLC,*
  2022 WL 4625076 (N.D. Cal. Sep. 30, 2022) ............................................................. 25

*Doe v. Grindr Inc.,*
  128 F.4th 1148 (9th Cir. 2025) ..................................................................................... 13

*Doe v. MySpace, Inc.,*
  528 F.3d 413 (5th Cir. 2008) ......................................................................................... 10

*English v. Fischer,*
  660 S.W.2d 521 (Tex. 1983) .......................................................................................... 20

*Exxon Corp. v. Atl. Richfield Co.,*
  678 S.W.2d 944 (Tex. 1984) .......................................................................................... 20

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
  521 F.3d 1157 (9th Cir. 2008) .......................................................................... 2, 10, 11

*Fazio v. Wash. Mut. Bank, F.A.,*
  713 F. App'x 671 (9th Cir. 2018) ................................................................................... 1

*Fleetwood Enters., Inc. v. Gaskamp,*
  280 F.3d 1069 (5th Cir. 2022) ....................................................................................... 24

*Geegieh v. Unknown Parties, ,*
  2025 WL 1769766 (D. Ariz. June 26, 2025) ................................................................. 8

*Gillum v. Republic Health Corp.,*
  778 S.W.2d 558 (Tex. App. 1989) ................................................................................. 20

*Glen Holly Ent., Inc. v. Tektronix, Inc.,*
  352 F.3d 367 (9th Cir. 2003) ......................................................................................... 20

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n,*
  26 Cal. 4th 1013 (2001) ................................................................................................. 25

*Grebow v. Mercury Ins. Co.,*
  241 Cal. App. 4th 564 (2015) ........................................................................................ 18

*Gunn v. Wild,*
  771 F. App'x 392 (9th Cir. 2019) ................................................................................... 7

*Gustafson v. BAC Home Loans Servicing, LP,*
  2012 WL 4761766 (C.D. Cal. Apr. 12, 2012) .............................................................. 22

*Hafer v. Vanderbilt Mortg. & Fin., Inc.,*
  793 F. Supp. 2d 987 (S.D. Tex. 2011) .......................................................................... 24

*Hall v. HP, Inc.,*
  2025 WL 1759378 (C.D. Cal. June 23, 2025) .............................................................. 23

*Hammerhead Managing Partners, LLC v. Nostra Terra Oil & Gas Co. PLC,*
  2019 WL 1403363 (N.D. Tex. Mar. 27, 2019) ............................................................. 19

*Igbonwa v. Facebook, Inc.,*
  2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ................................................................. 12

*In re Sw. Airlines Co. Flight Disruption Litig.,*
2024 WL 3281288 (S.D. Cal. June 11, 2024) .......................................................................... 20

*Jean-Baptiste v. Copart,*
2022 WL 16643046 (S.D. Fla. Nov. 2, 2022) ............................................................................ 6

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ................................................................................................ 16

*King v. Facebook, Inc.,*
2019 WL 4221768 (N.D. Cal. Sep. 5, 2019) ........................................................................... 12

*L.O.D.C. Grp., Ltd v. Accelerate360, LLC,*
621 F. Supp. 3d 716 (E.D. Tex. 2022)............................................................................... 23, 24

*Laks v. Coast Fed. Sav. & Loan Assn.,*
60 Cal. App. 3d 885 (1976) .................................................................................................... 20

*Lessin v. Ford Motor Co.,*
2020 WL 6544705 (S.D. Cal. Nov. 5, 2020) ........................................................................... 23

*Lewis v. Google LLC,*
461 F. Supp. 3d 938 (N.D. Cal. 2020)........................................................................ 11, 16, 17

*Lewis v. Google Ltd. Liab. Co.,*
851 F. App'x 723 (9th Cir. 2021) ...................................................................................... 16, 17

*Lewis v. YouTube, LLC,*
244 Cal. App. 4th 118 (2015) ............................................................................................ 15, 18

*Lloyd v. Facebook, Inc.,*
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ............................................................................. 4

*Loomer v. Zuckerberg,*
2023 WL 6464133 (N.D. Cal. Sep. 30, 2023) ......................................................................... 12

*Madsen v. Women's Health Ctr Inc.,*
512 U.S. 753 (1994) ............................................................................................................... 14

*Martin Res. Mgmt. Corp. v. Fed. Ins. Co.,*
2021 WL 4269565 (5th Cir. Sep. 20, 2021) ........................................................................... 19

*Mercola.com, LLC v. Google LLC,*
2023 LW 5680112 (N.D. Cal. Sep. 4, 2023) ........................................................................... 19

*Mission Trading Co. v. Lewis,*
2016 WL 6679556 (N.D. Cal. Nov. 14, 2016) .......................................................................... 8

*Moates v. Facebook Inc.,*
2021 WL 3013371 (E.D. Tex. May 14, 2021) ......................................................................... 24

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) .................................................................................................... 2, 13, 14

*Murphy v. Twitter, Inc.,*
60 Cal. App. 5th 12 (2021) ............................................................................................. passim

*Netbula, LLC v. Bindview Dev. Corp.*,
  516 F. Supp. 2d 1137 (N.D. Cal. 2007) ........................................................................... 19

*Newman v. Google LLC*,
  2022 WL 2556862 (N.D. Cal. July 8, 2022) ................................................................... 25

*Notley v. Sterling Bank*,
  2008 WL 4952835 (Tex. App. Nov. 21, 2008) ................................................................ 18

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) ........................................................................... 13

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) ......................................................................................... 13

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ........................................................................................... 7

*Prager Univ. v. Google LLC*,
  951 F.3d 991 (9th Cir. 2020) .................................................................................... 17, 25

*Ramirez v. Bank of Am., N.A.*,
  607 F. Supp. 3d 969 (N.D. Cal. 2022) ............................................................................. 19

*Rutenburg v. Twitter, Inc.*,
  2021 WL 1338958 (N.D. Cal. Apr. 9, 2021) ................................................................... 25

*Salustri v. Dell, Inc.*,
  2010 WL 11596554 (C.D. Cal. Apr. 27, 2010) ............................................................... 21

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................................. 7

*SHLA Grp. Inc. v. Kissler & Co.*,
  2025 U.S. Dist. LEXIS 37820 (C.D. Cal. Mar. 3, 2025) ................................................ 20

*Shuman v. SquareTrade Inc.*,
  2021 WL 5113182 (N.D. Cal. Nov. 3, 2021) ................................................................... 22

*Silverman v. Wells Fargo & Co.*,
  2018 WL 6046209 (N.D. Cal. Nov. 19, 2018) ................................................................. 21

*Silverton v. Dep't of Treas.*,
  644 F.2d 1341 (9th Cir. 1981) ........................................................................................... 1

*Simulis, L.L.C. v. GE Capital Corp.*,
  2008 WL 1747483 (Tex. App. Apr. 17, 2008) ................................................................ 20

*Snyder v. Phelps*,
  562 U.S. 443 (2011) ......................................................................................................... 13

*Storek & Storek, Inc. v. Citicorp Real Est., Inc.*,
  100 Cal. App. 4th 44 (2002) ............................................................................................ 20

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................................. 8

*Taylor v. Books A Million, Inc.*,
   296 F.3d 376 (5th Cir. 2002) ........................................................................................... 9

*Thomas v. JPMorgan Chase Bank, N.A.*,
   2015 WL 12683961 (C.D. Cal. Sep. 15, 2015) ............................................................... 19

*Tiras v. Bailey Props., L.L.C.*,
   659 F. App'x 753 (5th Cir. 2016) ................................................................................... 18

*TuYo Holdings, LLC v. Transamerica Life Ins. Co.*,
   2022 WL 17490982 (W.D. Tex. Dec. 6, 2022) ............................................................... 20

*Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.*,
   457 F.3d 1106 (9th Cir. 2006) .......................................................................................... 9

*Van Peterson Fine Jewelers v. ADT Sec. Servs., Inc.*,
   2010 WL 11617965 (N.D. Tex. Feb. 16, 2010) .............................................................. 24

*Vantage Mobility Int'l Ltd. Liab. Co. v. Kersey Mobility Ltd. Liab. Co.*,
   836 F. App'x 496 (9th Cir. 2020) ..................................................................................... 7

*Verbick v. Movement Tech. Co.*,
   2022 WL 20140922 (S.D. Cal. Aug. 11, 2022) ............................................................... 6

*Walden v. Fiore*,
   571 U.S. 277 (2014) ......................................................................................................... 8

*Wash. Mut. Bank, FA v. Superior Ct.*,
   24 Cal. 4th 906 (2001) ...................................................................................................... 9

*Yuksel v. Twitter, Inc.*,
   2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) .......................................................... 12, 18

*Zhang v. Twitter Inc.*,
   2023 WL 5493823 (N.D. Cal. Aug. 23, 2023) .......................................................... 11, 19

**Statutes**

15 U.S.C. § 1125(a) ............................................................................................................... 16

47 U.S.C. § 230 ............................................................................................................... passim

47 U.S.C. § 230(a) ................................................................................................................. 10

47 U.S.C. § 230(b)(4) ............................................................................................................ 10

47 U.S.C. § 230(c)(1) .................................................................................................. 10, 11, 12

47 U.S.C. § 230(e)(3) ............................................................................................................ 10

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 21

Cal. Civ. Code § 1670.5 ................................................................................................... 11, 23

**Rules**

Fed. R. Civ. P. 4 .................................................................................................................. 6

Fed. R. Civ. P 4(m) ............................................................................................................. 6

Fed. R. Civ. P. 5 .................................................................................................................. 6

Fed. R. Civ. P. 9(b) ............................................................................................................ 16

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 1

Fed. R. Civ. P. 12(b)(5) .................................................................................................... 2, 6

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 9

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on April 29, 2026, at 9:00 A.M., before the Honorable Noël Wise, in Courtroom 3 of the United States District Court, Northern District of California, this Motion to Dismiss filed by X Corp. will be heard. Under Federal Rules of Civil Procedure 12(b)(2), (5), and (6), X Corp. hereby moves for an order dismissing all claims in the First Amended Complaint (ECF No. 34-1; the "FAC") with prejudice. This Motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, the Declarations of Megan Scolari and Seth Fuchs, the papers on file, and the argument received by the Court.

## STATEMENT OF RELIEF SOUGHT

X Corp. respectfully seeks an order dismissing the FAC for lack of jurisdiction and because the FAC fails to state a claim upon which relief can be granted.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The FAC, like Plaintiff's previous complaint, should be dismissed without leave to amend. The FAC remains focused on X Corp.'s alleged "suppression" of Plaintiff's posts on X, X Corp.'s private social media platform. Plaintiff still fails to identify any promise guaranteeing him the "unmoderated free speech to the extent allowed by law" that he seeks, and he ignores that his contracts with X Corp. expressly permit it to moderate his content on X.

Two threshold defects still warrant dismissal of the FAC. *First*, Plaintiff still has not properly served X Corp., nearly eight months after filing the initial complaint, and therefore dismissal is warranted under Federal Rule of Civil Procedure 12(b)(5). *Second*, this Court still

---

[1] As X Corp.'s concurrently filed Motion to Transfer explains, this action should be transferred to the United States District Court for the Northern District of Texas pursuant to the forum selection clauses in the relevant versions of the X Terms of Service and the X Purchaser Terms of Service.

Also, to X Corp.'s knowledge, Defendants Musk and Yaccarino, like X Corp., have not been served. Nevertheless, dismissal of all claims against them is warranted for the same reasons described in X Corp.'s motion. *See Fazio v. Wash. Mut. Bank, F.A.*, 713 F. App'x 671, 672 (9th Cir. 2018) ("The district court properly dismissed [plaintiff's] claims against the defendants who did not move to dismiss the complaint.") (citing *Silverton v. Dep't of Treas.*, 644 F.2d 1341, 1345 (9th Cir. 1981)).

1  lacks personal jurisdiction over X Corp., a Nevada corporation with its principal place of business

2  in Texas, because no factual allegations connect it to California; thus, dismissal is warranted under

3  Federal Rule of Civil Procedure 12(b)(2).

4        On the merits, X Corp. is immune from all claims under Section 230, the First Amendment,

5  and the relevant versions of the X Terms of Service and X Purchaser Terms of Service (together,

6  the "Relevant Terms"). X Corp. is "perforce immune under Section 230" from Plaintiff's claims,

7  which all challenge X Corp.'s alleged "suppression of Plaintiff's content." FAC ¶ 2; *see Fair Hous.*

8  *Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)

9  ("Any activity that can be boiled down to deciding whether to exclude material that third parties

10  seek to post online" is immune). The First Amendment likewise protects X Corp.'s exercise of

11  "exactly the kind of editorial judgment" that Plaintiff complains of. *Moody v. NetChoice, LLC*,

12  603 U.S. 707, 718, 735 (2024). And the Relevant Terms broadly disclaim liability for, among other

13  things, X Corp.'s alleged "refus[al] to distribute any Content on the Services" or to "limit

14  distribution or visibility of any Content on the service." Declaration of Megan Scolari ("Scolari

15  Decl."), Ex. A at § 4. And, in any event, the FAC still fails to state any claim, because Plaintiff

16  fails to plausibly allege the required elements of his claims.

17        Plaintiff has already amended once—after X Corp.'s motion to dismiss his initial complaint

18  was fully briefed—and still cannot plead around the various inescapable bars to his claims. X Corp.

19  respectfully requests that the Court dismiss the FAC without leave to amend.

20  **II.**   **<u>STATEMENT OF FACTS</u>**

21       **A.**    **Plaintiff's Allegations**

22        The FAC alleges that Plaintiff used his X account "to disseminate two civil cases of public

23  import." FAC ¶ 17. Plaintiff claims that X Corp. "suppress[ed] [] his reach" on the platform, which

24  purportedly "derail[ed]" the two cases, causing him "severe financial and reputational harm." *Id.*

25  ¶ 4. Plaintiff does not identify his posts, how they were "suppressed," or how the cases were

26  derailed, claiming only that X Corp. "suppressed Plaintiff's content through opaque algorithms,"

27  supposedly evidenced by the fact that even though he *gained* followers between 2023 and 2025,

28  "none of his posts exceeded 18 likes" whereas his 2023 posts "received 20+ likes." *Id.* ¶¶ 23, 27.

1    Plaintiff concedes that "Plaintiff's content achieved . . . visibility . . . through . . . 'reply guy'

2    tactics" (*id.* ¶ 27), but he claims that "X.com flagged and debooosted" his "free speech critique on

3    Yaccarino's account," and that X Corp. "marked Plaintiff's posts exposing 'invisible replies' (a

4    form of suppression) as spam, further limiting visibility." *Id.* ¶ 25. Plaintiff also alleges that Musk

5    and Yaccarino made public posts on the X platform from their personal accounts about "free

6    speech." *Id.* ¶ 19. The alleged posts contain no semblance of terms or conditions for using the X

7    platform and make no mention of X Corp.'s paid subscriptions. Nevertheless, Plaintiff claims these

8    posts together with "Plaintiff's understanding of the benefits" of an alleged subscription as

9    including "priority/boosted placement in replies," (*id.* ¶ 29) entitled him to "unmoderated free

10   speech" on X's platform. *Id.* ¶ 48.

11   **B.    The X Platform and the Relevant Terms**

12          X Corp. is a private company that operates X, an online platform where users like Plaintiff

13   can make and share posts. *See generally* FAC. To create an X account, users must agree to a set

14   of binding Terms of Service that "govern . . . users' access to and use of [X Corp.'s] services" that,

15   at all relevant times, have been publicly available on the X website and application. Scolari Decl.

16   ¶¶ 6–7, 14. Also at all relevant times, the Terms of Service have been prominently linked via blue

17   hyperlinks on X's home page, between the links that allow users to sign up for the X platform.

18   *Id.* ¶ 7.

19          Plaintiff created his X account in 2023, his allegations confirm he used it as recently as

20   September 22, 2025, and X Corp.'s records confirm he continues using it to this day. *See* FAC

21   ¶¶ 7, 27; *id.* ¶¶ 39–40 (alleging a third-party user "viewed Plaintiff's pinned video" on X and sent

22   Plaintiff a message through X); Scolari Decl. ¶ 22. At all relevant times, including when Plaintiff

23   created his account, the relevant versions of the Terms of Service (the "Relevant TOS") provided

24   that "[b]y using the Services [the user] agree[s] to be bound by these Terms." Scolari Decl. ¶¶ 12–

25

26

27

28

13 & Exs. A, B.[2] And at all relevant times, the Relevant TOS provided that X Corp. "may revise the terms from time to time," and that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶ 7 & Exs. A, B.[3] On January 30, 2025, Plaintiff clicked an acknowledgment further manifesting his assent to the Relevant TOS. *Id.* ¶ 21.

The Relevant TOS expressly reserves X Corp.'s right to "remove or refuse to distribute any Content on the Services, limit distribution or visibility of any Content on the service, suspend or terminate users, and reclaim usernames without liability to [users]."[4] *Id.*, Exs. A, B. It reiterates that "[n]o advice or information, whether oral or written, obtained from the X Entities or through the Services, will create any warranty or representation not expressly made herein." *Id.* The Relevant TOS also expressly permits X Corp. to "stop (permanently or temporarily) providing the Services or any features within the Services to [users]" and explains that X Corp. "retain[s] the right to create limits on use . . . at [its] sole discretion at any time." *Id.*

The Relevant TOS further provides that:

> You understand and agree that the Services are provided to you on an 'AS IS' and 'AS AVAILABLE basis . . . The X Entities make no warranty or representation and disclaim all responsibility and liability for . . . the deletion of, or the failure to store or to transmit . . . any Content and other communications . . . .

*Id.* The Relevant TOS reiterates, in all capital letters, that:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE X ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, RELIANCE OR ANY LOSS OF PROFITS OR REVENUES,

---

[2] At all relevant times, "Services" was defined broadly to include X's "various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services')." *Id.*

[3] The Relevant TOS also defines the "X Entities" as "X Corp., its parents, affiliates, related companies, officers, directors, employees, agents, representatives, partners, and licensors."

[4] This Court may take judicial notice of X's publicly available Terms because they are available on X's website and their validity and authenticity cannot reasonably be in dispute. *See Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022).

WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE SERVICES . . . .

*Id*. Finally, the Relevant TOS provides that "[t]he laws of the State of Texas . . . will govern these Terms and any dispute that arises between you and us . . . ." *Id.*

When Plaintiff "signed up for a paid X.com account in July 2024" (FAC ¶ 28), Plaintiff was required to click a "Subscribe & Pay" button, directly beneath which appeared the sentence: "By subscribing, you agree to our Purchaser Terms of Service." *See* Declaration of Seth Fuchs ¶ 7. The words "Purchaser Terms of Service" hyperlinked to a webpage where the Purchaser Terms could be reviewed in full. *See id.* ¶ 8. The X Purchaser Terms of Service when Plaintiff signed up for a paid account provided that X Corp. "may revise these X Purchaser Terms of Service from time to time" and that "[b]y continuing to access or use the Paid Services after those revisions become effective, you agree to be bound by the revised X Purchaser Terms of Service." Scolari Decl. ¶ 24. The operative version of the X Purchaser Terms of Service (the "Relevant Purchaser Terms") provide that "[t]he laws of the State of Texas . . . will govern these Terms and any dispute that arises between you and us . . . ." *Id.*, Ex. D at 12–13; *see also* Ex. E (same).

The Relevant Purchaser Terms include the following disclaimer:

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, . . . YOU UNDERSTAND AND AGREE THAT THE PAID SERVICES ARE PROVIDED TO YOU ON AN "AS IS" AND "AS AVAILABLE" BASIS. . . . X MAKES NO WARRANTY OR REPRESENTATION AND DISCLAIMS ALL RESPONSIBILITY AND LIABILITY FOR: (I) THE COMPLETENESS, ACCURACY, AVAILABILITY, TIMELINESS, SECURITY OR RELIABILITY OF THE PAID SERVICES.

*Id.*, Ex. D at 10; *see* Ex. E (same). The Relevant Purchaser Terms reiterate that (*id.*):

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE X ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF PROFITS OR REVENUES, WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE, GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM (i) YOUR ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE THE PAID SERVICES.

1    **III.  <u>ARGUMENT</u>**

2    **A.  The FAC Should Be Dismissed Because Plaintiff Has Not Properly Served X Corp.**

3    "A federal court is without personal jurisdiction over a defendant unless the defendant has

4    been served [with the summons and complaint] in accordance with Fed. R. Civ. P. 4." *Crowley v.*

5    *Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013). "Neither actual notice, nor simply naming the

6    person in the caption of the complaint, will subject defendants to personal jurisdiction if service

7    was not made in substantial compliance with Rule 4." *Id.* at 975. "Once service is challenged,

8    plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*,

9    383 F.3d 798, 801 (9th Cir. 2004).

10   As explained in X Corp.'s previously filed Motion to Dismiss or Transfer (ECF No. 22),

11   Plaintiff has not properly served X Corp. with the summons and the initial complaint, which

12   warrants dismissal under Rule 12(b)(5). *Id.* at 8–9 (explaining why Plaintiff's only attempt to serve

13   X Corp.—by *mailing* the initial complaint and summons *himself* on August 27, 2025, *more than*

14   *90 days after he filed the Complaint* on April 28, 2025—was insufficient); *see also* Fed. R. Civ. P.

15   4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion

16   or on its own after notice to the plaintiff—must dismiss the action without prejudice against that

17   defendant or order that service be made within a specified time.").

18   Now, *nine* months since the initial complaint was filed, and *four* months after X Corp.

19   raised the service deficiencies, Plaintiff still has not properly served X Corp., nor has Plaintiff

20   made any attempt to remedy this failure, much less explain it. Accordingly, the FAC should be

21   dismissed. *See Verbick v. Movement Tech. Co.*, 2022 WL 20140922, at *5 (S.D. Cal. Aug. 11,

22   2022) (ordering Plaintiff to show cause why defendants should not be dismissed for failure to

23   effect service, because "[a]lthough the initial complaint is no longer operative, for amended

24   complaints to be operative, and properly served pursuant to Federal Rule of Civil Procedure 5,

25   there must be proper service of the initial complaint to initiate the case"); *see also Jean-Baptiste*

26   *v. Copart*, 2022 WL 16643046, at *2 (S.D. Fla. Nov. 2, 2022) (dismissing amended complaint,

27   even where defendants were eventually served because "longer than the 90 days allowed under the

28   Federal Rules of Civil Procedure" had elapsed).

**B. The FAC Should Be Dismissed Because Plaintiff Fails to Establish This Court Has Personal Jurisdiction over X Corp.**

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate" and "cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff has not established this Court has personal jurisdiction over X Corp. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 582 U.S. 255, 262 (2017). Even after X Corp. moved to dismiss the initial complaint on this basis, highlighting the dearth of factual allegations, Plaintiff failed to add any allegations supporting general or specific personal jurisdiction over X Corp. *Compare* ECF No. 22 at 18–19 and ECF No. 33 at 8–9 (addressing those arguments) *with* FAC ¶ 12. Plaintiff's failure to cure this pleading deficiency warrants dismissal without further leave to amend. *See Gunn v. Wild*, 771 F. App'x 392, 393 (9th Cir. 2019).

The FAC still fails to establish this Court has general personal jurisdiction over X Corp. X Corp. is neither incorporated in, nor maintains its principal place of business, in California. *See* FAC ¶ 8 ("Defendant X Corp. is a corporation organized under the laws of Nevada, with its principal place of business in Bastrop, Texas"); *Vantage Mobility Int'l Ltd. Liab. Co. v. Kersey Mobility Ltd. Liab. Co.*, 836 F. App'x 496, 498 (9th Cir. 2020) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). No other allegation connects X Corp. to California, let alone show that X Corp. has "continuous and systematic" connections and is "essentially at home" here. *See Daimler AG*, 571 U.S. at 119. To the contrary, Plaintiff alleges that Defendant Musk, "*residing in Texas*" is "Chairman and CTO of X Corp." and "a primary architect of X.com's policies, public statements, and operational decisions." FAC ¶ 9 (emphasis added).

Nor does the FAC establish this Court has specific personal jurisdiction over X Corp., which requires showing both that X Corp. (1) "direct[ed] [its] activities" at California or otherwise purposefully availed itself of California's protections and laws, and (2) that the claims "arise[] out of or relate to [X Corp.'s] forum-related activities." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The FAC contains no factual allegations supporting either prong. *See Geegieh v. Unknown*

1   *Parties*, 2025 WL 1769766, at *4 (D. Ariz. June 26, 2025) (dismissing claims and rejecting

2   sufficiency of the allegation that "X Corp. operates a nationwide platform accessible in Arizona").

3   Instead, on the first prong, Plaintiff concludes that "Defendants purposefully availed

4   themselves of California (Musk and Yaccarino direct operations from/into the state;

5   representations targeted nationwide, including California users)." FAC ¶ 12. But such "bare bones

6   assertions of minimum contacts" and "legal conclusions unsupported by specific factual

7   allegations" "will not satisfy [his] pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th

8   Cir. 2007) ("allegations that '[defendants] directed communication into the U.S. Western District

9   of Washington and otherwise conducted business therein' . . . are insufficient"); *Mission Trading*

10  *Co. v. Lewis*, 2016 WL 6679556, at *4 (N.D. Cal. Nov. 14, 2016) (allegations that "Defendants

11  are conducting business in this District . . . with full knowledge that the damage caused by their

12  acts are directed towards residents of this venue" are insufficient). Indeed, the FAC alleges the

13  supposed misrepresentations at issue were *targeted nationwide*, not at California. *See* FAC ¶ 12;

14  *Bradley v. T-Mobile US, Inc.,* 2020 WL 1233924, at *15 (N.D. Cal. Mar. 13, 2020) (no specific

15  personal jurisdiction where "Plaintiffs' allegations appear to be based on nothing more than the

16  fact that California is part of the United States and the lack of any evidence that Defendants

17  exempted California from their nationwide campaign"). On the second prong, Plaintiff's

18  conclusory assertion that his "claims arise from these contacts (suppression tied to California-

19  based algorithms and harms during Plaintiff's partial California residency)" (FAC ¶ 12) fares no

20  better. In any event, Plaintiff's claims do not arise from "algorithmic *design*," but rather his use of

21  X and X Corp.'s purported *use* of algorithms to "suppress" his content. *See* FAC ¶¶ 2–4. The only

22  other alleged connection to California, "*Plaintiff's* partial California residency," is insufficient to

23  establish specific personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The

24  proper question is not where the plaintiff experienced a particular injury or effect but whether the

25  defendant's conduct connects him to the forum in a meaningful way.").[5]

26

27

28

---

[5] *See* p. 21-22, *infra*.

### C.  The FAC Should Be Dismissed Because Plaintiff Fails to State Any Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. While "pro se complaints are held to less stringent standards . . . regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002) (citation modified).

Plaintiff fails to state any claim for four independent reasons. *First*, the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"), immunizes X Corp. from liability premised on limiting the visibility of Plaintiff's posts on the platform. *Second*, the First Amendment protects X Corp.'s decisions about what content to disseminate on its platform. *Third*, the valid disclaimer and limitation of liability in the Relevant Terms bar all claims, which arise out of Plaintiff's use of the X platform. *Fourth*, the FAC fails to state a claim. Accordingly, Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

As a threshold matter, Texas law governs Plaintiff's claims because the Relevant Terms provide that: "The laws of the State of Texas . . . will govern these Terms and *any* dispute that arises between" Plaintiff and X Corp. Scolari Decl., Ex. A § 6 (emphasis added); *id.*, Ex. D at 12–13; *see also* Ex. E (same). "In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits." *Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006). Under California law, to determine whether a choice-of-law clause is enforceable, courts consider "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001). Here, both tests are indisputably met: X Corp., a party, maintains its "principal place of business in Bastrop, Texas" and "operat[es] the social media platform X.com" that is the subject

1  of the FAC, and key executives like Defendant Musk reside in Texas. FAC ¶ 9. Therefore, Texas

2  law applies to Plaintiff's claims.[6]

3          *1.     Section 230 Provides Immunity from All Claims*

4      Section 230 bars Plaintiff's claims, which seek to hold X Corp. liable for its decisions about

5  what content users may post on X. *See Roommates*, 521 F.3d at 1170–71. In enacting Section 230,

6  Congress recognized "the benefits generated by Web-based service providers" in offering "a

7  forum" for "political discourse," "cultural development," and "intellectual activity," and sought to

8  ensure they did not shut themselves down for fear of liability premised on decisions to permit or

9  remove users' content. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); 47 U.S.C.

10 § 230(a). Congress had the express policy goal of removing "disincentives" to content moderation

11 (47 U.S.C. § 230(b)(4)); the statute encourages platforms to self-moderate by eliminating the

12 specter of liability for doing so—even if a user does not agree. "Section 230 must be interpreted

13 to protect websites," like X, "not merely from ultimate liability, but from having to fight costly

14 and protracted legal battles." *Roommates*, 521 F.3d at 1174.

15     Under Section 230, "No provider or user of an interactive computer service shall be treated

16 as the publisher or speaker of any information provided by another information content provider."

17 47 U.S.C. § 230(c)(1). Section 230(e)(3) provides, aside from exceptions not relevant here, "[n]o

18 cause of action may be brought and no liability may be imposed under any State or local law that

19 is inconsistent with this section." Here, all three prongs of the Section 230 analysis are met: courts

20 routinely hold that X (formerly Twitter) is an "interactive computer service provider[]" and that

21 its users' accounts and posts (like those at issue here) are "information provided by another

22 information content provider," under Section 230. *See, e.g.*, *Al-Ahmed v. Twitter*, Inc., 603 F. Supp.

23 3d 857, 880-81 (N.D. Cal. 2022) ("'Twitter provides the prototypical service entitling it to

24 protections of Section 230' and 'every decision the Court has seen to consider the issue has treated

25 Twitter as an interactive computer service provider, even at the motion to dismiss stage.'").

26

27 _____

28 [6] Given Plaintiff's assumption that California law applies, the below arguments still explain (where relevant) why claims fail under either Texas or California law.

1    Accordingly, X Corp. is "perforce immune under Section 230" from suits, like this one,

2    based on "activity that can be boiled down to deciding whether to exclude material that third parties

3    seek to post online." *Roommates*, 521 F.3d at 1162; *accord Comput. v. Paxton*, 747 F. Supp. 3d

4    1011, 1042 (W.D. Tex. 2024) (quoting *Roommates*). Specifically, "removing or restricting

5    postings falls within a publisher's traditional functions" so "[Section 230] (c)(1), by itself, shields

6    from liability all publication decisions, whether to edit, to remove, or to post, with respect to

7    content generated entirely by third parties." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D.

8    Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (dismissing free speech, Lanham Act, and other

9    claims); *accord Roommates*, 521 F.3d at 1162; *Paxton*, 747 F. Supp. 3d at 1042. All of Plaintiff's

10   claims arise from X Corp.'s supposed "algorithmic suppression of Plaintiff's content" (FAC ¶ 2)—

11   *i.e.*, "activity that can be boiled down to deciding whether to exclude material" he sought to post

12   online. *See* FAC ¶¶ 43–47 (Lanham Act claim based on alleged "suppression of Plaintiff's public-

13   interest content"); *id.* ¶¶ 48–49 (alleging "algorithmic suppression" in violation of promise to

14   "provide unmoderated free speech to the extent allowed by law"); *id.* ¶ 50 (alleging implied

15   covenant claim based on "arbitrary and opaque suppression"); *id.* ¶¶ 51–53 (alleging promissory

16   estoppel based on "suppression of his reach"); *id.* ¶ 54 (alleging UCL claim based on

17   "suppression"); *id.* ¶¶ 55–56 (alleging "Unconscionable Contract (Cal. Civ. Code § 1670.5)" based

18   on "illusory promises," presumably the invented promise of an unmoderated platform); *id.* ¶ 57

19   (alleging "Violation of California Free Speech Protections" based on "suppression").

20   Section 230 provides immunity from Plaintiff's suit "[w]hether . . . styled as breach of

21   contract, tort, or fraud claims." *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *4 (N.D. Cal. Aug.

22   23, 2023), *aff'd on other grounds*, 2025 WL 66050 ("Courts routinely hold Section 230 immunizes

23   platforms from contract claims, where, as here, they seek to impose liability for protected

24   publishing activity."). Accordingly, this Court has applied Section 230 to dismiss materially

25   identical free speech, UCL, and breach claims based on allegations that X "suppress[ed]

26   [p]laintiff's speech" through "shadow banning" with prejudice. *Castronuova v. Meta Platforms,*

27   *Inc.*, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025); *see also Lewis*, 461 F. Supp. 3d at 954

28   (dismissing all claims based on allegations that YouTube was "wrongfully demonetizing,

1    censoring, restricting and removing [plaintiff's] videos" despite "market[ing] itself as a website
2    that promotes free speech and freedom of expression free from censorship"). Indeed, "[n]umerous
3    courts have applied Section 230(c)(1) at the pleading stage" to dismiss the variety of claims
4    advanced here with prejudice. *E.g.*, *King v. Facebook, Inc.*, 2019 WL 4221768, at *2–4 (N.D. Cal.
5    Sep. 5, 2019) (collecting cases) (dismissing breach of contract, UCL, implied covenant of good
6    faith and fair dealing, and promissory estoppel claims), *aff'd*, 845 F. App'x 691, 692 (9th Cir.
7    2021); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12 (2021) (dismissing breach of contract,
8    promissory estoppel, and UCL claims based on alleged promises to not censor the platform
9    because "Twitter's alleged actions in refusing to publish and banning Murphy's tweets . . . reflect
10   paradigmatic editorial decisions that are protected by Section 230"); *Brittain v. Twitter, Inc.*, 2019
11   WL 2423375, at *2–4 (N.D. Cal. June 10, 2019) (dismissing free speech, breach of contract,
12   promissory estoppel, and other claims); *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *3–5 (N.D.
13   Cal. Nov. 7, 2022) (collecting cases) (dismissing contractual claims alleging plaintiff was banned
14   for political speech).[7]

15       In a transparent attempt to skirt Section 230, Plaintiff conflates his real gripe—the
16   supposed "limited reach" of his posts and his desire for "unmoderated free speech" (FAC ¶¶ 4, 17,
17   22, 35, 42)—with "[his] understanding of the benefits" of a subscription to "include[] . . .
18   priority/boosted placement in *replies*, *mentions*, and *searches*" (FAC ¶¶ 21, 29). But these
19   allegations are a red herring: like the initial complaint, Plaintiff is careful to not assert any breach
20   of the Relevant Terms, but rather some invented "enforceable obligations to provide unmoderated
21   free speech to the extent allowed by law." *Id.* ¶ 48. Elsewhere, Plaintiff confirms that he received
22   the subscription benefits he thought he was getting. *Id.* ¶ 27 (lamenting the amount of likes on his
23   *posts* but noting an increase in followers and that "[his] content achieved [] visibility through . . .

24

25

26   [7] Defendants Musk and Yaccarino "are immune under § 230 to the same extent" as X because
     Plaintiff "sues them based on" X Corp.'s conduct. *Loomer v. Zuckerberg*, No. 22-cv-02646, 2023
27   WL 6464133, at *12 (N.D. Cal. Sep. 30, 2023), *aff'd*, 2025 WL 927186 (9th Cir. Mar. 27, 2025)
     (Section 230 immunized executives who allegedly "falsely induced the public to believe that
28   political candidates would be treated fairly"); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at
     *5 (N.D. Cal. Oct. 9, 2018), *aff'd*, 786 F. App'x 104 (9th Cir. 2019).

1    'reply guy' tactics"). At bottom, Plaintiff does not challenge a specific "promise[] *unrelated to a*

2    *defendant's role as a publisher*," but rather his own interpretation of X Corp.'s moderation policy,

3    so X Corp. remains "protected from liability under § 230." *Doe v. Grindr Inc.*, 128 F.4th 1148,

4    1154 (9th Cir. 2025) (distinguishing cases where "[w]e have held that § 230 does not bar causes

5    of action seeking to enforce contracts or promises unrelated to a defendant's role as a publisher")

6    (emphasis added); *see also Murphy,* 60 Cal. App. 5th at 29–30 (rejecting argument that "section

7    230 immunity does not apply here because the content at issue is Twitter's own promises").

8         Plaintiff has not and cannot plead around the immunity provided by Section 230, so the

9    FAC should be dismissed with prejudice.

10            2.    *The First Amendment Independently Bars Plaintiff's Claims*

11        "A private party's collection of third-party content into a single speech product . . . is itself

12   expressive, and intrusion into that activity must be specially justified under the First Amendment."

13   *Moody v. NetChoice, LLC*, 603 U.S. 707, 729 (2024). Accordingly, this Court recognizes that

14   "[l]ike a newspaper or a news network, Twitter [now X] makes decisions about what content to

15   include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by

16   the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186-88 (N.D. Cal. 2022),

17   *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (collecting cases and dismissing

18   claims based on X Corp.'s First Amendment grounds); *Snyder v. Phelps*, 562 U.S. 443, 451 (2011)

19   ("[T]he First Amendment . . . can serve as a defense in state tort suits."). Plaintiff seeks to impose

20   liability on X Corp. based on its alleged decisions to "censor," "manipulate," "suppress," or

21   otherwise limit the reach of Plaintiff's posts on its platform, claiming he is entitled to

22   "unmoderated free speech." FAC ¶¶ 2, 48. But the First Amendment protects "exactly th[is] kind

23   of editorial judgment[][,]" of "remov[ing], alter[ing], organiz[ing], prioritiz[ing], or disclaim[ing]

24   posts." *Moody*, 603 U.S. at 718, 735; *see Padilla*, 579 F. Supp. 3d at 1188 ("[X Corp.] has

25   important First Amendment rights that would be jeopardized by a Court order telling [it] what

26   content-moderation policies to adopt and how to enforce those policies"). The First Amendment

27   mandates dismissal of all claims. *See O'Handley*, 579 F. Supp. at 1186 (First Amendment barred

28

1    claims based on "Twitter appending labels to [plaintiff's] tweets . . . its limitation on the reach of

2    [plaintiff's] tweets, and its ultimate removal of [plaintiff's] account from the platform").[8]

3            *3.    The Relevant Terms Separately Foreclose Plaintiff's Claims*

4           The Relevant Terms, which Plaintiff agreed to when he created and used his X account and

5    his X Premium subscription (*see* Scolari Decl. ¶¶ 21–23), bars all claims. The Relevant TOS

6    provides that X may "remove or refuse to distribute any Content on the Services [or] limit

7    distribution or visibility of any Content on the service, suspend or terminate users, and reclaim

8    usernames *without liability* to [users]." Scolari Decl., Ex. A at § 4. It includes a disclaimer of

9    responsibility provision: "You understand and agree that the Services are provided to you on an

10    'AS IS' and 'AS AVAILABLE basis . . . . The X Entities make no warranty or representation and

11    disclaim[s] all responsibility and liability for . . . the deletion of, or the failure to store or to transmit,

12    any Content and other communications maintained by the Services" *Id.* at § 5. It reiterates that

13    "[n]o advice or information, whether oral or written, obtained from the X Entities or through the

14    Services, will create any warranty or representation not expressly made herein." *Id.*[9]

15           Furthermore, the Relevant Terms each emphasize in capital letters that:

16        THE X ENTITIES SHALL NOT BE LIABLE FOR ANY INDIRECT,
      INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES,
17    RELIANCE OR ANY LOSS OF PROFITS OR REVENUES, WHETHER
      INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF DATA, USE,
18    GOODWILL, OR OTHER INTANGIBLE LOSSES, RESULTING FROM
      (i) [Plaintiff's] ACCESS TO OR USE OF OR INABILITY TO ACCESS OR USE
19    THE [SERVICES or PAID SERVICES]; (ii) ANY CONDUCT OR CONTENT

20    _____

21    [8] For these same reasons, Plaintiff's requested injunctive relief would be unconstitutional. *See*
22    *Moody*, 603 U.S. at 733 ("in case after case, the [Supreme] Court has barred the government from
      forcing a private speaker to present views it wished to spurn in order to rejigger the expressive
23    realm"); *see also Madsen v. Women's Health Ctr Inc.,* 512 U.S. 753, 765 (1994) (refusing to grant
      injunction that would offend another party's First Amendment rights). Separately, Plaintiff has not
24    alleged "continuing" conduct with "present adverse effects" and thus lacks standing to seek future
      injunctive relief. *Abdulaziz v. Twitter, Inc.*, 2024 WL 4688893, at *2 n.4 (9th Cir. Nov. 6, 2024).
25

26    [9] The Relevant Purchaser Terms include a similar provision that applies to Paid Services, while
      explaining that "THE DEFINITION OF PAID SERVICES IS LIMITED TO THE FEATURES
27    OFFERED BY X AND *DOES NOT INCLUDE ANY CONTENT YOU ACCESS AND/OR
      INTERACT WITH IN USING THOSE FEATURES*" and that the X Terms of Service (as part of the
28    User Agreement) "always applies to your use of the X Service." Scolari Decl., Ex. D at 2, 7, 10
      (emphasis added); *see also id.*, Ex. E.

1   OF ANY USER OR THIRD PARTY ON THE [SERVICES or PAID SERVICES]
2   . . . [under] ANY THEORY OF LIABILITY, WHETHER BASED ON
    WARRANTY, CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE)
3   OR OTHERWISE[.]

4   *Id.*; *id.*, Ex. D, at 10; *see also id.*, Ex. E (same). The Relevant Terms each make clear that "[Paid

5   Services or Services] may change from time to time, at our discretion," that X Corp. "may stop

6   (permanently or temporarily) providing the [Paid Services or Services] or any features within the

7   [Paid Services or Services] to you or to users generally with or without notice," and that X "is not

8   liable to you or to any third party for any modification, suspension or discontinuance of the [Paid

9   Services or Services]." *Id.*, Ex. A § 4; *id.*, Ex. D at 6; *see also id.*, Ex. E (same).

10      All of Plaintiff's claims are premised on alleged "suppression" of Plaintiff's content on X

11  through, among other things, "limiting [the] visibility" of that content. FAC ¶¶ 2, 4, 23–24.

12  Because the Relevant Terms disclaim liability for that alleged conduct, the FAC should be

13  dismissed. *See, e.g.*, *Murphy*, 60 Cal. App. 5th at 36 (enforcing the limitation of liability clause in

14  the Twitter Terms and affirming dismissal); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125

15  (2015) (recognizing that similar clauses "have long been recognized as valid in California" and

16  affirming dismissal); *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213,

17  233 (Tex. 2019) ("Limitation-of-liability clauses . . . are generally valid and enforceable" under

18  Texas law). Plaintiff's claimed entitlement to "enhanced, algorithmically unsuppressed reach" of

19  his posts (FAC ¶¶ 21, 22, 29) are barred by the Relevant TOS which explains that X may "remove

20  or refuse to distribute any Content on the Services [or] limit distribution or visibility of any Content

21  on the service" "without liability to" the user, that "the X Entities make no warranty or

22  representation and disclaim all responsibility and liability for the deletion of, or the failure to store

23  or to transmit, any Content and other communications maintained by the Services," and that "[n]o

24  advice or information, whether oral or written, obtained from the X Entities or through the

25  Services, will create any warranty or representation not expressly made herein." Scolari Decl.,

26  Ex. A §§ 4–5. Such claims are further barred by the Relevant Terms' provisions that (1) X Corp.

27  "may stop (permanently or temporarily) providing the [Paid Services or Services] or any features

28  within the [Services or Paid Services] to you or to users generally with or without notice," and that

1   (2) X Corp. "is not liable to you or to any third party for any modification, suspension or

2   discontinuance of the [Services or Paid Services]." *Id.*, Ex. A at § 4; *id.*, Ex. D at 6; *see also id.*,

3   Ex. E (same).[10]

4                    *4.    Plaintiff Fails to State a Claim*

5          Setting aside that Section 230, the First Amendment, and the Relevant Terms bar all claims,

6   Plaintiff still fails to plausibly allege any claim.

7          Because the FAC alleges "opaque and punitive practices," "bad faith suppression," and

8   "systematic misrepresentation" (*see generally* FAC), the heightened pleading standard of

9   Rule 9(b) applies. *Kearns v. Ford Motor Co*., 567 F.3d 1120, (9th Cir. 2009). But all claims fail

10  even under the ordinary standard, as the FAC is devoid of factual allegations, relies on conclusory

11  statements, and utilizes group pleading throughout. At bottom, all claims suffer from the same

12  fatal flaw: Plaintiff was never promised anything about the reach of his posts and has not plausibly

13  alleged the "opaque" algorithmic suppression he complains of.

14                    a.    <u>Plaintiff's 15 U.S.C. § 1125(a) ("Lanham Act") Claim Fails</u>

15         Plaintiff lacks statutory standing to bring a Lanham Act claim because he brings it as a

16  "user" of X Corp. (FAC ¶ 46), "and not as a competitor with a commercial interest in reputation

17  or sales." *Lewis v. Google Ltd. Liab. Co*., 851 F. App'x 723, 724-25 (9th Cir. 2021); *see Bacon v.*

18  *Sw. Airlines Co*., 997 F. Supp. 775, 781 (N.D. Tex. 1998) (no private right of action for consumers

19  under § 1125(a)). In *Lewis*, a user lacked standing to a far more specifically alleged Lanham Act

20  claim asserting that YouTube "market[ed] itself as a website that promotes free speech . . . free

21  from censorship," while censoring and demonetizing his posts, causing "lower and diverted

22  viewership, decreased and lost ad revenue, a reduction in advertisers, and damage to [plaintiff's]

23  brand, reputation and goodwill." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 958 (N.D. Cal. 2020).

24  The Ninth Circuit affirmed, reasoning that "even if [plaintiff] could allege . . . some loss to his

25

26  _____

27  [10] To the extent Plaintiff complains of a standalone "price hike" (FAC ¶ 54), that too is barred by
    the Relevant Purchaser Terms, which explain that "recurring subscription fees[] are subject to

28  change from time to time[,]" and that "you have the right to reject the change by cancelling your
    subscription to the applicable Paid Service prior to the price change going into effect."

1    commercial interest or reputational harm," it occurred "by interacting with YouTube as a

2    consumer, not as a competitor." *Lewis*, 851 F. App'x at 724.

3        Plaintiff's lack of statutory standing aside, he fails to identify any commercial promotional

4    statement, let alone a false one. The alleged posts from Musk and Yaccarino "representing X.com

5    as a free speech platform" (FAC ¶ 43) do not mention any paid subscription and are quintessential

6    opinions or "puffery." *Lewis*, 461 F. Supp. 3d at 958; *see Prager Univ. v. Google LLC*, 951 F.3d

7    991, 1000 (9th Cir. 2020) ("braggadocio about [a] commitment to free speech constitutes opinions

8    that are not subject to the Lanham Act"). The alleged posts are even more vague than the

9    generalizations inactionable in *Lewis* and *Prager*. *Compare* FAC ¶ 19 ("fortunately, X believes in

10   free speech") *with Prager Univ.*, 951 F.3d at 1000 ("YouTube believes that people should be able

11   to speak freely, share opinions, [and] foster open dialogue"). As for the alleged "subscription

12   feature promising 'priority/boosted placement in replies, mentions, and searches'" (FAC ¶¶ 29,

13   43), "[n]ot all commercial speech is promotional," including "statements . . . made to explain a

14   user tool, not for a promotional purpose to 'penetrate the relevant market' of the viewing public."

15   *Prager Univ.*, 951 F.3d at 1000. And at any rate, Plaintiff's understanding of the benefits, *i.e.*,

16   "priority/boosted placement in replies, mentions, and searches" (FAC ¶ 29), is a far cry from a

17   "quantifiable promise[] to provide users with algorithmically unsuppressed content visibility." *Id.*

18   ¶ 43. To the contrary, the Relevant TOS that "govern[s] [Plaintiff's] and other users' access to and

19   use of our services . . . and any information, text, links, graphics, photos, audio, videos, or other

20   materials or arrangements of materials uploaded, downloaded or appearing on the Services

21   (collectively referred to as 'Content')" make clear that X may "remove or refuse to distribute any

22   Content on the Services, limit distribution or visibility of any Content on the service . . . without

23   liability to" Plaintiff. *See* Scolari Decl., Ex. A.[11]

24

25

26

27

---

28   [11] The Relevant Purchaser Terms make clear that "The X User Agreement [of which the Terms of Service are a part] always applies to your use of the X Service, including the Paid Services and features." Scolari Decl., Ex. D, at 2, 7; *see also id.*, Ex. E (same).

1          b.      <u>Plaintiff Fails to State a Breach of Contract Claim</u>

2          Under Texas (and California law), Plaintiff must plausibly allege "(1) the existence of the

3 contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

4 (4) the resulting damages." *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th at 124; *Tiras v. Bailey*

5 *Props., L.L.C.*, 659 F. App'x 753, 756 (5th Cir. 2016) (same). Tellingly, Plaintiff does not allege

6 a breach of the Relevant Terms. Nor could he: those contracts expressly permit the conduct

7 Plaintiff claims constitute a breach. Scolari Decl., Exs. A, B (reserving, among other things, X's

8 right to "remove or refuse to distribute any Content on the Services, limit distribution or visibility

9 of any Content on the service . . . without liability to [Plaintiff]"); *e.g.*, *Yuksel*, 2022 WL 16748612,

10 at *3–5 (collecting cases and dismissing similar breach of contract claims given X Corp.'s express

11 contractual rights); *Boose v. Musk*, 2025 WL 3697037, at *4 (N.D. Cal. Dec. 19, 2025) (plaintiff

12 "fails to allege breach of contract because the relevant Terms on which his claim is based contradict

13 his contention that X breached that contract"); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541,

14 548–49 (W.D. Tex. 2017) ("California contract law is substantially the same as Texas contract

15 law"). Indeed, Plaintiff admits that his "understanding of the benefits" of his subscription did not

16 include the "unmoderated free speech" he seeks. FAC ¶ 29.

17          Instead, Plaintiff invents a contrary "contract" with "enforceable obligations to provide

18 unmoderated free speech to the extent allowed by law," stitching together alleged posts about free

19 speech and his understanding of a "priority/boosted placement in replies, mentions, and searches"

20 as features of his alleged subscription. FAC ¶¶ 48–49. But "it is well settled that an action based

21 on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid

22 express contract covering the same subject matter," as is indisputably the case here with the

23 Relevant Terms. *Grebow v. Mercury Ins. Co.*, 241 Cal. App. 4th 564, 580 (2015); *see Notley v.*

24 *Sterling Bank*, 2008 WL 4952835, at *3 (Tex. App. Nov. 21, 2008) (same). Indeed, the Relevant

25 TOS itself explains that "[n]o advice or information, whether oral or written, obtained from the X

26 Entities or through the Services, will create any warranty or representation not expressly made

27 herein." Scolari Decl., Exs. A, B.

28

1    At any rate, the obligation sought lacks any factual or legal basis; *none* of the alleged posts

2  mention X's paid subscriptions or contain anything resembling contract terms, so the "mutual

3  assent or consent on definite or complete terms" required to form a contract is absent. *Netbula,*

4  *LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007); *Hammerhead*

5  *Managing Partners, LLC v. Nostra Terra Oil & Gas Co. PLC*, 2019 WL 1403363, at *2 (N.D.

6  Tex. Mar. 27, 2019) (similar). And because no contract "to provide unmoderated free speech to

7  the extent allowed by law[,]" exists, Plaintiff has not alleged a breach or resulting damages. The

8  FAC fails to plausibly allege any suppression or breach of even "Plaintiff's understanding" of his

9  alleged subscription benefits. FAC ¶¶ 21, 29 ("Plaintiff's understanding of the benefits included .

10  . . priority/boosted placement in replies, mentions, and searches"). If anything, it confirms he

11  received those benefits (*id.* ¶ 27 (alleging Plaintiff *gained* followers and "Plaintiff's Content

12  achieved [] visibility" with his "'reply-guy' tactics")), and that other users have seen the

13  supposedly suppressed posts (*id.* ¶ 39 (alleging a user messaged him "referencing one of the cases

14  Plaintiff has alleged has been suppressed")). Finally, Plaintiff's alleged damages are wholly

15  speculative. *See Zhang*, 2023 WL 5493823, at *6.

16                    c.    <u>The Implied Covenant of Good Faith and Fair Dealing Claim Fails</u>

17    Under Texas (or California) law, Plaintiff cannot assert an implied covenant claim based

18  on alleged "promises" (FAC ¶ 50) because they did not form a contract. *See* § II.C.5.b, *supra*;

19  *Thomas v. JPMorgan Chase Bank, N.A.*, 2015 WL 12683961, at *4 (C.D. Cal. Sep. 15, 2015) ("no

20  obligation to deal fairly or in good faith absent an existing contract"); *Martin Res. Mgmt. Corp. v.*

21  *Fed. Ins. Co.*, 2021 WL 4269565, at *6 (5th Cir. Sep. 20, 2021) (similar); *Mercola.com, LLC v.*

22  *Google LLC*, 2023 LW 5680112, at *6 (N.D. Cal. Sep. 4, 2023), *aff'd*, 2024 WL 2745208 (9th Cir.

23  May 29, 2024) (dismissing claim because "YouTube's actions were permitted by [its] Terms.")

24    Plaintiff's claim based on the "subscription agreement," *i.e.*, the Relevant Terms, also fails

25  under either state's laws. Texas does not recognize a general implied covenant of good faith and

26  fair dealing in these circumstances. *See Ramirez v. Bank of Am., N.A.*, 607 F. Supp. 3d 969, 977

27  (N.D. Cal. 2022) (dismissing claims with prejudice because "Texas law does not recognize an

28  implied duty of good faith and fair dealing in every contract"); *English v. Fischer*, 660 S.W.2d 521

1   (Tex. 1983); *see also In re Sw. Airlines Co. Flight Disruption Litig.*, 2024 WL 3281288, at *6

2   (S.D. Cal. June 11, 2024) (dismissing claim pursuant to Southwest's terms' choice of Texas law).

3   And if it did, the one Plaintiff seeks is inactionable under Texas and California law, because it

4   contradicts and expands X's obligations under the Relevant Terms. *See Storek & Storek, Inc. v.*

5   *Citicorp Real Est., Inc.*, 100 Cal. App. 4th 44, 55 (2002) ("the implied covenant of good faith and

6   fair dealing cannot contradict the express terms of a contract"); *Exxon Corp. v. Atl. Richfield Co.*,

7   678 S.W.2d 944 (Tex. 1984) (same).

8                          d.    Plaintiff Fails to State a Promissory Estoppel Claim

9           Under both Texas and California law, Plaintiff's promissory estoppel claim should be

10  dismissed because the Relevant Terms have always "govern[ed] [Plaintiff's] and other users'

11  access to and use of [X's] services, including [X's] various websites." Scolari Decl., Exs. A, B;

12  *see SHLA Grp. Inc. v. Kissler & Co.*, 2025 U.S. Dist. LEXIS 37820, at *4 (C.D. Cal. Mar. 3, 2025)

13  ("promissory estoppel is not applicable when a contract exists"); *TuYo Holdings, LLC v.*

14  *Transamerica Life Ins. Co.*, 2022 WL 17490982, at *4 (W.D. Tex. Dec. 6, 2022) (same).

15          Regardless, Plaintiff fails to allege (through vague posts or otherwise): (1) a promise clear

16  and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) that is

17  both reasonable and foreseeable; and (4) that caused injury. *See Laks v. Coast Fed. Sav. & Loan*

18  *Assn.*, 60 Cal. App. 3d 885, 890 (1976) ("a promise must be definite enough that a court can

19  determine the scope of the duty and the limits of performance"); *Gillum v. Republic Health Corp.*,

20  778 S.W.2d 558, 570 (Tex. App. 1989) (similar). The alleged statement Plaintiff invokes

21  (FAC ¶ 51) was allegedly made *before* Musk acquired X, and allegedly reads in full: "Given that

22  Twitter serves as the de facto public town square, failing to adhere to free speech principles

23  fundamentally undermines democracy. What should be done?" *Id.* ¶ 19. This and the other alleged

24  statements are not promises, let alone unambiguous ones, and make no mention of any

25  subscription. *See Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 381 (9th Cir. 2003)

26  (affirming dismissal where "representations were not definite enough to be enforceable"); *Simulis,*

27  *L.L.C. v. GE Capital Corp.*, 2008 WL 1747483, at *2 (Tex. App. Apr. 17, 2008) (reliance on

28  statements that never "discussed or negotiated" terms "is unreasonable as a matter of law and

1    cannot be the basis for a promissory estoppel claim"). As for alleged "priority" language, Plaintiff

2    admits that his "understanding" was "priority/boosted placement in replies, mentions, and

3    searches" (FAC ¶¶ 21, 29), which cannot reasonably be reinterpreted as "guarantee[ing] enhanced,

4    algorithmically unsuppressed reach" of his posts (*id.* ¶ 22). Even under Plaintiff's interpretation,

5    reliance would be unreasonable, as the Relevant Terms have always provided that X Corp. could

6    "remove or refuse to distribute any Content." Scolari Decl., Ex. A at § 4; *id.*, Ex. B at § 4; *see*

7    *Murphy*, 60 Cal. App. 5th at 38 ("Murphy could not reasonably rely on promises that Twitter

8    would not restrict access to her account, "'censor'" her content, or take "account-level" action").

9        e. <u>The Cal. Bus. & Prof. Code § 17200 ("UCL") Claim Fails</u>

10      Because Texas law governs, Plaintiff's California UCL claim is barred. *See e.g., Cory v.*

11    *Stewart*, 103 F.4th 1067 (5th Cir. 2024) ("Under Texas rules," a choice of law provision will

12    "contractually preclude[]" claims under a non-chosen state's law, "[e]nd of story"); *Salustri v.*

13    *Dell, Inc.,* 2010 WL 11596554, at *6 (C.D. Cal. Apr. 27, 2010) ("[b]ecause Texas provides

14    protection and remedies for consumers who are subject to false advertising and unfair competition,

15    it is not contrary to California public policy to enforce the choice-of-law provision and require

16    Plaintiff to assert claims under Texas law").

17      Even under California law, Plaintiff lacks standing under the UCL for two reasons. *First*,

18    the UCL regulates "harm suffered by residents of California, which plaintiff is not, or harm to non-

19    residents that occurred in California . . . [and] plaintiff has not alleged facts suggesting that he

20    suffered harm in California." *Silverman v. Wells Fargo & Co.*, 2018 WL 6046209 at *3–4 (N.D.

21    Cal. Nov. 19, 2018) (collecting cases) (dismissing claims despite allegations that defendants

22    maintained their headquarters, principal places of business, and conducted substantial sales and

23    marketing in California). Plaintiff is, and was, an Oklahoma resident when the conduct he

24    complains of occurred. FAC ¶ 54 (premising UCL claim on "misrepresentations, suppression,

25    price hikes, feature removals, and use of Grok as a loss leader"); *id.* ¶ 3 ("Plaintiff—*a resident of*

26    *Oklahoma City, OK*—was induced by these claims to join, pay for the Premium+ subscription");

27    *id.* 17 ("Plaintiff . . . *now living in Oklahoma City*, relied on this role to disseminate two civil cases

28    of public import"); *id.* ¶¶ 30–31 ("In November 2025," long after Plaintiff alleged Oklahoma

1    residency in his initial complaint, "X.com auto-billed Plaintiff . . . while removing or diluting key

2    features" and adding Grok.). The FAC also alleges that X "with its principal place of business in

3    Bastrop, Texas" operates the platform and that "Elon Musk . . . residing in Texas" is the "primary

4    architect of X.com's policies, public statements, and operational decisions." FAC ¶¶ 7, 8. *Second*,

5    the FAC chiefly alleges vague "severe financial and reputational harm, including the derailment

6    of two significant civil cases impacting the public, due to Defendants' suppression of his reach,"

7    (*id.* ¶ 4), which falls short of "actual loss of income or financial support" required. *E.g.*, *Murphy*,

8    60 Cal. App. 5th at 40.[12]

9           To the extent Plaintiff claims the subscription charges constitute harm, he fails to

10   sufficiently pled any unlawful, fraudulent, or unfair business act or practice that caused that harm.

11   "The problem with Plaintiffs' arguments . . . is that they are premised on the assumption that

12   [Plaintiff] was entitled to receive" unmoderated reach on the platform without "alleg[ing] any facts

13   showing that this was ever promised to him." *Shuman v. SquareTrade Inc.*, 2021 WL 5113182, at

14   *9 (N.D. Cal. Nov. 3, 2021). Claimed reliance on vague statements that did not even mention any

15   subscription falls flat, especially where Plaintiff's own "understanding of the benefits[,]"

16   (FAC ¶ 29) did not include "unmoderated free speech" and where the Relevant Terms disclaimed

17   any such promise or reliance on extrinsic statements. Reliance aside, Plaintiff has not sufficiently

18   pled that the public would be deceived about the subscription he alleges. *Murphy*, 60 Cal. App.

19   5th at 40–41 ("Twitter's general declarations of commitment to free speech principles" do not

20   support claim "because it is unlikely that members of the public would be deceived by such

21   statements" or construe them "as a promise that Twitter would not take any action to self-regulate

22   content on its platform."). For the avoidance of doubt, Plaintiff has not plausibly alleged that any

23   suppression occurred. *See* FAC ¶ 27 (lamenting lack of likes but noting follower increase and that

24

25   _____

26   [12] Contradictory allegations about Yaccarino's residence and "algorithmic design[,]" are irrelevant
     to Plaintiff's claim, and at any rate, too conclusory to establish that harm occurred in California.
27   *See Gustafson v. BAC Home Loans Servicing, LP*, 2012 WL 4761766, at *5–6 (C.D. Cal. Apr. 12,
     2012) (allegations that "defendants' scheme was devised, implemented, and directed from
28   defendants' offices in California" too vague and conclusory to support UCL claim).

1    "Plaintiff's content achieved . . . visibility" through "reply guy" tactics); *id.* ¶¶ 39–42 (alleging

2    user saw his supposedly suppressed post).[13]

3        As for the subsequent renewal, Plaintiff's conclusory invocation of "price hikes, feature

4    removals, and use of Grok as a loss leader" (*id.* ¶ 54) is similarly defective. Plaintiff concedes that

5    "subscription terms . . . *allow[ed]* unilateral price increases and feature removals" (*id.* ¶ 5); *see*

6    Scolari Decl., Ex. D ("Changes to Paid Services"; "Changes to Pricing"); *Hall v. HP, Inc*., 2025

7    WL 1759378, at *8 (C.D. Cal. June 23, 2025) (no UCL claim where "Defendant's conduct was

8    consistent with the Terms of Service" and the "members of the public are not likely to be

9    deceived"). Plaintiff's failure to cancel his automatic renewal is insufficient to state a UCL claim.[14]

10                f.    Plaintiff Fails to State an "Unconscionable Contract" Claim

11        At the outset, this claim fails because "unconscionability under Cal. Civ. Code § 1670.5 is

12    not an affirmative claim." *Das v. WMC Mortgage Corp*., 831 F. Supp. 2d 1147, 1164 (N.D. Cal.

13    2011) (collecting cases). Even if it were a valid claim, Plaintiff cannot assert it because Texas law

14    governs. *See Cory*, 103 F.4th at 1073. In any event, under either Texas or California law, "*both*

15    procedural and substantive unconscionability" must exist, and Plaintiff fails to plead either. *Lessin*

16    *v. Ford Motor Co*., 2020 WL 6544705, at *4 n.1 (S.D. Cal. Nov. 5, 2020) ("unconscionability law

17    is generally the same in California . . . and Texas . . . .").

18        To plausibly allege unconscionability, a plaintiff must plead facts sufficient to show "unfair

19    surprise or oppression." *L.O.D.C. Grp., Ltd v. Accelerate360, LLC*, 621 F. Supp. 3d 716, 724–25

20    (E.D. Tex. 2022). The "only cases under Texas law in which an agreement was found procedurally

21    unconscionable involve situations in which one of the parties appears to have been incapable of

22    understanding the agreement." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir.

23    2022), *opinion supplemented on denial of reh'g*, 303 F.3d 570 (5th Cir. 2002). As for substantive

24

25    ───────────────

26    [13] To the extent alleged BBB complaints have any relevance, they confirm that Plaintiff and
     consumers understand that "violation reasons" (FAC ¶ 37) can result in consequences.

27

28    [14]  Plaintiff does not allege that removal of the "edit reply" feature harmed him, and any claim of
     such harm is belied by allegation Plaintiff he "explicitly" paid for "boosted placement in replies,
     mentions, and searches."

1    unconsciounability, the test is whether "given the parties' general commercial background and the

2    commercial needs of the particular trade or case, the clause involved is so one-sided that it is

3    unconscionable under the circumstances existing when the parties made the contract." *Hafer v.*

4    *Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 1004 (S.D. Tex. 2011). This test aims to

5    "prevent oppression and 'unfair surprise' rather than to alter the allocation of risks stemming from

6    the parties' differing bargaining positions." *L.O.D.C.*, 621 F. Supp. 3d at 724.

7            The FAC is bereft of "any facts demonstrating surprise" or "oppression," so it fails to allege

8    any procedural unconscionability. *See  Moates v. Facebook Inc.*, 2021 WL 3013371, at *7 (E.D.

9    Tex. May 14, 2021). Plaintiff's conclusory assertion that "[t]he subscription terms and TOS are

10   unconscionable, both procedurally (adhesion contract, no bargaining, surprise changes) and

11   substantively (one-sided modifications, limited remedies, illusory promises)" (FAC ¶ 55), is belied

12   by both Texas and California law—each recognize that such contracts are "'indispensable facts of

13   modern life that are generally enforced'" and "the fact that [Plaintiff] had no opportunity to

14   negotiate the terms of service, standing alone, is insufficient to plead a viable unconscionability

15   claim." *E.g.*, *Murphy*, 60 Cal. App. 5th at 37–38 (finding no unconscionability in X's (then

16   Twitter's) terms and affirming dismissal of claims alleging Twitter falsely "held itself out to be a

17   free speech platform and promised not to actively monitor or censor user content"); *Moates*, 2021

18   WL 3013371, at *7 (Facebook's terms not unconscionable because "[i]n Texas, an adhesion

19   contract is not automatically unconscionable[,]" [t]he principles of unconscionability do not negate

20   a bargain because one party to the agreement may have been in a less advantageous bargaining

21   position," and because "parties to a contract have an obligation to protect themselves by reading

22   what they sign and, absent a showing of fraud, cannot excuse themselves from the consequence of

23   failing to meet that obligation"). Nor do the Relevant Terms' alleged "limited remedies" make it

24   substantively unconscionable. *See Van Peterson Fine Jewelers v. ADT Sec. Servs., Inc.*, 2010 WL

25   11617965, at *3 (N.D. Tex. Feb. 16, 2010) (limitation-of-liability provision in a form contract is

26   not unconscionable even if "Plaintiff had little bargaining power" because there are "valid

27   commercial reasons for including" and "strong policy reasons for enforcing such a provision");

28   *Murphy*, 60 Cal. App. 5th at 36 (rejecting allegations that X Corp. (then Twitter's) terms of service

1    or limitations of liability therein were "so one-sided as to be substantively unconscionable,"

2    recognizing "a legitimate commercial need to limit . . . liability").[15]

3                    g.    Plaintiff's California Constitution "Free Speech" Claim Fails

4             Even if an Oklahoman Plaintiff could assert this claim, the FAC fails to allege the requisite

5    state action, and this Court has rejected allegations "that Twitter is an entity that may fairly be said

6    to be a state actor." *Rutenburg v. Twitter, Inc.*, 2021 WL 1338958, at *3 (N.D. Cal. Apr. 9, 2021);

7    *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1023 (2001)

8    ("California's free speech clause contains a state action limitation"). Plaintiff argues that X "has

9    evolved into a virtual public square" (FAC ¶ 57), but "[n]o court has extended the *Pruneyard* line

10   of cases, which concern physical property, to the Internet." *Divino Grp. LLC v. Google LLC*, 2022

11   WL 4625076, at *7–8 (N.D. Cal. Sep. 30, 2022) (collecting cases) (rejecting the argument that

12   "YouTube is the cyber-equivalent of a town square"). Nor can any alleged post transform X Corp.

13   into a public square or state actor. *E.g.*, *Prager Univ. v. Google LLC*, 951 F.3d 991, 997 (9th Cir.

14   2020) (plaintiff "cannot avoid the state action question" using allegations that "YouTube declared

15   itself a public forum," because that "is not a matter of election by a private entity.") Plaintiff's

16   proposed extension of *Pruneyard* "would be a dramatic expansion of California law" with

17   "potentially sweeping consequences" and a "host of potential slippery slope problems that are

18   likely to surface." *Newman v. Google LLC*, 2022 WL 2556862, at *3 (N.D. Cal. July 8, 2022)

19   (citation modified).[16]

20   **IV.  CONCLUSION**

21           For the foregoing reasons, the FAC should be dismissed without leave to amend.

22

23

24

25

---

26   [15] That Plaintiff did not exercise his contractual right to cancel his subscription after instituting this
     suit does not mean that the Relevant Purchaser Terms are unconscionable. There is nothing

27   surprising or oppressive about increasing service prices or modifying functionalities where, as
     here, those rights are explained in the relevant contract.

28
     [16] Indeed, no private right of action exists. *See Degrassi v. Cook*, 127 Cal. Rptr. 2d 508, 514 (2002).

Dated: January 21, 2026

Respectfully submitted,

WILLENKEN LLP

By:   */s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison
Attorneys for Defendant X Corp.

DEF. X CORP.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT